UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
CHAMBERS OF
TARYN A. MERKL
MAGISTRATE JUDGE
BROOKLYN, NEW YORK 11201
_____
OFFICIAL BUSINESS
PENALTY FOR PRIVATE USE $300

Jadenze Trabacchi
3420 20th Avenue, Apt. C1
Brooklyn, NY 11214

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★  AUG 22 2025  ★

BROOKLYN OFFICE

NIXIE      061   4E 18CU    0208/11/25
RETURN TO SENDER
ATTEMPTED - NOT KNOWN
UNABLE TO FORWARD
BC: 11201          0060N223160-01607



# U.S. District Court
## Eastern District of New York (Brooklyn)
## CIVIL DOCKET FOR CASE #: 1:24-cv-06123-RPK-TAM

F I L E D
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

AUG 2 2 2025      ☆

BROOKLYN OFFICE

| | |
|---|---|
| Trabacchi v. The Department of Education of the City of New York et al | Date Filed: 08/30/2024 |
| Assigned to: Judge Rachel P. Kovner | Jury Demand: None |
| Referred to: Magistrate Judge Taryn A. Merkl | Nature of Suit: 442 Civil Rights: Jobs |
| Cause: 28:1983 Civil Rights | Jurisdiction: Federal Question |

**Plaintiff**

**Jadenae Trabacchi**                                      represented by **Jadenae Trabacchi**
8420 20th Avenue, Apt. C 1
Brooklyn, NY 11214
(631) 484-1127
Email: JadenaeTrabacchi@gmail.com
PRO SE

V.

**Defendant**

**The Department of Education of the City of New York**                 represented by **Brigid Lynn**
New York City Law Department
100 Church Street
Ste 2-109(e)
New York, NY 10007
212-356-2481
Email: blynn@law.nyc.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kathleen Linnane**
New York City Law Department
100 Church Street
Ste 2-196
New York, NY 10007
212-356-2467
Email: klinnane@law.nyc.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**David Banks**
*Chancellor of the Department of Education
of the City of New York*

**Defendant**

**Katherine Rodi**
*Director of Empolyee Relations*

| Date Filed | # | Docket Text |
|---|---|---|
| 08/30/2024 | 1 | COMPLAINT against Katherine Rodi, The Department of Education of the City of New York, David Banks, filed by Jadenae Trabacchi. (Attachments: # 1 Civil Cover Sheet) (CV) Modified on 10/9/2024 (CV). (Entered: 09/05/2024) |
| 08/30/2024 | 2 | Pro Se Consent to Electronic Notification by Jadenae Trabacchi (CV) Modified on 10/9/2024 (CV). (Entered: 09/05/2024) |
| 08/30/2024 | 3 | Summons Issued as to David Banks, Katherine Rodi, The Department of Education of the City of New York. (CV) (Entered: 09/05/2024) |
| 09/03/2024 | 4 | FILING FEE: $ 405.00, receipt number 100016476 (CV) (Entered: 09/05/2024) |
| 09/06/2024 | 5 | ORDER: On 8/30/2024, Plaintiff filed a Complaint 1 . Plaintiff is required under Fed. R. Civ. P. 4 to serve Defendants within 90 days after the Complaint is filed (i.e., by **11/29/2024**). As detailed further in the attached Order, Plaintiff is respectfully directed to file proof of service by **11/29/2024**. Failure to do so may result in dismissal. *See* Fed. R. Civ. P. 4(m) ("If a defendant is not served within 90 days after the complaint is filed, the court on motion or on its own after notice to the plaintiff must dismiss the action without prejudice against that defendant or order that service be made within a specified time."). <br><br> The Clerk of Court is respectfully directed to mail a copy of this Order to Jadenae Trabacchi, at 842 20th Avenue, Apt 2C, Brooklyn, NY 11204. Ordered by Magistrate Judge Taryn A. Merkl on 9/6/2024. (ALG) (Entered: 09/06/2024) |
| 09/23/2024 | 6 | Mail Returned as Undeliverable, "Return to Sender, Attempted - Not Known, Unable to Forward." Notice of Option to Consenting to Magistrate Judge Jurisdiction previously sent to Jadenae Trabacchi. (SG) Modified on 10/9/2024 (CV). (Entered: 09/23/2024) |
| 09/26/2024 | 7 | SUMMONS Returned Executed by Jadenae Trabacchi. Katherine Rodi served on 9/24/2024, answer due 10/15/2024. (SG) (Entered: 09/27/2024) |
| 09/26/2024 | 8 | SUMMONS Returned Executed by Jadenae Trabacchi. The Department of Education of the City of New York served on 9/24/2024, answer due 10/15/2024. (SG) (Entered: 09/27/2024) |
| 09/26/2024 | 9 | SUMMONS Returned Executed by Jadenae Trabacchi. David Banks served on 9/24/2024, answer due 10/15/2024. (SG) (Entered: 09/27/2024) |
| 10/03/2024 | 10 | NOTICE of Appearance by Kathleen Linnane on behalf of The Department of Education of the City of New York (aty to be noticed) (Linnane, Kathleen) (Entered: 10/03/2024) |
| 10/04/2024 | 11 | Letter MOTION for Extension of Time to File Response/Reply *to the Complaint* by The Department of Education of the City of New York. (Linnane, Kathleen) (Entered: 10/04/2024) |
| 10/07/2024 | | ORDER: Defendants' motion for extension of time to file answer or otherwise reply to the complaint 11 is granted in part. Defendants shall file an answer or otherwise respond to the complaint by **11/15/2024**. *Pro se* Plaintiff's request for a 30-day extension of time to respond is denied. Under the Federal Rules of Civil Procedure, Plaintiff is not required to file an answer to Defendants' answer. The parties are respectfully reminded that any motion practice must be initiated in accordance with the Individual Rules of the assigned District Judge. Ordered by Magistrate Judge Taryn A. Merkl on 10/7/2024. (KKS) (Entered: 10/07/2024) |

| | | |
|---|---|---|
| 10/09/2024 | 12 | Letter undated from Jadenae Trabacchi to Magistrate Judge Taryn A. Merkl, writing to clarify pltff's email to Corporation Counsel, Attorney Linnane, regarding denial/objection to deft's request for a 60-day extension and pltff's offer to give opposing counsel 45 days, instead. Pltff also requested that opposing counsel agree to a 30 extension, for pltff to respond to deft's motion To dismiss. Pltff request that this case be assigned a District Judge. (SG) (Entered: 10/09/2024) |
| 10/10/2024 | | NOTICE to Assign District Judge: The Clerk of Court is directed to reassign this case to a district judge. (KC) (Entered: 10/10/2024) |
| 10/11/2024 | | Case Reassigned to Judge Rachel P. Kovner and Magistrate Judge Taryn A. Merkl. Magistrate Judge Taryn A. Merkl no longer assigned as presider to the case. Please download and review the Individual Practices of the assigned Judges, located on our website. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. (DA) (Entered: 10/11/2024) |
| 10/18/2024 | 13 | AFFIDAVIT/AFFIRMATION *Certificate of Service on Plaintiff of the Individual Practice Rules of Judge Rachel P. Kovner* by The Department of Education of the City of New York (Linnane, Kathleen) (Entered: 10/18/2024) |
| 11/15/2024 | ⚡14 | Notice of MOTION to Dismiss for Failure to State a Claim by The Department of Education of the City of New York. (Linnane, Kathleen) (Entered: 11/15/2024) |
| 11/15/2024 | 15 | MEMORANDUM in Support re 14 Notice of MOTION to Dismiss for Failure to State a Claim filed by The Department of Education of the City of New York. (Linnane, Kathleen) (Entered: 11/15/2024) |
| 11/15/2024 | 16 | AFFIDAVIT/DECLARATION in Support re 14 Notice of MOTION to Dismiss for Failure to State a Claim filed by The Department of Education of the City of New York. (Attachments: # 1 Exhibit Exhibit A - Impact Arbitration Award) (Linnane, Kathleen) (Entered: 11/15/2024) |
| 11/15/2024 | 17 | CERTIFICATE OF SERVICE by The Department of Education of the City of New York re 16 Affidavit in Support of Motion, 15 Memorandum in Support, 14 Notice of MOTION to Dismiss for Failure to State a Claim (Linnane, Kathleen) (Entered: 11/15/2024) |
| 11/18/2024 | | ORDER: Plaintiff is directed to respond to defendants' 14 motion to dismiss by 12/20/2024. Defendants may file a reply, if any, by 1/3/2025. Ordered by Judge Rachel P. Kovner on 11/18/2024. (AC) Modified on 11/18/2024 (TC). (Entered: 11/18/2024) |
| 12/20/2024 | 18 | Plaintiff's Opposition re 14 Notice of MOTION to Dismiss for Failure to State a Claim filed by Jadenae Trabacchi. (IH) (Main Document 18 replaced on 12/20/2024) (IH). (Entered: 12/20/2024) |
| 01/03/2025 | 19 | REPLY in Support *of Defendants Motion to Dismiss the Complaint* filed by All Defendants. (Linnane, Kathleen) (Entered: 01/03/2025) |
| 02/26/2025 | | ORDER REFERRING MOTION: Defendants' 14 motion to dismiss is respectfully referred to Magistrate Judge Merkl for a report and recommendation. Ordered by Judge Rachel P. Kovner on 2/26/2025. (AC) (Entered: 02/26/2025) |
| 04/16/2025 | 20 | NOTICE of Appearance by Brigid Lynn on behalf of The Department of Education of the City of New York (aty to be noticed) (Lynn, Brigid) (Entered: 04/16/2025) |
| 07/31/2025 | ⚡21 | REPORT AND RECOMMENDATION: For the reasons set forth in the attached Report and Recommendation, this Court respectfully recommends that Defendants' motion to dismiss (ECF No. 14 ) be granted. Any objections to this Report and Recommendation must be filed with the Clerk of Court by **8/14/2025**. *See* 28 U.S.C. § 636(b)(1); Fed. R. |

Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, e.g., Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a... report [and recommendation] operates as a waiver of any further judicial review of the magistrate[ judge's] decision" (quotation marks omitted)).

The Clerk of Court is respectfully directed to mail a copy of the attached Report and Recommendation and full docket to Jadenae Trabacchi, at 8420 20th Avenue, Apt C1, Brooklyn, NY 11204. Ordered by Magistrate Judge Taryn A. Merkl on 7/31/2025. (ERT) (Entered: 07/31/2025)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

JADENAE TRABACCHI,

                    Plaintiff,

         -against-

THE DEPARTMENT OF EDUCATION
OF THE CITY OF NEW YORK, DAVID
BANKS, Chancellor, and KATHERINE
RODI, Director of Employee Relations,

                    Defendants.

-------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
24-CV-6123 (RPK) (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

    Plaintiff Jadenae Trabacchi, proceeding *pro se*, initiated this action against

Defendants New York City Department of Education ("DOE"), David Banks, and

Katherine Rodi (collectively, "Defendants") on August 30, 2024. (*See* Compl., ECF No.

1.) Plaintiff alleges that she was unlawfully terminated from her tenured teaching

position with the DOE after she did not receive the COVID-19 vaccine, and brings a

host of constitutional, federal, and state law claims relating to her termination. (*See

generally id.*) However, Plaintiff fails to plead any particularized facts indicating that she

apprised the DOE of a medical condition that would restrict her ability to receive the

COVID-19 vaccine, nor has she plausibly alleged that she ever requested an

accommodation for her religious views.

    Currently pending before the Court is Defendants' motion to dismiss, which the

Honorable Rachel P. Kovner referred to the undersigned Magistrate Judge for a report

and recommendation. (Notice of Mot. to Dismiss, ECF No. 14; Mem. in Supp. ("Defs.'

Mem."), ECF No. 15; Decl. in Supp. ("Linnane Decl."), ECF No. 16; Feb. 26, 2025 ECF

Order Referring Mot.)[1] For the reasons set forth below, the Court respectfully recommends that Defendants' motion be granted.[2]

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### I. Factual Background

As alleged in the complaint, Plaintiff Jadenae Trabacchi was a tenured teacher at the DOE for approximately ten years.[3] (Compl., ECF No. 1, ¶ 7.) Defendant DOE oversees the New York City public school system. (*Id.* ¶ 8.) Defendant David Banks was the Chancellor of the DOE, and Defendant Katherine Rodi was the DOE's Director of Employee Relations. (*Id.* ¶¶ 9–10.)

Plaintiff alleges that she suffered from multiple auto-immune disorders, including Hashimoto's Thyroiditis and MTHFR-recessive gene expression. (*Id.* ¶ 15.) Plaintiff claims that her doctors advised her against receiving the COVID-19 vaccine, as the vaccine may "exacerbat[e] her autoimmunity and genetic predisposition." (*Id.* ¶¶ 15, 32 (alleging that "Plaintiff has had actual, medically documented impairments and challenges to her health which her doctors have told her could get worse and cause her bodily harm if she was vaccinated with the COVID vaccine").) On July 29, 2020, in the midst of the COVID-19 pandemic, Plaintiff alleges that she submitted to the DOE

---

[1] While Defendants Rodi and Banks have not formally appeared in the action, the motion to dismiss was filed on behalf of all Defendants. (Defs.' Mem., ECF No. 15, at 1 n.1 ("Plaintiff has not properly served the individual defendants, Banks and Rodi[.] However, this Motion is being submitted on behalf of all defendants.").)

[2] The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, as well as supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), over Plaintiff's state law claims. (*See* Compl., ECF No. 1, ¶¶ 11–12.)

[3] Plaintiff's complaint specifically states that Plaintiff was "a tenured teacher for more almost [sic] 10 years." (Compl., ECF No. 1, ¶ 7.)

2

doctors' notes indicating that "Plaintiff was 'predisposed' to be in a high risk group for COVID and needed a reasonable accommodation to work from home." (*Id.* ¶ 16.)

Plaintiff alleges that on August 23, 2021, while she was in Uzbekistan with limited internet access, the DOE published a notice of vaccine mandate (the "Vaccine Mandate" or the "Mandate").[4] (*Id.* ¶ 17.) The Mandate purportedly prohibited teachers from entering DOE buildings without vaccination. (*Id.*) The Mandate also included a clause noting that "[n]othing in this Order shall be construed to prohibit any reasonable accommodations otherwise required by law." (Ex. B. to Compl., ECF No. 1, at ECF p. 30.[5]) Plaintiff alleges that she "relied on" this sentence in the Mandate "because she believed this was true." (Compl., ECF No. 1, ¶ 17.)

Plaintiff returned from Uzbekistan on September 5, 2021. (*Id.*) She tested positive for COVID-19 on September 8, 2021. (*Id.* ¶ 20.)

On September 10, 2021, arbitrator Martin Scheinman published a decision governing exemptions to the Vaccine Mandate (the "Arbitration Agreement").[6] (*Id.* ¶ 21;

---

[4] Plaintiff alleges in her complaint that the Vaccine Mandate was published on August 23, 2021. (*See* Compl., ECF No. 1, ¶ 17.) Plaintiff attached a copy of the Vaccine Mandate as an exhibit to the complaint; the Mandate is dated September 15, 2021. (Ex. B. to Compl., ECF No. 1, at ECF p. 30.)

[5] Plaintiff appends several exhibits to her complaint, which the Court considers as part of the factual record. "Documents that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).

[6] According to Defendants, the Arbitration Agreement was published after the United Federation of Teachers ("UFT") filed a Declaration of Impasse challenging the Vaccine Mandate and engaged in mediation with the Public Employment Relations Board ("PERB"). (Defs.' Mem., ECF No. 15, at 2.) The Court includes this information solely for context and to explain the origins of the Agreement; none of this information was relied upon in determining the outcome of this Report and Recommendation. *See, e.g., Massey v. On-Site Manager, Inc.*, No. 11-CV-2612 (BMC), 2011 WL 4356380, at *2 (E.D.N.Y. Sept. 16, 2011) ("Ordinarily, a Court may not consider materials extraneous to the complaint when deciding a motion to dismiss.").

Case 1:24-cv-06123-RPK-TAM    Document 22    Filed 08/22/25    Page 9 of 62 PageID #:
Case 1:24-cv-06123-RPK-TAM    Document 426    Filed 07/31/25    Page 4 of 57 PageID #:
344

*see also* Ex. G to Compl., ECF No. 1, at ECF pp. 53–66; Defs.' Mem., ECF No. 15, at 2.)

According to Plaintiff, the Agreement created a "Leave Without Pay ('LWOP')"

category for employees that "forced unvaccinated employees off of their salaries but

was 'not disciplinary.'" (Compl., ECF No. 1, ¶ 21.) Plaintiff claims that the LWOP

classification resulted in the placement of a "problem code" in her DOE record. (*Id.*

¶ 22.) Plaintiff asserts that she "was forced under duress to rely on this fraud and was

taken off of her salary without any due process hearing." (*Id.*) Plaintiff also alleges that

"Defendant Rodi was and is in charge of [the problem code placements] at the DOE's

Office of Personnel Investigations." (*Id.*)

Plaintiff's exhibits filed with her complaint indicate that she submitted a

"COVID-19 Vaccine Related Exemption or Accommodation" application on September

28, 2021. (*See* Ex. D to Compl., ECF No. 1, at ECF p. 34.) Plaintiff claims she also

submitted a September 23, 2021 doctor's note confirming that she had COVID-19

antibodies and recommending that she receive the COVID-19 vaccine in three months.

(*See* Compl., ECF No. 1, ¶ 16; *see also* Ex. A(1) to Compl., ECF No. 1, at ECF p. 23

(doctor's note).)

On October 3, 2021, Plaintiff alleges that she received a temporary exemption

notice from the Division of Human Capital that stated that her exemption would end on

October 31, 2021, "unless she signed the LWOP." (Compl., ECF No. 1, ¶ 23.) Plaintiff

claims she did not receive any additional response to her submitted doctors' notes or

the request for an extension of her medical exemption. (*Id.*) However, Plaintiff did

receive multiple emails regarding her exemption request and vaccine status between

October and November 2021. (*Id.*; *see also* Ex. D to Compl., ECF No. 1, at ECF pp. 34–35

(October 26, 2021 email from NYC Division of Human Capital directing "appropriate

next steps," which included submitting proof of vaccination, applying for a new

exemption, or taking leave without pay, which would occur "[i]f you do not provide proof of vaccination, or are not approved for a new medical exemption"), p. 39 (November 4, 2021 email denying medical exemption request because "Post-COVID condition is not sufficient (e.g. outside isolation period)"), pp. 39–40 (November 4, 2021 email extending time to comply with DOE vaccine requirements), pp. 40–41 (November 23, 2021 email denying medical exemption request), pp. 41–42 (November 24, 2021 email notifying Plaintiff that she was "being placed on a Leave Without Pay (LWOP) because you are not in compliance with the COVID-19 Vaccine Mandate," and that the "LWOP status goes into effect as of November 24, 2021"), pp. 42–44 (November 29, 2021 "FINAL NOTICE: Leave Without Pay Status" email).)

Of particular note, on November 23, 2021, Plaintiff received an email notifying her that her COVID-19 vaccine medical exemption application had been formally denied, as follows:

> This is to advise you that your request for a Medical Exemption to the COVID-19 Vaccine Mandate has been denied for the following reason(s):
>
> a. Denial Reason: Medical condition not valid reason to defer or delay vaccination (e.g. not within 90 days after receiving antibody treatment, and not in treatment for conditions outlined in CDC considerations that would temporarily interfere with the ability to respond adequately to the vaccine)
>
> b. Determination Comments: antibodies do not preclude getting vaccinated
>
> Your application was reviewed in accordance with applicable City, State and Federal laws.

(*See* Ex. D to Compl., ECF No. 1, at ECF pp. 40–41.)

The final LWOP warning email, dated November 29, 2021, notified Plaintiff that "if you remain non-compliant and have not opted to extend your LWOP or return from LWOP status by November 30, you are subject to termination from service with the

Case 1:24-cv-06123-RPK-TAM   Document 22   Filed 08/22/25   Page 11 of 62 PageID #:
Case 1:24-cv-06123-RPK-TAM   Document 22   Filed 07/31/25   Page 6 of 57 PageID #:
346

NYCDOE beginning December 1, 2021." (Ex. D to Compl., ECF No. 1, at ECF p. 43 (emphasis omitted).) The email provided two options to LWOP employees. The employee could return to work by uploading proof of receipt of the first dose of the COVID-19 vaccine and attesting that they would like to return to work within 14 days of submitting proof of vaccination. (*Id.*) Alternatively, the employee could extend their LWOP status through September 5, 2022, which would allow the employee to return from LWOP if they received the COVID-19 vaccine and submitted verification that they were in compliance with the Vaccine Mandate.[7] (*Id.*) However, consenting to LWOP status would "waive their rights to challenge such resignation, including, but not limited to, through a contractual or statutory disciplinary process." (*Id.*)

Plaintiff claims that she never signed the LWOP because "it demanded that she waive her due process rights to a § 3020-a arbitration on her medical appeal to get back on salary." (*Id.* ¶ 24.) She claims that, because she never waived her rights by signing the LWOP, she remained under tenure protections, and therefore should have received a § 3020-a hearing on her medical exemption requests. (*Id.* ¶¶ 24, 61–62.) Plaintiff also claims that she never received a medical evaluation known as "EDN § 2568," which she asserts "is mandatory when a NYC DOE employee asks for a work-related medical accommodation." (*Id.* ¶ 25.)

According to Plaintiff, the New York Court of Appeals found the appeals procedure for the COVID-19 vaccine mandate to be unconstitutional and ordered all appeals for religious exemptions (though not medical exemptions) to be heard by a new panel. (*Id.* ¶ 26.) Plaintiff also claims that Martin Scheinman, the arbitrator who wrote

---

[7] Extending LWOP status would have also allowed for extended health insurance coverage (through September 5, 2022). (Ex. D to Compl., ECF No. 1, at ECF p. 43.)

the Arbitration Agreement, "admitted to deliberately and in bad faith creating LWOP . . . to remove teachers like Plaintiff, who had tenure, without a due process hearing," and that he later "issued a new Award in which he apologized to all that he had created the LWOP for no reason other tha[n] he thought it was right at the time." (*Id.* ¶ 27; Pl.'s Opp'n, ECF No. 18, at 23.)

On January 31, 2022, Plaintiff received an email from the DOE Division of Human Resources notifying her that "[s]ince you have not complied with the Order and have not chosen to extend your leave without pay, despite notice and an opportunity to do so, your employment with the New York City Department of Education is terminated, effective February 11, 2022." (*See* Ex. H to Compl., ECF No. 1, at ECF p. 68.) On February 10, 2022, Plaintiff's health insurance was discontinued. (Compl., ECF No. 1, ¶ 28; *see also* Ex. H to Compl., ECF No. 1, at ECF p. 68 (notifying that health insurance will cease upon termination).) Her employment was terminated the next day. (Compl., ECF No. 1, ¶ 28.)[8]

On or around April 10, 2022, Plaintiff claims she learned that her record contained a "Problem Code," which meant that "she was now unable to work in any position for the NYC DOE or any vendor because she was deemed guilty of

_____

[8] Plaintiff includes as an exhibit to the complaint a March 7, 2022 email from the City's Reasonable Accommodation Appeals Panel denying an appeal of a reasonable accommodation request. (Ex. C to Compl., ECF No. 1, at ECF p. 32.) The email stated that the Panel's determination "represents the final decision with respect to your reasonable accommodation request," and that the "decision classification for your appeal is as follows: DOE has demonstrated that it would be an undue hardship to grant this accommodation to the employee given the need for a safe environment for in-person learning." (*Id.*) The email further stated that, for DOE employees, "[p]ursuant to New York City Department of Education policy, you have seven calendar days to extend your Leave Without Pay or return to work. If you do neither, you will be subject to termination." (*Id.*) Notably, the email does not appear to be addressed to Plaintiff. (*See id.* (noting Maria Ruscelli as the addressee).)

7

Case 1:24-cv-06123-RPK-TAM   Document 22   Filed 08/22/25   Page 13 of 62 PageID #:
Case 1:24-cv-06123-RPK-TAM   Document 20   Filed 07/31/25   Page 8 of 57 PageID #:
348

misconduct, and she would be blocked from getting paid by the NYC DOE or any vendor." (*Id.* ¶¶ 39, 29.) A UFT administrative assistant confirmed that Plaintiff's record included a problem code, and that this code was added to "all employees who were placed on 2VM vaccine mandate leave" but would be removed once Plaintiff was "eligible to return to work." (Ex. J to Compl., ECF No. 1, at ECF p. 78; Compl., ECF No. 1, ¶ 39.) Plaintiff claims that she received the problem code "as a direct result of her inability to get vaccinated due to her medical challenges, not due to any intentional disregard of the LWOP and the [COVID Vaccine Mandate]." (Compl., ECF No. 1, ¶ 43.)

On or around February 22, 2023, Plaintiff claims she was told that her file still contained a problem code. (*Id.* ¶ 30.) Plaintiff sent Defendant Rodi an email on February 22, 2023, requesting a formal due process hearing to protest her termination and the inclusion of a problem code on her file. (*Id.* (citing Ex. K to Compl., ECF No. 1, at ECF p. 80 (February 22, 2023 email from Plaintiff to Defendant Rodi)).) Defendant Rodi never responded. (*Id.*)

In sum, Plaintiff alleges that Defendants "had actual knowledge of Plaintiff's medical issues proving that she needed to obtain a medical exemption (ME) from getting vaccinated with the COVID Vaccine as a matter of health but chose to ignore the information and denied her ME appeals without any details or reason, and terminated her employment." (*Id.* ¶ 47.) Plaintiff further claims that Defendants "engaged in selective enforcement of their own laws, rules, regulations, and ordinances against Plaintiff based upon the Plaintiff's religion and Plaintiff's constitutionally protected conduct." (*Id.* ¶ 54.) Plaintiff also asserts that Defendants could have continued to employ Plaintiff despite her unvaccinated status, as Defendants reassigned other teachers to virtual classrooms and "rubber rooms." (*Id.* ¶¶ 48–50; Ex. M to Compl., ECF No. 1, at ECF p. 84 (May 6, 2022 teaching position listing for remote teachers).) Finally,

Plaintiff alleges that other teachers received medical exemptions to and accommodations for the Vaccine Mandate. (*Id.* ¶ 35 ("Teacher A. P. was a teacher with identical medical issues as Plaintiff, and she was given an extension of her ME without a review of any doctor and no specified reason, until January 2023"); Ex. L to Compl., ECF No. 1, at ECF p. 82 (December 8, 2022 email to "AP" extending medical exemption and being given a non-school work location).)

## II. Procedural History

As noted above, Plaintiff initiated this action on August 30, 2024. (*See* Compl., ECF No. 1.) That same day, proposed summons for Defendants were filed, which included a 65 Court Street, Brooklyn, New York 11201 address for Defendants DOE and Banks, and a 100 Gold Street, New York, New York 10038 address for Defendant Rodi. (Summons Issued, ECF No. 3.)

Plaintiff filed proof of service on September 26, 2024, indicating that she served all three Defendants at 100 Church Street, New York, New York 10007, by leaving a copy of the complaint and summons with Ariton Marke, a legal clerk who identified himself as being authorized to accept service, and, for Defendants Rodi and Banks, also by mailing a copy of the complaint and summons to the 100 Church Street address, by way of the New York City Law Department. (*See* Summons Returned Executed, ECF No. 8; Summons Returned Executed, ECF No. 7 (indicating mailing addressed to "C/O New York City Law Department"); Summons Returned Executed, ECF No. 9 (same).)

After corporation counsel appeared on behalf of the DOE on October 3, 2024, the DOE moved for an extension of time to respond to the complaint, and noted that Plaintiff, who did not consent to the extension, requested that she be given a 30-day extension to submit her own response. (Not. of Appearance, ECF No. 10; Letter Mot. for Extension of Time to File, ECF No. 11.) The Court granted the motion and directed

9

Case 1:24-cv-06123-RPK-TAM   Document 22   Filed 08/22/25   Page 15 of 62 PageID #:
Case 1:24-cv-06123-RPK-TAM   Document 21   Filed 07/31/25   Page 10 of 57 PageID #:
350

Defendants to answer or otherwise respond to the complaint by November 15, 2024.
(Oct. 7, 2024 ECF Order.) The Court denied Plaintiff's request for a 30-day extension of
time to respond since the Federal Rules of Civil Procedure do not require Plaintiff to file
a response to Defendants' answer. (*Id.*)

On October 9, 2024, Plaintiff filed a letter indicating that Defendant DOE would
be filing a motion to dismiss, seeking clarification as to the motion to dismiss briefing
schedule, and requesting that a district judge be assigned to the case because the case
was originally assigned solely to the undersigned Magistrate Judge. (Letter, ECF No.
12.) Judge Kovner was subsequently assigned to the case. (Oct. 10, 2024 ECF Not. to
Assign District Judge; Oct. 11, 2024 ECF Case Reassignment.)

Defendants filed their motion to dismiss on November 15, 2024. (Notice of Mot.
to Dismiss, ECF No. 14; Defs.' Mem., ECF No. 15; Linnane Decl., ECF No. 16.) Judge
Kovner directed Plaintiff to respond by December 20, 2024, and directed Defendants
that they may file a reply by January 3, 2025. (Nov. 18, 2024 ECF Order.) Plaintiff filed
her opposition to the motion to dismiss on December 20, 2024. (Pl.'s Opp'n, ECF No.
18.) Defendants filed a reply on January 3, 2025. (Reply, ECF No. 19.) On February 26,
2025, Judge Kovner referred the motion to the undersigned Magistrate Judge for a
report and recommendation. (Feb. 26, 2025 ECF Order Referring Mot.)

For the reasons set forth below, the Court respectfully recommends granting
Defendants' motion to dismiss.

## DISCUSSION

Based on the allegations described above, Plaintiff asserts eight causes of action,
which the Court "construe[s] liberally" given her *pro se* status. *Hogan v. Fischer*, 738 F.3d
509, 515 (2d Cir. 2013). So construed, the complaint includes the following claims:
(1) unlawful discrimination under § 1983; (2) discrimination under Title VII of the Civil

Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act ("ADA"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"); (3) failure to accommodate under Title VII, the ADA, the NYSHRL, and the NYCHRL; (4) a procedural due process violation under the Fourteenth Amendment; (5) an equal protection violation under the Fourteenth Amendment; (6) a Fourth Amendment search and seizure violation; (7) violations of New York Education Laws § 3020 and § 3020-a; and (8) fraud in the inducement.[9] (*See generally* Compl., ECF No. 1[10]; Pl.'s Opp'n, ECF No. 18.)

Defendants seek to dismiss Plaintiff's complaint in its entirety, with prejudice, arguing that it contains several procedural deficiencies and that Plaintiff's factual allegations are insufficient. Defendants first challenge the sufficiency of service as to Defendants Banks and Rodi and request that all claims against the individual defendants be dismissed for improper service. (Defs.' Mem., ECF No. 15, at 7–8.) Second, Defendants contend that Plaintiff's failure to exhaust her administrative remedies prevents her from bringing claims under Title VII, the ADA, the NYSHRL, and the NYCHRL. (*Id.* at 8–10.) Third, Defendants argue that the NYSHRL and NYCHRL claims are time-barred. (*Id.* at 11–12.) Finally, Defendants argue that Plaintiff's remaining constitutional and state law claims fail as a matter of law. (*Id.* at 12–25.)

---

[9] For the reasons discussed below, the court analyzes Plaintiff's constitutional claims under the rubric of § 1983.

[10] Plaintiff does not specify in the complaint which causes of action are alleged as to specific Defendants. (*See generally* Compl., ECF No. 1.) The Court therefore construes the complaint to assert each claim against all Defendants.

11

Case 1:24-cv-06123-RPK-TAM    Document 22    Filed 08/22/25    Page 17 of 62 PageID #:
Case 1:24-cv-06123-RPK-TAM    Document 21    Filed 07/31/25    Page 12 of 57 PageID #:
352

## I. Procedural Requirements

Defendants assert that several claims in Plaintiff's complaint should be dismissed for various procedural and timing-related deficiencies. The Court addresses each purported deficiency in turn.

### A. Sufficiency of Service as to Defendants Banks and Rodi[11]

#### 1. *Legal Standard*

Under Federal Rule of Civil Procedure 12(b)(5), a defendant may move to dismiss a complaint for "insufficient service of process." Fed. R. Civ. P. 12(b)(5). "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). Where a defendant moves to dismiss for improper service of process and for failure to state a claim, the court should typically address the jurisdictional issue first. *George v. Pro. Disposables, Int'l, Inc.*, 221 F. Supp. 3d 428, 442 (S.D.N.Y. 2016).

"A plaintiff may serve an individual in federal court as provided by Federal Rule of Civil Procedure 4(e), including but not limited to by following the law of the state where the district court is located." *Guthrie v. Rainbow Fencing Inc.*, No. 21-CV-5929 (KAM) (RML), 2025 WL 871649, at *4 (E.D.N.Y. Mar. 20, 2025) (citing Fed. R. Civ. P. 4(e)(1)). N.Y. C.P.L.R. § 308 provides that service may be completed upon a person by delivering the summons and complaint "to a person of suitable age and discretion at

---

[11] While Defendants do not cite Federal Rule of Civil Procedure 12(b)(5) in their arguments as to service, their arguments clearly fall under Rule 12(b)(5), and the Court therefore assesses the arguments as to service under the 12(b)(5) legal standard. (*See* Defs.' Mem., ECF No. 15, at 7–8; Reply, ECF No. 19, at 3.) Additionally, as Defendants do not challenge the sufficiency of service as to Defendant DOE, the Court only assesses whether Defendants Banks and Rodi were improperly served. (*See* Defs.' Mem., ECF No. 15, at 7–8.)

the actual place of business, dwelling place or usual place of abode" and by mailing the summons to the individual's last known residence or place of business. N.Y. C.P.L.R. § 308. "New York law requires strict compliance with both the personal delivery and mailing requirements of CPLR § 308(2)." *Asset Recovery 23, LLC v. Gasper*, No. 15-CV-5049 (RJD) (CLP), 2018 WL 5849763, at *6 (E.D.N.Y. Sept. 11, 2018), *report and recommendation adopted*, 2018 WL 5847102 (E.D.N.Y. Nov. 8, 2018).

"Once a defendant challenges the sufficiency of service of process, the burden of proof is on the plaintiff to show the adequacy of service." *George*, 221 F. Supp. 3d at 432 (quotation marks omitted). And "[a]lthough *pro se* litigants must be afforded a certain amount of latitude, they are still required to attempt to comply with procedural rules [like those of service of process], especially when they can be understood without legal training and experience." *Yadav v. Brookhaven Nat. Lab'y*, 487 F. App'x 671, 672 (2d Cir. 2012) (summary order). If service of process is insufficient, district courts have discretion to dismiss the claims against the improperly served defendant, but "dismissal is not mandatory." *Darden v. DaimlerChrysler N. Am. Holding Corp.*, 191 F. Supp. 2d 382, 387 (S.D.N.Y. 2002); *Williams-Steele v. Trans Union*, No. 12-CV-310 (GBD) (JCF), 2013 WL 3892813, at *3 (S.D.N.Y. July 29, 2013) ("Where service has not been proper, the Court has broad discretion either to dismiss the action or to quash the improper service and extend the time for service." (quotation marks omitted)).

    2. *Analysis*

Defendants argue that Defendants Rodi and Banks were not properly served under Rule 4 of the Federal Rules of Civil Procedure. (Defs.' Mem., ECF No. 15, at 7–8; Reply, ECF No. 19, at 3.) More specifically, Defendants argue that serving Defendants Rodi and Banks at 100 Church Street was improper because it is not either Defendant's "actual place of business, dwelling place or usual place of abode," and no one at that

Case 1:24-cv-06123-RPK-TAM    Document 22    Filed 08/22/25    Page 19 of 62 PageID #:
Case 1:24-cv-06123-RPK-TAM    Document 16    Filed 07/31/25    Page 14 of 57 PageID #:
354

address is authorized to accept service on their behalf. (Defs.' Mem., ECF No. 15, at 7–8
(citing N.Y. C.P.L.R. §§ 308(1), 308(2)); Reply, ECF No. 19, at 3 (citing Fed. R. Civ. P.
4(e)).) In response, Plaintiff argues that service at the 100 Church Street address was
accepted, as indicated in the affidavits of service that were filed with the Court, and
therefore service was proper. (Pl.'s Opp'n, ECF No. 18, at 6–7; *see also* Summons
Returned Executed, ECF No. 7; Summons Returned Executed, ECF No. 9.) In the
complaint, Plaintiff does not clearly specify whether she sued Defendants Banks and
Rodi in their individual capacity or in their official capacity as DOE officials, which
could impact which kinds of service are proper. (*See generally* Compl., ECF No. 1.) *See,
e.g., Baity v. Kralik*, 51 F. Supp. 3d 414, 430 (S.D.N.Y. 2014) (finding service on county
clerk sufficient for an official sued in his official capacity, but insufficient for suit in his
individual capacity).

　　　Here, regardless of individual or official capacity, the Court does have concerns
about the sufficiency of service on Defendants Banks and Rodi. The Individual
Defendants were not served at the addresses listed for them on the proposed summons
but were instead served at the New York City Law Department service address, 100
Church Street. (*See* Summons Issued, ECF No. 3; Summons Returned Executed, ECF No.
7; Summons Returned Executed, ECF No. 9.) However, given that the Court will
ultimately recommend dismissing all of Plaintiff's claims and granting her leave to file
an amended complaint, the Court declines to recommend dismissal of the claims
against Defendants Banks and Rodi due to improper service. Instead, the Court
recommends that Plaintiff be allowed to cure her deficient service by properly serving
her amended complaint upon the Defendants named in any amended complaint. *See
Darden*, 191 F. Supp. 2d at 387; *Williams-Steele*, 2013 WL 3892813, at *3.

14

**B. Exhaustion of Administrative Remedies**

Defendants next argue that Plaintiff has failed to exhaust her available administrative remedies. (Defs.' Mem., ECF No. 15, at 8–10.) More specifically, Defendants argue that (1) Plaintiff's discrimination claims under the ADA and failure to accommodate claims under Title VII must be dismissed because Plaintiff did not timely file a charge with the Equal Employment Opportunity Commission ("EEOC") before initiating this suit; and (2) certain of Plaintiff's claims against the DOE must be dismissed because Plaintiff did not timely file a notice of claim in accordance with Section 3813 of the New York Education Law. (*Id.*; Reply, ECF No. 19, at 5.)

1. *Federal Claims*

Defendants assert that Plaintiff did not timely file a charge with the EEOC before initiating this suit, and because she has not exhausted her administrative remedies, her ADA and Title VII claims must be dismissed.

As a "precondition" to filing Title VII and ADA claims in federal court, "a plaintiff must first pursue available administrative remedies and file a timely complaint with the EEOC." *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) (Title VII claims); *Soules v. Conn., Dep't of Emergency Servs. & Public Prot.*, 882 F.3d 52, 57 (2d Cir. 2018) (ADA and Title VII claims). To exhaust these remedies, the plaintiff is required to file timely administrative charges with the EEOC or the state agency equivalent within 300 days of when the alleged discriminatory conduct took place. *See Hoffman v. Williamsville Sch. Dist.*, 443 F. App'x 647, 649–50 (2d Cir. 2011) (summary order). The plaintiff must then await "dismissal of the administrative charge (or a failure to act)," which results in a "right-to-sue" letter. *McPherson v. New York City Dep't of Educ.*, 457 F.3d 211, 213–14 (2d Cir. 2006). Failure to exhaust administrative remedies is an affirmative defense, for

Case 1:24-cv-06123-RPK-TAM    Document 22    Filed 08/22/25    Page 21 of 62 PageID #:
Case 1:24-cv-06123-RPK-TAM    Document 21    Filed 07/31/25    Page 16 of 57 PageID #:
356

which Defendants have the burden of proof. *Hardaway v. Hartford Pub. Works Dep't*, 879

F.3d 486, 488, 490 (2d Cir. 2018).

In response to Defendants' claims, Plaintiff argues that she did exhaust her

administrative remedies before seeking court intervention. (Pl.'s Opp'n, ECF No. 18, at

7.) She states that (1) she filed several requests with Defendants for a medical exemption

or accommodation, which were denied without justification; (2) she submitted a

§ 3020-a hearing request to "preserve her rights to a due process arbitration"; and

(3) she filed a notice of claim on February 23, 2023, and includes what appears to be the

text of the claim in her opposition brief. (*Id.* at 7–11; *see also* Ex. R to Pl.'s Opp'n, ECF

No. 18, at ECF pp. 45–46.[12]) Plaintiff further notes that she never received a medical

evaluation in accordance with Education Law § 2568, which she argues is required

when a DOE employee seeks a medical accommodation.[13] (*Id.* at 7.) In reply, Defendants

argue that Plaintiff has not contested that she failed to file an EEOC claim, assert that

Plaintiff has not sufficiently shown that she filed a notice of claim, and posit that, even if

a notice of claim was filed, it was not timely filed. (Reply, ECF No. 19, at 3–5.)

---

[12] "While courts typically analyze a motion to dismiss by considering the facts alleged in the complaint, when a defendant raises an exhaustion argument, the Court may also consider EEOC papers [or other extrinsic evidence] the parties provide to the court." *Frazier v. Stanley*, No. 18-CV-804 (RJS), 2018 WL 11585450, at *12 n.7 (S.D.N.Y. Nov. 29, 2018) (citing, *inter alia*, *Deravin*, 335 F.3d at 201); *see also Benny v. City of Long Beach*, No. 20-CV-1908 (KAM), 2021 WL 4340789, at *5 (E.D.N.Y. Sept. 23, 2021) (noting that documents incorporated into the complaint by reference and documents integral to a plaintiff's claim may be considered).

[13] Plaintiff's reliance on New York Education Law § 2568 is misplaced. This statute allows the DOE to order an employee to submit to a medical examination "in order to determine the mental or physical capacity of such person to perform his duties, whenever it has been recommended in a report in writing that such examination should be made"; by its terms, it does not require the DOE to conduct a medical examination when an employee seeks medically-based accommodations. N.Y. Educ. Law § 2568.

Here, nothing in the record indicates that Plaintiff has filed an EEOC charge and received a right-to-sue letter, nor has Plaintiff pleaded that she filed such a charge. Further, although some courts have found that filing a complaint with a state agency may exhaust a litigant's administrative remedies, *see Soules*, 882 F.3d at 57, Plaintiff acknowledges in her opposition that her notice of claim was filed on February 23, 2023, more than 300 days after both the date that Plaintiff's employment was terminated (February 11, 2022) and the date Plaintiff claims she learned that her record contained a problem code (April 10, 2022). (*See* Compl., ECF No. 1, ¶¶ 28–29, 39; Pl.'s Opp'n, ECF No. 18, at 8–11.) Even if Plaintiff had alleged in her complaint that she filed a notice of claim, the notice of claim remains untimely filed. *See Hoffman*, 443 F. App'x at 649–50. Because Plaintiff has not established that she filed a formal charge with the EEOC or timely filed her notice of claim, the Court recommends that Plaintiff's ADA and Title VII claims be dismissed.[14]

2. *Compliance with New York Education Law § 3813(1)*

a. Legal Standard

"Employment discrimination claims that are brought against a school district, board of education, or school officer are subject to the notice of claim requirements contained in Education Law § 3813(1)." *Benedith v. Malverne Union Free School Dist.*, 38 F. Supp.3d 286, 311 (E.D.N.Y. 2014), *abrogated in part on other grounds by Agosto v. New York City Dep't of Educ.*, 982 F.3d 86 (2d Cir. 2020); *see also Bacchus v. New York City Dep't of Educ.*, 137 F. Supp.3d 214, 234 (E.D.N.Y. 2015). Section 3813 states that no action shall

---

[14] While the Court generally construes the complaint to assert each claim against all Defendants, *see supra* note 10, Title VII claims cannot be brought against individual defendants. *See Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000). To the extent that Plaintiff alleges Title VII claims against Defendants Banks and Rodi, those claims fail on this basis.

17

Case 1:24-cv-06123-RPK-TAM    Document 22    Filed 08/22/25    Page 23 of 62 PageID #:
Case 1:24-cv-06123-RPK-TAM    Document 20    Filed 07/31/25    Page 18 of 57 PageID #:
358

proceed against a school district unless "it shall appear by and as an allegation in the complaint or necessary moving papers that a written verified claim upon which such action or special proceeding is founded was presented to the governing body of said district or school within three months after the accrual of such claim." N.Y. Educ. Law § 3813(1).

"It is well settled that compliance with Section 3813 is a condition precedent to commencement of an action against a school board, its members or employees." *Brtalik v. S. Huntington Union Free Sch. Dist.*, No. 10-CV-10 (LDW), 2010 WL 3958430, at *4 (E.D.N.Y. Oct. 6, 2010); *see also Putkowski v. Warwick Valley Cent. Sch. Dist.*, 363 F. Supp. 2d 649, 653 (S.D.N.Y. 2005) (noting that the New York Court of Appeals has "clearly stated" that an action against a school district or board of education may not proceed "unless a notice of claim has been presented to the governing body, and this court may not disregard its pronouncement" (quotation marks omitted)).

A plaintiff must file the notice of claim within 90 days, or three months, of the alleged discriminatory act. *Putkowski*, 363 F. Supp. 2d at 653; N.Y. Educ. Law § 3813(1). "Where a plaintiff fails to file a notice of claim that complies with the statute's requirements, the plaintiff's claims may be dismissed as a matter of law." *Schwetz v. Bd. of Coop. Educ. Servs. of Nassau County*, No. 21-CV-3396 (PKC) (LGD), 2024 WL 4350530, at *9 (E.D.N.Y. Sept. 30, 2024), *appeal filed*, No. 24-2957 (2d Cir. Oct. 29, 2024). Compliance with the notice of claim provision should be alleged in the complaint. *See Hartley v. Rubio*, 785 F. Supp. 2d 165, 184–85 (S.D.N.Y. 2011).

However, if a plaintiff's suit seeks to "vindicate a public interest," rather than enforce a private right, then the plaintiff may bypass the notice of claim requirement. *Putkowski*, 363 F. Supp. 2d at 654; *see also Bloom v. New York City Bd. of Educ. Tchrs.' Ret. Sys. of City of New York*, No. 00-CV-2728 (HBP), 2003 WL 1740528, at *14 (S.D.N.Y. Apr.

18

2, 2003). As the New York Court of Appeals explained in a case challenging sex-based

discrimination experienced by a teacher:

> It is true, of course, that this proceeding was triggered by the complaint of
> this one teacher and that the relief granted below will redound to the
> benefit of that teacher as well as to the benefit of other teachers similarly
> situated. Such circumstances cannot be allowed, however, to obscure the
> fact that advantages which accrue to these teachers stem not from their
> rights of contract or other individual entitlement but rather flow as an
> appropriate and intended consequence of the vindication by the division,
> acting on behalf of the public, of the public's interest in the elimination of
> discrimination based on sex — a public interest duly declared by
> legislative enactment.

*Union Free Sch. Dist. No. 6 of Islip & Smithtown v. New York State Hum. Rts. Appeal Bd.*, 35

N.Y.2d 371, 380 (1974). However, where a plaintiff brings a lawsuit with claims *solely*

pertaining to the plaintiff and seeking relief *solely* limited to the plaintiff, the lawsuit

does not vindicate the public interest. *See Picciano v. Nassau County Civil Service

Commission*, 736 N.Y.S.2d 55, 59–60 (N.Y. App. Div. 2d Dep't 2001) (finding that

plaintiff's complaint would not vindicate a public interest as "the disposition of the

plaintiff's case will not directly affect the rights of others, particularly since the extent of

his alleged disability and any job accommodations would be an individualized

determination"); *Newman v. Leroy Cent. Sch. Dist.*, No. 07-CV-6299 (MAT), 2008 WL

974699, at *3 (W.D.N.Y. Apr. 8, 2008) (finding a plaintiff who "does not allege that the

decision to deny her tenure and request her resignation were made pursuant to a

discriminatory policy that affects a larger group of similarly situated employees at the

school" was not seeking to vindicate a public interest); *Bloom*, 2003 WL 1740528, at *14

(finding that the plaintiff's allegations of discriminatory conduct did not refer to any

Case 1:24-cv-06123-RPK-TAM   Document 22   Filed 08/22/25   Page 25 of 62 PageID #:
Case 1:24-cv-06123-RPK-TAM   Document 22   Filed 07/31/25   Page 20 of 57 PageID #:
360

actions taken with respect to others, and her requested relief sought money damages for alleged wages and back pay for her alone).[15]

    b. Analysis

    Plaintiff's NYSHRL and NYCHRL claims against Defendants can only proceed if the notice of claim requirement under Section 3813 has been met.[16] *See Putkowski*, 363 F. Supp. 2d at 653. Here, the notice of claim requirement applies to all Defendants, as Defendants Banks and Rodi are considered "school officers" within the meaning of New York Education Law. N.Y. Educ. Law § 2(13) (defining a school officer as "a member of a board of education or other body in control of the schools by whatever name known in a union free school district, central school district, central high school district, or in a city school district . . . or other elective or appointive officer in a school district whose duties generally relate to the administration of affairs connected with the public school system"); *see also Avgerinos v. Palmyra-Macedon Cent. Sch. Dist.*, 690 F.

---

[15] There is a second exemption to the notice of claim requirement. "[I]n some instances courts have allowed a complaint of discrimination filed with the EEOC or the [New York State Division of Human Rights, or] NYSDHR to substitute for the actual notice of claim." *Bacchus*, 137 F. Supp. 3d at 234; *see also Brtalik*, 2010 WL 3958430, at *4–5 (collecting cases and noting that the courts are "not uniform" in their decisions as to whether other documents "can be deemed sufficient to satisfy the Section 3813 notice of claim requirement"). This exemption is not relevant here, as Plaintiff does not allege that she ever filed a complaint with the EEOC or the NYSDHR.

[16] Defendants' opening memorandum indicated that Defendants sought to dismiss "Plaintiff's claims against [D]efendant DOE" on the grounds that Plaintiff failed to timely file a notice of claim. (Defs.' Mem., ECF No. 15, at 10.) Defendants later clarified that their notice of claim arguments only apply to the NYSHRL and NYCHRL causes of action. (*See* Reply, ECF No. 19, at 5; *see also* Pl.'s Opp'n, ECF No. 18, at 12.) The Court's recommendation regarding the notice of claim requirement under § 3813 therefore solely pertains to Plaintiff's NYSHRL and NYCHRL claims. *See, e.g., Felder v. Casey*, 487 U.S. 131, 139 (1988) (finding that notice of claim requirements are not applicable to § 1983 claims).

Supp. 2d 115, 127 (W.D.N.Y. 2010); *Rubin v. New York City Bd. of Educ.*, No. 20-CV-10208 (LGS) (KHP), 2023 WL 1972729, at *18 (S.D.N.Y. Jan. 6, 2023) (finding Rodi was a "school officer" subject to the notice of claim requirement), *report and recommendation adopted*, 2023 WL 2344731 (S.D.N.Y. Mar. 3, 2023).

Defendants dispute both the existence of Plaintiff's notice of claim and its timeliness. In her opposition, Plaintiff alleges that she did file a notice of claim, and includes what could be excerpts from the content of her notice of claim in her brief. (*See* Pl.'s Opp'n, ECF No. 18, at 8–11.) However, it is not entirely clear from the record whether the language in Plaintiff's opposition is in fact excerpted from a notice of claim she filed, nor is it clear that Plaintiff formally filed and served the notice on the DOE governing board, as required under Section 3813(1). *See Bacchus*, 137 F. Supp. 3d at 234. And though the Court can broadly construe Plaintiff's allegations in her pleadings and opposition, courts assessing notice of claim compliance have strictly enforced the requirement that compliance, including the notice to the governing board, must be alleged in the complaint. *See Putkowski*, 363 F. Supp. 2d at 653–54; *Hartley*, 785 F. Supp. 2d at 184–85. Additionally, even if Plaintiff had sufficiently pleaded in the complaint that she complied with the filing and service requirements of Section 3813(1), accepting the facts in Plaintiff's pleadings as true, her notice of claim was filed more than three months after the challenged conduct took place and is therefore untimely. *See Putkowski*, 363 F. Supp. 2d at 653.

Neither party addresses whether Plaintiff may be exempt from the notice of claim requirement for seeking to "vindicate a public interest." *Id.* at 654. Nevertheless, the Court finds it prudent to assess whether this exemption may apply here in light of Plaintiff's *pro se* status. Plaintiff's complaint challenges a policy that governed all DOE teachers (though the policy has since been rescinded). (*See generally* Compl., ECF No. 1.)

21

Case 1:24-cv-06123-RPK-TAM    Document 22    Filed 08/22/25    Page 27 of 62 PageID #:
Case 1:24-cv-06123-RPK-TAM    Document 21    Filed 07/31/25    Page 22 of 57 PageID #:
362

Challenges to potentially discriminatory policies and enactments may vindicate both the interests of similarly situated individuals, as well as "the public's interest in the elimination of discrimination." *Union Free Sch. Dist.*, 35 N.Y.2d at 380. However, while Plaintiff's complaint sought to challenge a far-reaching policy, her claims only pertain to herself. *Picciano*, 736 N.Y.S.2d at 60 (finding failure to accommodate and disability discrimination claims would result in an "individualized determination" and therefore do not vindicate the public interest); *see also Bloom*, 2003 WL 1740528, at *14.

As to relief, Plaintiff seeks "all compensatory, emotional, psychological and punitive damages," including "[a]warding Plaintiff her tenured position, salary steps and raises, earned before October 2021, in full, with benefits," and "[a]warding Plaintiff all the back pay owed since she was removed from her salary in 2021." (Compl., ECF No. 1, at 21.) Plaintiff does include a request for injunctive relief in her complaint, but she does not specify what the requested injunction would entail. (*See id.*) Further, given that all other relief sought solely pertains to Plaintiff, it seems likely that any requested injunctive relief would similarly be limited to her. Because "the disposition of the [P]laintiff's case will not directly affect the rights of others," as her claims and requests for relief do not seek to vindicate rights beyond her own, the Court recommends finding that Plaintiff's claims are not exempt from the § 3813 notice of claim requirement. *Picciano*, 736 N.Y.S.2d at 60.

For the reasons set forth above, the Court respectfully recommends dismissing Plaintiff's NYSHRL and NYCHRL claims due to Plaintiff's failure to establish that she filed the required notice of claim.

3. *Timeliness of Plaintiff's NYSHRL and NYCHRL Claims*[17]

In addition to the notice of claim arguments, Defendants also argue that

Plaintiff's NYSHRL and NYCHRL claims should be dismissed as time barred. (*See*

Defs.' Mem., ECF No. 15, at 11–12.)

Plaintiff's NYSHRL and NYCHRL claims against the DOE are subject to a one-

year statute of limitations. *See* N.Y. Educ. Law § 3813(2-b); *Vora v. New York City Dep't of*

*Educ.*, No. 22-CV-10891 (PGG) (SDA), 2024 WL 1421131, at *15 (S.D.N.Y. Jan. 24, 2024),

*report and recommendation adopted*, 2024 WL 1116312 (S.D.N.Y. Mar. 14, 2024) (finding

claims against the DOE and school officers subject to a one-year statute of limitations).

Plaintiff's NYSHRL and NYCHRL claims against Defendants Banks and Rodi are

similarly subject to a one-year statute of limitations, because Banks and Rodi are

"school officers" within the meaning of New York Education Law. *Vora*, 2024 WL

1421131, at *15 (finding one-year statute of limitations applies to school officers, and

three-year statute of limitations only applies to individuals who are not school officers);

N.Y. Educ. Law § 2(13); *Avgerinos*, 690 F. Supp. 2d at 127; *Rubin*, 2023 WL 1972729, at *18

(finding Rodi was a "school officer" subject to the notice of claim requirement).

Plaintiff initiated this action on August 30, 2024. (*See generally* Compl., ECF No.

1.) Therefore, any claims accruing before August 30, 2023, are time barred. *See Vora*,

2024 WL 1421131, at *15. Plaintiff was terminated on February 11, 2022, and alleges that

she learned of her problem code classification on April 10, 2022. (Compl., ECF No. 1,

---

[17] In addition to their arguments regarding the notice of claim and statute of limitations, Defendants argue that Plaintiff's NYSHRL and NYCHRL claims fail as a matter of law. (*See* Defs.' Mem., ECF No. 15, at 19–21.) Because the Court ultimately recommends dismissal on two separate grounds (Plaintiff did not fulfill the § 3813 notice of claim requirement and her claims are time barred), the undersigned declines to reach the merits of Plaintiff's NYSHRL and NYCHRL causes of action.

Case 1:24-cv-06123-RPK-TAM    Document 22    Filed 08/22/25    Page 29 of 62 PageID #:
Case 1:24-cv-06123-RPK-TAM    Document 446    Filed 07/31/25    Page 24 of 57 PageID #:
364

¶¶ 28–29.) The statute of limitations on Plaintiff's claims expired well before her August 30, 2024 complaint filing date.

Should the district court decline to dismiss Plaintiff's NYSHRL and NYCHRL claims for failure to timely file the notice of claim, the Court respectfully recommends that Plaintiff's NYSHRL and NYCHRL claims be dismissed as time barred.

\* \* \* \* \*

For the reasons stated above, the Court recommends that Plaintiff's Title VII, ADA, NYSHRL, and NYCHRL claims be dismissed for failure to exhaust administrative remedies. The Court further recommends that Plaintiff's NYSHRL and NYCHRL claims be dismissed as time barred. Finally, the Court recommends that, should Plaintiff be granted leave to amend her complaint, she should also be granted to leave to cure her deficient service by properly serving any individual defendants named in an amended complaint.

## II.  Motion to Dismiss for Failure to State a Claim

The Court will now address Defendants' arguments moving to dismiss Plaintiff's complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Plaintiff's remaining claims can be grouped into two categories: federal constitutional claims and non-constitutional state law claims. Plaintiff alleges unlawful discrimination under § 1983 and other constitutional violations. While Plaintiff does not allege her procedural due process, equal protection, and Fourth Amendment violations as part of her § 1983 claims, the Court construes her complaint broadly, as required for

*pro se* litigants, and analyzes all of her constitutional claims under the § 1983 rubric.[18] Ultimately, Plaintiff's constitutional claims fail because she has not pleaded any particularized facts establishing that she submitted evidence of a medical condition that would restrict her ability to receive the COVID-19 vaccine, nor has she pleaded any facts indicating that she requested any sort of accommodation on the basis of religion.[19] As to Plaintiff's non-constitutional claims, she asserts violations of New York Education Laws § 3020 and § 3020-a, and a claim for fraud in the inducement. These causes of action also fail because Plaintiff does not allege sufficient facts to plausibly establish her claims.

The Court will assess each set of claims, and the parties' arguments as to the plausibility of those claims, in turn.

## A. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, "a complaint must contain

---

[18] Section 1983 provides a "statutory vehicle" for constitutional claims "'against any person who deprives an individual of federally guaranteed rights "under color" of state law.'" *Bey v. Westbury Union Free Sch. Dist.*, No. 21-CV-2048 (RPK) (PK), 2022 WL 900615, at *8 (E.D.N.Y. Mar. 28, 2022) (quoting *Filarsky v. Delia*, 566 U.S. 377, 383 (2012)). Because Plaintiff is asserting constitutional violations against the DOE and Individual Defendants for their actions taken "under color of state law," Plaintiff's constitutional claims cannot be brought directly under the Constitution and must be alleged under § 1983. *Id.* (quotation marks omitted).

[19] In addition to the constitutional claims alleged in the complaint, Plaintiff refers to the First Amendment in her opposition. (*See* Pl.'s Opp'n, ECF No. 18, at 13 ("Plaintiff and her plea for an exemption from the vaccine were never heard by anyone. This is not in compliance with the [First] Amendment which gives Plaintiff the right to Freedom of Speech, and the Right To Petition the Government for a redress of grievances.").) To the extent that Plaintiff seeks to include any claims for violations of the First Amendment, the complaint does not contain sufficient facts to support a plausible finding of any such claims. Plaintiff has also not alleged any facts in the complaint itself regarding an imposition on her freedom of speech.

Case 1:24-cv-06123-RPK-TAM    Document 22    Filed 08/22/25    Page 31 of 62 PageID #:
Case 1:24-cv-06123-RPK-TAM    Document 28    Filed 07/31/25    Page 26 of 57 PageID #:
366

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on

its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff alleges facts that

allow "the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged," which requires establishing "more than a sheer possibility that a

defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556); *see also Hernandez

v. United States*, 939 F.3d 191, 198 (2d Cir. 2019) (explaining that courts are "not required

to credit conclusory allegations or legal conclusions couched as factual allegations");

*Jackson v. Nassau County*, 552 F. Supp. 3d 350, 364 (E.D.N.Y. 2021) ("'[A] plaintiff's

obligation to provide the grounds of his entitlement to relief requires more than labels

and conclusions, and a formulaic recitation of the elements of a cause of action will not

do.'" (quoting *Twombly*, 550 U.S. at 555)).

At the motion to dismiss stage, "all factual allegations in the complaint are

accepted as true and all inferences are drawn in the plaintiff's favor." *Littlejohn v. City of

New York*, 795 F.3d 297, 306 (2d Cir. 2015). When deciding a motion to dismiss, the court

does not "'weigh the evidence that might be presented at trial but merely . . .

determine[s] whether the complaint itself is legally sufficient.'" *Bertuglia v. City of New

York*, 839 F. Supp. 2d 703, 713 (S.D.N.Y. 2012) (quoting *Goldman v. Belden*, 754 F.2d 1059,

1067 (2d Cir. 1985)). In addition, although the scope of review for Rule 12(b)(6) motions

is generally limited to the complaint, courts may consider "'documents incorporated in

[the complaint] by reference' and documents which are 'integral to plaintiff['s] claim.'"

*Benny v. City of Long Beach*, No. 20-CV-1908 (KAM), 2021 WL 4340789, at *5 (E.D.N.Y.

Sept. 23, 2021) (alterations in original) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*,

949 F.2d 42, 47 (2d Cir. 1991)); *see also Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007);

*Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021) (reviewing on a 12(b)(6) motion to dismiss

"documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" (quotation marks omitted)).

Finally, "[i]t is well established that a court is ordinarily obligated to afford a special solicitude to pro se litigants." *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010). *Pro se* complaints, in particular, "'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). The court is therefore required to interpret the submissions of a *pro se* litigant "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quotation marks omitted). To that end, "[w]here new allegations in a pro se plaintiff's opposition memoranda 'are consistent with the allegations contained' in the Complaint, they may be read 'as supplements to th[e] pleadings.'" *Vail v. City of New York*, 68 F. Supp. 3d 412, 427 (S.D.N.Y. 2014) (quoting *Boyer v. Channel 13, Inc.*, Nos. 04-CV-2137, et al. (JSR) (FM), 2005 WL 2249782, at *6 (S.D.N.Y. Mar. 9, 2005)); *Chukwueze v. NYCERS*, 891 F. Supp. 2d 443, 448 (S.D.N.Y. 2012); *see also Adkins v. City of New York*, No. 19-CV-3628 (GBD) (DF), 2020 WL 2950979, at *5 (S.D.N.Y. Jan. 3, 2020) (finding that "courts should act with particular care" before dismissing a *pro se* plaintiff's complaint, "[e]specially in the civil rights context"), *report and recommendation adopted*, 2020 WL 1031130 (S.D.N.Y. Mar. 3, 2020). However, courts do not have to credit new causes of action raised for the first time in a *pro se* plaintiff's opposition. *See, e.g., Mathie v. Goord*, 267 F. App'x 13, 14 (2d Cir. 2008) (affirming the district court's rejection of a new constitutional cause of action raised in *pro se* plaintiff's opposition). And, although a *pro se* complaint must be "construed liberally . . . and interpreted to raise the strongest claims that it suggests," it must still state a plausible claim to relief. *Hogan*, 738 F.3d at 515.

27

Case 1:24-cv-06123-RPK-TAM    Document 22    Filed 08/22/25    Page 33 of 62 PageID #:
Case 1:24-cv-06123-RPK-TAM    Document 20    Filed 07/31/25    Page 28 of 57 PageID #:
368

### B. Analysis

#### 1. *Constitutional Claims Arising Under Section 1983*

Section 1983 provides, in pertinent part, that: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . causes . . . the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action . . . ." 42 U.S.C. § 1983; *see also Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). In order to maintain a claim under § 1983, "two essential elements must be present: (1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994); *see also Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87–88 (2d Cir. 2015). "Furthermore, a civil rights complaint 'must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple, and conclusory statements are insufficient to state a claim under § 1983.'" *Alsaifullah v. Travis*, 160 F. Supp. 2d 417, 420 (E.D.N.Y. 2001) (quoting *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 887 (2d Cir. 1987)).

Construing Plaintiff's complaint broadly, Plaintiff alleges § 1983 claims against both the DOE and Individual Defendants. For the reasons discussed herein, the Court finds that Plaintiff has not alleged any facts as to Defendant Banks's personal involvement in any alleged constitutional violations, as would be necessary to establish his liability under § 1983. The Court further finds that, while Plaintiff may be able to establish some elements of a municipal liability claim against Defendant DOE and has alleged some facts as to Defendant Rodi's personal involvement, Plaintiff does not adequately plead that she was deprived of any constitutional rights, and she has

therefore not sufficiently alleged any § 1983 claims against any Defendant. The Court

therefore recommends that Plaintiff's § 1983 and corresponding constitutional claims be

dismissed.

   a.   Municipal Liability Under Section 1983

   Under § 1983, the DOE may be liable for unconstitutional actions taken by its

employees where "the action that is alleged to be unconstitutional implements or

executes a policy statement, ordinance, regulation, or decision officially adopted and

promulgated by [the City]'s officers." *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690

(1978). To establish a municipal liability (or *Monell*) claim, "a plaintiff is required to

plead and prove three elements: (1) an official policy or custom that (2) causes the

plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New

York*, 490 F.3d 189, 195 (2d Cir. 2007) (quotation marks omitted); *Agosto*, 982 F.3d at 97.

Governments can only be held responsible for the actions of their employees when

"their official policies cause their employees to violate another person's constitutional

rights." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988). Therefore, a plaintiff must

"demonstrate that 'through its deliberate conduct, the municipality was the "moving

force" behind the injury alleged.'" *Agosto*, 982 F.3d at 98 (quoting *Bd. of City Comm'rs of

Bryan County, Okla. v. Brown*, 520 U.S. 397, 404 (1997)).

   Here, Plaintiff has stated sufficient facts to plead the first element of a *Monell*

claim, as her complaint challenges an official DOE policy. *Wray*, 490 F.3d at 195. The

Court also finds, given that Plaintiff includes numerous allegations as to Defendants'

actions regarding her termination process, Plaintiff has sufficiently alleged that the DOE

and its employees are responsible for the Mandate itself and its enforcement. *See

Praprotnik*, 485 U.S. at 122; *Agosto*, 982 F.3d at 98–99 (noting that the DOE chancellor is

responsible for official DOE policies). However, as the Court addresses below, Plaintiff

Case 1:24-cv-06123-RPK-TAM    Document 22    Filed 08/22/25    Page 35 of 62 PageID #:
Case 1:24-cv-06123-RPK-TAM    Document 22    Filed 07/31/25    Page 30 of 57 PageID #:
370

has not pleaded enough facts to establish a constitutional violation; therefore, her claims as to Defendant DOE's liability under § 1983 fail.

### b. Individual Liability Under Section 1983

"An individual may be held liable under . . . [§] 1983 only if that individual is 'personally involved in the alleged deprivation.'" *Littlejohn*, 795 F.3d at 314 (quoting *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 127 (2d Cir. 2004)); *see also Raspardo v. Carlone*, 770 F.3d 97, 115 (2d Cir. 2014) ("In order to . . . 'establish individual liability under § 1983, a plaintiff must show . . . that the defendant caused the plaintiff to be deprived of a federal right.'" (quoting *Back*, 365 F.3d at 122)). A plaintiff may establish "personal involvement" by showing that:

> (1) [T]he defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference . . . by failing to act on information indicating that unconstitutional acts were occurring.

*Littlejohn*, 795 F.3d at 314; *see also Sutter v. Dibello*, No. 18-CV-817 (SJF) (AKT), 2021 WL 930459, at *23 (E.D.N.Y. Mar. 10, 2021); *McClenic v. Shmettan*, No. 15-CV-705 (SJF) (SIL), 2015 WL 1930088, at *4 (E.D.N.Y. Apr. 28, 2015) ("A complaint based upon a violation under Section 1983 that does not allege facts establishing the personal involvement of an individual defendant fails as a matter of law.").

The Court broadly construes Plaintiff's complaint as alleging § 1983 individual liability claims against Defendants Banks and Rodi.[20] However, Plaintiff does not make any substantial allegations involving Defendant Banks, nor does she make any specific allegation regarding his involvement in the challenged conduct. The Court therefore recommends dismissal of any § 1983 claims against Banks.

Plaintiff does plead allegations specifically involving Defendant Rodi. She claims that Defendant Rodi testified regarding the problem codes, "flagged Plaintiff's personnel file," and did not respond to Plaintiff's email request complaining about her treatment and requesting reinstatement. (See Compl., ECF No. 1, ¶¶ 42–45.) Whether Defendant Rodi was actually involved in these matters is a separate issue, but the Court's inquiry at the motion to dismiss stage is whether a plaintiff has pleaded sufficient facts to state a claim, not whether those facts are true. See, e.g., Doe v. Columbia Univ., 831 F.3d 46, 48 (2d Cir. 2016) ("[A] court at this stage of our proceeding is not engaged in an effort to determine the true facts. The issue is simply whether the facts the plaintiff alleges, if true, are plausibly sufficient to state a legal claim."). While Plaintiff's assertion that Rodi provided public testimony about the problem codes does not indicate Rodi's involvement in any discrimination specifically targeted against Plaintiff, the Court notes that, accepting the allegations in the complaint as true, Plaintiff's claims that Rodi flagged her personnel file and failed to respond to Plaintiff's email complaining about the Mandate and her termination plausibly indicate that, if

---

[20] As previously discussed, it is not clear whether Plaintiff sued Defendants Banks and Rodi in their official or individual capacities. If Plaintiff has sued Individual Defendants in their official capacity, and not their individual capacity, any § 1983 claims against Defendants should be dismissed as a matter of law. See Valenti v. Massapequa Union Free Sch. Dist., No. 09-CV-977 (JFB) (MLO), 2010 WL 475203, at *1 n.2, *4 n.6 (E.D.N.Y. Feb. 5, 2010); Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989).

Case 1:24-cv-06123-RPK-TAM    Document 22    Filed 08/22/25    Page 37 of 62 PageID #:
Case 1:24-cv-06123-RPK-TAM    Document 21    Filed 07/31/25    Page 32 of 57 PageID #:
372

Plaintiff's termination implicated a constitutional violation, Plaintiff's claims as to

Rodi's individual liability may be able to proceed. *See Littlejohn*, 795 F.3d at 314 (finding

plaintiff can establish individual liability by showing that a defendant was directly

involved in the discrimination or failed to act on information or remedy the wrong after

being notified of the wrongdoing). However, here, like her municipal liability claims,

because Plaintiff has not shown that she was deprived of any constitutional right under

the Vaccine Mandate, any claims against Rodi fail.

    c.  <u>Discrimination Under Section 1983</u>

    The Court first turns to Plaintiff's allegation, brought under § 1983, that

Defendants discriminated against her on the basis of her medical condition and

disability, as well as her religion, in enforcing the Vaccine Mandate against her. (*See,

e.g.*, Compl., ECF No. 1, ¶ 45.) Plaintiff states that Defendants made her choose between

her health and her job and deprived her of her "constitutionally protected rights to be

free from workplace labels and abuse." (*Id.* ¶¶ 32–36.) She complains about the

"problem code" placed on her file, alleging that the problem code is a form of discipline

that both has an "'adverse impact'" and is an "'adverse action that is motivated by

punitive intent.'" (*Id.* ¶¶ 43, 41 (quoting *Monaco v. New York Univ.*, 164 N.Y.S.3d 87 (N.Y.

App. Div. 1st Dep't 2022), and citing *Matter of Soriano v. Elia*, 66 N.Y.S.3d 331 (N.Y. App.

Div. 3d Dep't 2017)).) Plaintiff also states that her "medical challenges and impairments

led directly to her being harassed and belittled by employees and her workplace peer

and supervisors." (*Id.* ¶ 33.)

    Defendants argue that Plaintiff has failed to allege with specificity the

constitutional deprivation she suffered due to Defendants' purportedly discriminatory

conduct. (Defs.' Mem., ECF No. 15, at 18.) They also aver, given that all courts within

the Second Circuit have approved vaccine mandates as a "lawful condition of

employment," her § 1983 claim on the basis of discrimination should be dismissed. (*Id.* at 17–18 (quoting *Broecker v. New York City Dep't of Educ.*, 585 F. Supp. 3d 299, 314 (E.D.N.Y. 2022); Reply, ECF No. 19, at 7–8.)

As previewed above, Plaintiff has not adequately alleged that her constitutional rights were violated as a result of her termination. Plaintiff claims that her termination for failure to comply with the Mandate deprived her of her "constitutionally protected rights to be free from workplace labels and abuse." (Compl., ECF No. 1, ¶¶ 32–36.) There is no such constitutional right. And without connecting her workplace allegations to some sort of constitutional violation conducted by or assented to by DOE officials, her claim does not implicate a violation addressable under § 1983.

Over the course of her complaint, Plaintiff claims that her termination by the DOE, pursuant to the Mandate, was due to discrimination on the basis of her religion, medical condition, and disability. (Compl., ECF No. 1, ¶¶ 45, 54.) But "the Constitution embodies no fundamental right that in and of itself would render vaccine requirements imposed in the public interest, in the face of a public health emergency, unconstitutional." *We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 293 (2d Cir. 2021); *see Jacobson v. Massachusetts*, 197 U.S. 11, 25–26 (1905). Further, as Defendants have argued, courts have repeatedly held that the Vaccine Mandate at issue in this case does not violate individuals' constitutional rights. *See, e.g., Garland v. New York City Fire Dep't*, No. 23-663, 2024 WL 445001, at *3 (2d Cir. Feb. 6, 2024) ("Both this court and many New York state courts have held that vaccination is a 'condition of employment.'" (quoting *We the Patriots USA*, 17 F.4th at 294)); *Beickert v. New York City Dep't of Educ.*, No. 22-CV-5265 (DLI) (VMS), 2023 WL 6214236, at *4 (E.D.N.Y. Sept. 25, 2023) (collecting cases); *Broecker*, 585 F. Supp. 3d at 314. To the extent that Plaintiff is challenging the legality of

33

Case 1:24-cv-06123-RPK-TAM   Document 22   Filed 08/22/25   Page 39 of 62 PageID #:
Case 1:24-cv-06123-RPK-TAM   Document 26   Filed 07/31/25   Page 34 of 57 PageID #:
374

the Vaccine Mandate, her § 1983 discrimination claim should be dismissed, as terminations for failure to comply with the Mandate are not unlawful.

Plaintiff may be able to assert a § 1983 claim if she can allege sufficient facts that indicate her termination was due to unlawful discrimination. However, Plaintiff has not pleaded "specific allegations of fact" establishing that her termination was the result of any discriminatory purpose, and not merely due to her failure to comply with the Mandate. *Alsaifullah*, 160 F. Supp. 2d at 420 (quotation marks omitted). Plaintiff broadly states that her termination was because of her disability, medical condition, and/or religion, but Plaintiff does not allege any particular facts as to her religion, and the only information in the record regarding Plaintiff's medical condition or disability is her diagnosis. (Compl., ECF No. 1, ¶ 15.) Moreover, Plaintiff has not alleged particularized facts to show that Defendants knew about her alleged diagnosis or her religion and acted in a discriminatory manner based on that knowledge.

Plaintiff also claims that the problem code placed on her profile was "motivated by a punitive intent," but punitive intent is not necessarily synonymous with discriminatory intent, and without further detail, Plaintiff has not plausibly alleged facts from which to infer discriminatory intent in a manner that implicates a fundamental or constitutional right, as opposed to that her treatment resulted from her lack of compliance with the Mandate and related DOE procedures. (*Id.* ¶ 41 (quotation marks omitted).) Additionally, Plaintiff herself alleges that the "problem code was placed on her file as a direct result of her inability to get vaccinated due to her medical challenges," which does not support her claim that the problem code placement was maliciously motivated. (*Id.* ¶ 43.) *See Carson Optical Inc. v. eBay Inc.*, 202 F. Supp. 3d 247, 255 (E.D.N.Y. 2016) ("[W]here plaintiff's own pleadings are internally inconsistent, a

34

court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss." (quotation marks omitted)).

Plaintiff has not pleaded sufficient facts to establish a discrimination claim under § 1983, nor has she plausibly alleged that her termination for failure to comply with the Mandate implicated or violated a constitutional right. The Court therefore recommends dismissing Plaintiff's § 1983 discrimination claim.

### d. Procedural Due Process[21]

The Court next turns to Plaintiff's procedural due process claim. The Fourteenth Amendment to the United States Constitution states, in part, that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. For a procedural due process claim to survive a motion to dismiss, a plaintiff must show "(1) he or she possesses a protected liberty or property interest, and (2) was deprived of that interest without constitutionally adequate process." *Garland v. City of New York*, 665 F. Supp. 3d 295, 304 (E.D.N.Y. 2023), *aff'd*, 2024

---

[21] Plaintiff's opposition brief also references a "substantive due process claim," though no such claim is included in the complaint. (Pl.'s Opp'n, ECF No. 18, at 14.) The Court need not consider or address new causes of action asserted in a plaintiff's opposition, even when the plaintiff is *pro se*. *See Mathie*, 267 F. App'x at 14. But, if the Court were to consider the claim, the Court would recommend dismissal. Substantive due process "protects against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense." *Cunney v. Bd. of Trs. of Vill. of Grand View*, 660 F.3d 612, 626 (2d Cir. 2011) (quotation marks omitted). To state a valid substantive due process claim, Plaintiff must allege: "(1) a valid property interest or fundamental right; and (2) that the defendant infringed on that right by conduct that shocks the conscience or suggests a gross abuse of governmental authority." *Leder v. Am. Traffic Sols., Inc.*, 81 F. Supp. 3d 211, 223 (E.D.N.Y. 2015) (quotation marks omitted). The "Second Circuit has never articulated a fundamental interest in public employment giving rise to substantive due process protection, and many other courts have explicitly declared that public employment is not protected by substantive due process." *Mathirampuzha v. Potter*, No. 08-CV-682 (JBA), 2010 WL 55061, at *9 (D. Conn. Jan. 4, 2010), *aff'd sub nom. Mathirampuzha v. Donahoe*, 423 F. App'x 108 (2d Cir. 2011); *see also Kampfer v. Argotsinger*, No. 18-CV-7 (LEK) (ATB), 2020 WL 906274, at *8 (N.D.N.Y. Feb. 25, 2020) (collecting cases). Further, Plaintiff has not alleged facts that would plausibly indicate that Defendants' decision to terminate her was conscience-shocking or a gross abuse of governmental power. *Leder*, 81 F. Supp. 3d at 223.

Case 1:24-cv-06123-RPK-TAM    Document 22    Filed 08/22/25    Page 41 of 62 PageID #:
Case 1:24-cv-06123-RPK-TAM    Document 338    Filed 07/31/25    Page 36 of 57 PageID #:
376

WL 445001 (2d Cir. Feb. 6, 2024); *see also O'Connor v. Pierson*, 426 F.3d 187, 196 (2d Cir. 2005).

As to the first prong, Plaintiff alleges that she was entitled to due process given that she possesses a property right in continued employment. (Pl.'s Opp'n, ECF No. 18, at 13.) Defendants do not contest that Plaintiff had a constitutionally protected property interest in her employment. "It is well established that the state-law property interest of government employees who may only be discharged for cause, such as tenured teachers, is a constitutionally protected property interest for purposes of the Fourteenth Amendment." *O'Connor*, 426 F.3d at 196. Therefore, the only remaining issue is "whether the available processes that Plaintiffs may invoke upon deprivation of their property interests and, specifically, upon *termination*, are constitutionally adequate." *Broecker*, 585 F. Supp. 3d at 311; *see also Locurto v. Safir*, 264 F.3d 154, 171 (2d Cir. 2001) ("When such a public employee is terminated, procedural due process is satisfied if the government provides notice and a limited opportunity to be heard prior to termination, so long as a full adversarial hearing is provided afterwards.").

Plaintiff next claims that she was denied her due process rights by not receiving a medical exemption appeal or § 3020-a hearing. (Pl.'s Opp'n, ECF No. 18, at 13–14; *see also* Compl., ECF No. 1, ¶ 34.) Defendants contend that courts have consistently held that the Vaccine Mandate and any employment decisions made because of the Mandate do not violate due process. (Defs.' Mem., ECF No. 15, at 14.) Defendants further assert that Plaintiff has not alleged or experienced any constitutionally deficient pre- or post-deprivation processes. Rather, Defendants posit that Plaintiff received "ample notice of the Vaccine Mandate, of the process to seek medical exemptions and appeals, her placement on LWOP if she failed to comply with the terms of the Vaccine Mandate, and her options and opportunities to respond." (*Id.*) As to post-deprivation process,

Defendants state that Plaintiff could have sought relief through an Article 78 proceeding, but chose not to do so, and because COVID-19 vaccination is a condition of employment, her termination due to her failure to receive a vaccine does not require an Education Law §§ 3020 and 3020-a hearing. (*Id.* at 15.)

Under New York law, "the termination of a public employee based on the employee's failure to satisfy a qualification of employment unrelated to job performance, misconduct, or competency does not implicate the disciplinary procedures set forth in N.Y. Educ. Law §§ 3020, 3020-a, or N.Y. Civil Service Law § 75." *Broecker*, 585 F. Supp. 3d at 318–19 (collecting cases). Defendants are correct that, as a matter of law, because the Vaccine Mandate creates a condition of employment, terminations due to an employee's failure to comply with the Mandate do not violate procedural due process. *See, e.g., Garland*, 665 F. Supp. 3d at 307 n.8 (collecting cases upholding vaccine as condition of employment); *Marciano v. de Blasio*, 589 F. Supp. 3d 423, 436 (S.D.N.Y. 2022). Defendants were therefore not obligated to offer Plaintiff alternative forms of employment, such as remote work, despite her protestations otherwise. (*See* Compl., ECF No. 1, ¶¶ 48–50.)

Further, Plaintiff has not plausibly alleged that she received constitutionally insufficient process. Plaintiff acknowledges that she received multiple emails regarding the Vaccine Mandate, her noncompliance, and her placement on LWOP. Accepting all facts in the complaint as true, Plaintiff has not shown that she was given insufficient pre-deprivation notice. *See Marciano*, 589 F. Supp. 3d at 436 (finding that multiple forms of notice providing an opportunity to respond provided a constitutionally adequate pre-deprivation process); *Broecker*, 585 F. Supp. 3d at 314 (similar). As to post-deprivation process, while Plaintiff alleges that she was entitled to a § 3020-a hearing or a medical exemption appeal, her termination under the Mandate does not qualify her

37

Case 1:24-cv-06123-RPK-TAM    Document 22    Filed 08/22/25    Page 43 of 62 PageID #:
Case 1:24-cv-06123-RPK-TAM    Document 20    Filed 07/31/25    Page 38 of 57 PageID #:
378

for a § 3020-a hearing, and there are no allegations indicating that Plaintiff was ever stopped from filing an exemption appeal.[22] (Pl.'s Opp'n, ECF No. 18, at 13–14; *see also* Compl., ECF No. 1, ¶ 34.) *Broecker*, 585 F. Supp. 3d at 314. Plaintiff also does not indicate that she ever pursued, or considered pursuing, an Article 78 proceeding in New York state court, though, as a matter of law, such a process was available to her. *Broecker*, 585 F. Supp. at 314; *Locurto*, 264 F.3d at 175 (holding that an Article 78 proceeding "constitutes a wholly adequate post-deprivation hearing for due process purposes").

Plaintiff took advantage of the pre-deprivation notice she received and requested an exemption to the Mandate, citing medical reasons. (*See* Compl., ECF No. 1, ¶ 16; Ex. D to Compl., ECF No. 1, at ECF p. 34.) Her allegations and the exhibits attached to the complaint indicate that she was denied because she never provided any evidence to show that she was entitled to an exemption from the vaccine. (Ex. D to Compl., ECF No. 1, at ECF pp. 40–41 (denying exemption because "Medical condition not valid reason to defer or delay vaccination"); *see* Ex. A(1) to Compl., ECF No. 1, at ECF p. 23 (doctor's note recommending Plaintiff receive the vaccine in three months).) Plaintiff is understandably unhappy with this result, but her disagreement with the decision to deny her request is not indicative of a due process violation. For the reasons stated

---

[22] As discussed above, Plaintiff includes as an exhibit to the complaint an appeal decision from the Reasonable Accommodations Appeals Panel, but the appeal does not appear to be addressed to Plaintiff. *See supra* n.8.

above, the Court respectfully recommends that Plaintiff's procedural due process claim be dismissed.[23]

 e.  <u>Equal Protection</u>

 Plaintiff also alleges that Defendants' actions violated the Equal Protection Clause of the Fourteenth Amendment. The Equal Protection Clause "'is essentially a direction that all persons similarly situated should be treated alike.'" *Barnes v. Ross*, 926 F. Supp. 2d 499, 506 (S.D.N.Y. 2013) (quoting *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)). To state an equal protection claim, "a plaintiff must demonstrate that he [or she] was treated differently than others similarly situated as a result of intentional or purposeful discrimination." *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005). "The Equal Protection Clause 'does not require that all persons be dealt with identically, but it does require that a distinction made have some relevance to the purposes for which the classification is made.'" *Clementine Co. v. Adams*, 74 F.4th 77, 89 (2d Cir. 2023) (quoting *Kwong v. Bloomberg*, 723 F.3d 160, 169 (2d Cir. 2013)).

 Construing Plaintiff's claims broadly, as required for *pro se* litigants, Plaintiff alleges equal protection claims under three separate theories: (1) religion,

---

[23] Plaintiff also complains about her "problem code" categorization. (*E.g.*, Compl., ECF No. 1, ¶¶ 22, 29, 39, 43.) To the extent that Plaintiff alleges a due process claim regarding the placement of the problem code (which could perhaps be brought as a "stigma plus" due process claim), that claim should fail for the same reasons her due process claims fail. *See Alterescu v. New York City Dep't of Educ.*, No. 21-CV-925 (KPF), 2022 WL 3646050, at *9–10 (S.D.N.Y. Aug. 23, 2022) (rejecting stigma plus claim where plaintiff was afforded constitutionally adequate process).

Case 1:24-cv-06123-RPK-TAM    Document 22    Filed 08/22/25    Page 45 of 62 PageID #:
Case 1:24-cv-06123-RPK-TAM    Document 21    Filed 07/31/25    Page 40 of 57 PageID #:
380

(2) disability / medical condition, and (3) selective enforcement. An assessment of each theory follows.

     i.  *Religion*

    To demonstrate an equal protection violation, plaintiffs must show they were "selectively treated compared with other similarly situated employees, and that selective treatment 'was based on impermissible considerations such as race, [or] religion.'" *Knight v. Conn. Dept. of Public Health*, 275 F.3d 156, 166 (2d Cir. 2001) (quoting *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000)). Plaintiffs must also demonstrate "purposeful or intentional discrimination" by the decisionmaker. *Am. Atheists, Inc. v. Port Auth. of NY and NJ*, 936 F. Supp. 2d 321, 338 (S.D.N.Y. 2013) (quotation marks omitted). The Second Circuit has recognized "three types of equal protection violations: (1) a facially discriminatory law; (2) a facially neutral statute that was adopted with a discriminatory intent and applied with a discriminatory effect . . . ; and (3) a facially neutral law that is enforced in a discriminatory manner." *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 945 F.3d 83, 110–11 (2d Cir. 2019) (quotation marks omitted). If a plaintiff can establish intentional discrimination based on religion, the challenged action is "'subject to strict judicial scrutiny.'" *Am. Atheists*, 936 F. Supp. 2d at 339 (quoting *Pyke v. Cuomo*, 567 F.3d 74, 77 (2d Cir. 2009)).

    Defendants argue that any equal protection claim on the basis of religion is insufficiently pleaded, as Plaintiff does not provide any allegations regarding her religious beliefs or establish that she applied for an exemption to the Vaccine Mandate on the basis of religion. (Defs.' Mem., ECF No. 15, at 16.)

    In her complaint, Plaintiff alleges that Defendants "unlawfully deprived the Plaintiff of her right to Equal Protection of the Laws, guaranteed by the Fourteenth Amendment of the United States Constitution, in that they engaged in selective

enforcement of their own laws, rules, regulations, and ordinances against Plaintiff based upon the Plaintiff's religion and Plaintiff's constitutionally protected conduct."[24] (Compl., ECF No. 1, ¶ 54.) Beyond those statements, the complaint does not contain other allegations regarding her religion or religious beliefs. In her opposition, Plaintiff claims that "the City adopted a facially discriminatory accommodation policy" and asserts that there were "no criteria to grant or deny anyone's claim or request for exemption/accommodation." (Pl.'s Opp'n, ECF No. 18, at 4–5.)

Plaintiff's allegations do not make clear whether Plaintiff is challenging a facially discriminatory law, a facially neutral statute adopted and applied with discriminatory intent, or a facially neutral law enforced in a discriminatory manner. *See Tartikov*, 945 F.3d at 111. Plaintiff alleges both that the Mandate was selectively enforced and that Defendants discriminated "randomly and arbitrarily" when enforcing the Mandate.[25] (Pl.'s Opp'n, ECF No. 18, at 4; *see* Compl., ECF No. 1, ¶ 54.) Even construing both allegations as separate theories, Plaintiff has not shown sufficient facts to support either. Crucially, Plaintiff does not ever allege that she applied for an exemption to the Mandate on religious grounds. She also does not allege any information about her

---

[24] Plaintiff also alleges that the New York Court of Appeals required the DOE to re-hear religious accommodation exemption requests after finding the Mandate's religious accommodations process unconstitutional. (Compl., ECF No. 1, ¶ 26.) Because Plaintiff does not allege any facts as to whether she submitted an exemption request on religious grounds, the allegation concerning the Court of Appeals' decision does not alter the Court's analysis as to whether Plaintiff has submitted sufficient facts to allege an equal protection violation.

[25] Given Plaintiff's status as a *pro se* litigant, the Court opts to assess both potential theories of equal protection violations on the basis of her religion. However, "[w]here plaintiff's own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss." *Carson*, 202 F. Supp. 3d at 255.

Case 1:24-cv-06123-RPK-TAM    Document 22    Filed 08/22/25    Page 47 of 62 PageID #:
Case 1:24-cv-06123-RPK-TAM    Document 24    Filed 07/31/25    Page 42 of 57 PageID #:
382

religious beliefs and how those beliefs were in tension with the requirements of the Mandate.

To the extent that Plaintiff is claiming that the Mandate is "facially discriminatory," Plaintiff has not pleaded facts demonstrating that the Mandate was discriminatory on its face. To the extent that Plaintiff is arguing that the Mandate was selectively enforced, she does not sufficiently allege that Defendants purposefully and intentionally discriminated against her specifically, let alone that Defendants even knew of her religious beliefs. Because Plaintiff has not alleged any facts indicating that she ever applied for a religion-based accommodation, the Court recommends dismissal of Plaintiff's claim regarding an equal protection violation on the basis of religion.

### ii. Disability/Medical Condition

While equal protection violations on the basis of religion are subject to strict scrutiny, allegations of equal protection violations due to Plaintiff's medical condition or disability are assessed under rational basis review. *Cleburne*, 473 U.S. at 446–47. Under this standard, where "disability [or medical] discrimination is at issue, the Fourteenth Amendment only proscribes government conduct for which there is no rational relationship between the disparity of treatment and some legitimate governmental purpose." *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 109 (2d Cir. 2001); *see also Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 366–67 (2001); *Cleburne*, 473 U.S. at 442–47; *Doall v. Plumadore*, No. 07-CV-617 (ADS) (AKT), 2007 WL 9711199, at *8 (E.DN.Y. Sept. 10, 2007) ("Although disability is not a suspect class, the Equal Protection clause still protects against arbitrary and irrational discrimination." (quotation marks omitted)).

To succeed on an equal protection claim on the ground that Plaintiff was discriminated against due to her medical condition or disability, Plaintiff must show

that Defendants' actions "were not rationally related to a legitimate government interest, but arose from arbitrary and irrational discriminatory intent." *Doall*, 2007 WL 9711199, at *8 (quotation marks omitted). Further, so long as a state's actions are rationally related to a legitimate purpose, "no Fourteenth Amendment violation is presented even if the actions are done 'quite hard headedly' or 'hardheartedly.'" *Garcia*, 280 F.3d at 109 (quoting *Garrett*, 531 U.S. at 357).

Here, Plaintiff claims that Defendants "engaged in widespread discrimination in implementing its vaccine mandates which caught their victims randomly and arbitrarily," and that she was unlawfully discriminated against "on the basis of her disabling condition." (Pl.'s Opp'n, ECF No. 18, at 4; Compl., ECF No. 1, ¶¶ 52, 58.) Conclusory allegations are insufficient to succeed on a motion to dismiss. Plaintiff may feel that the DOE's actions were "hardheartedly" conducted, but without further allegations indicating *how* the Mandate and the DOE's enforcement of the Mandate was irrational and arbitrary, beyond the conclusory accusation that the enforcement *was* irrational and arbitrary, the claim as it stands is not sufficient to survive a motion to dismiss. *Garcia*, 280 F.3d at 109 (quotation marks omitted). While the Court can construe a *pro se* complaint broadly, Plaintiff must state a "plausible claim for relief," and does not do so here. *Hogan*, 738 F.3d at 515. Accordingly, the Court recommends dismissal of Plaintiff's equal protection violation claim as it pertains to Plaintiff's medical condition and/or disability.

### iii. Selective Enforcement

Lastly, the Court assesses whether Plaintiff has adequately alleged an equal protection violation "pursuant to one of two theories: class of one, or selective enforcement." *Leon v. Rockland Psychiatric Ctr.*, 232 F. Supp. 3d 420, 431 (S.D.N.Y. 2017) (quotation marks omitted); *see also Chizman v. Scarnati*, 218 F. Supp. 3d 175, 181

Case 1:24-cv-06123-RPK-TAM   Document 22   Filed 08/22/25   Page 49 of 62 PageID #:
Case 1:24-cv-06123-RPK-TAM   Document 216   Filed 07/31/25   Page 44 of 57 PageID #:
384

(E.D.N.Y. 2016). Because "a class-of-one claim is not cognizable in the public

employment context," the Court analyzes Plaintiff's claim under the standard for

selective enforcement. *Leon*, 232 F. Supp. 3d at 431 (citing *Engquist v. Or. Dep't of Agric.*,

553 U.S. 591, 605–09 (2008); *Appel v. Spiridon*, 531 F.3d 138, 139 (2d Cir. 2008) (per

curiam)); *see also Chizman*, 218 F. Supp. 3d at 181. To state a claim under a theory of

selective enforcement:

> [A] plaintiff must prove that "(1) the person, compared with others
> similarly situated, was selectively treated, and (2) the selective treatment
> was motivated by an intention to discriminate on the basis of
> impermissible considerations, such as race or religion, to punish or inhibit
> the exercise of constitutional rights, or by a malicious or bad faith intent to
> injure the person."

*Hu v. City of New York*, 927 F.3d 81, 91 (2d Cir. 2019) (quoting *Zahra v. Town of Southold*,

48 F.3d 674, 683 (2d Cir. 1995)); *see also Edmond v. Longwood Cent. Sch. Dist.*, No. 16-CV-

2871 (RJD), 2019 WL 4889185, at *8 (E.D.N.Y. Sept. 30, 2019); *Picinich v. New York City

Dep't of Educ.*, No. 16-CV-844 (CBA) (LB), 2018 WL 3979733, at *5 (E.D.N.Y. July 11,

2018), *report and recommendation adopted sub nom. Picinich v. Antiocho*, 2018 WL 3973006

(E.D.N.Y. Aug. 20, 2018). Many courts have observed that these types of selective

enforcement claims occupy a "murky corner of equal protection law," with few guiding

cases on point. *E.g.*, *Hu*, 927 F.3d at 91 (quotation marks omitted); *see also Keles v.

Davalos*, 642 F. Supp. 3d 339, 366 (E.D.N.Y. 2022); *Airday v. City of New York*, No. 14-CV-

8065 (VEC), 2020 WL 4015770, at *3 (S.D.N.Y. July 16, 2020).

   In addition, there is some "disagreement within the Second Circuit regarding the

degree of similarity that a plaintiff must show in order to adequately allege an equal

protection claim under the selective enforcement theory." *Wilson v. New York*, No. 15-

CV-23 (CBA) (VMS), 2017 WL 9674497, at *22 (E.D.N.Y. Jan. 24, 2017) (quotation marks

omitted), *report and recommendation adopted*, 2018 WL 1466770 (E.D.N.Y. Mar. 26, 2018).

Some courts apply the more stringent "class-of-one" standard to selective enforcement claims, which requires a showing that: (1) "'no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy,'" and (2) "'the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake.'" *Id.* (quoting *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 693 (S.D.N.Y. 2011)). Other courts apply a less stringent standard, requiring that a plaintiff "show that the comparators are similarly situated in all material respects." *Id.* (quotation marks omitted). Additionally, in this context, a "plaintiff cannot merely rest on 'a demonstration of different treatment from persons similarly situated,'" but rather "must 'prove that the disparate treatment was caused by the impermissible motivation.'" *Hu*, 927 F.3d at 91 (quoting *Bizzarro v. Miranda*, 394 F.3d 82, 87 (2d Cir. 2005)); *see also Duguid v. State Univ. of New York at Albany*, No. 17-CV-1092 (TJM) (DJS), 2021 WL 2805637, at *12–13 (N.D.N.Y. July 6, 2021); *Airday*, 2020 WL 4015770, at *5.

Defendants argue that while Plaintiff asserts that she and other teachers were similarly situated, Plaintiff has failed to plead sufficient facts to support a plausible claim that A.P., or any other teachers, were similarly situated to Plaintiff yet were actually treated differently. (Defs.' Mem., ECF No. 15, at 16–17.)

Plaintiff suggests that she was not treated the same as other similarly situated persons, given the "hostility by Defendants toward the Plaintiff, and the random distribution of exemptions and accommodations to hundreds of similarly situated employees, defeats neutrality at every level of review, which suggests pre-textual discrimination." (Pl.'s Opp'n, ECF No. 18, at 13; *see also id.* at 14 ("She was not told why a person was granted a medical accommodation/exemption or, like her, denied. What

45

Case 1:24-cv-06123-RPK-TAM   Document 22   Filed 08/22/25   Page 51 of 62 PageID #:
Case 1:24-cv-06123-RPK-TAM   Document 21   Filed 07/31/25   Page 46 of 57 PageID #:
386

made her different in a class of folk already in a 'different' – but unknown category?").)

By way of example, Plaintiff asserts that another teacher, A.P., had the same medical

issues as Plaintiff and was given a medical exemption extension "without a review of

any doctor and no specified reason," while Plaintiff was not awarded such an extension.

(Compl., ECF No. 1, ¶ 35; *see also* Ex. L to Compl., ECF No. 1, at ECF p. 82.) Plaintiff also

argues that Defendants "engaged in selective enforcement of their own laws, rules,

regulations and ordinances against Plaintiff based upon the Plaintiff's religion."

(Compl., ECF No. 1, ¶ 54; *see also* Pl.'s Opp'n, ECF No. 18, at 14 (citing *Emp. Div. v.*

*Smith*, 494 U.S. 877 (1990), and *McDaniel v. Paty*, 435 U.S. 618 (1978)).)

Here, Plaintiff alleges that A.P. had the same medical issues as Plaintiff, yet A.P.

received a medical exemption and Plaintiff was terminated. (Compl., ECF No. 1, ¶ 35;

Ex. L to Compl., ECF No. 1, at ECF p. 82.) But for a true comparator in this case, it is not

sufficient for Plaintiff to allege that A.P. had the same medical issues as her. Plaintiff

would need to allege that A.P. had the same medical issues as Plaintiff, did not submit

any documentation indicating that A.P. was restricted from receiving the COVID-19

vaccine, and still received a medical exemption. Plaintiff's current allegations do not

sufficiently indicate that A.P. was "similarly situated." *Hu*, 927 F.3d at 91. Further, while

Plaintiff alleges that she and A.P. were treated differently, she does not allege that the

purportedly differing treatment was impermissibly motivated. *Id.* Plaintiff's conclusory

allegation that Defendants selectively enforced the Mandate against her, without

identifying similarly situated individuals or plausibly alleging that her own treatment

was the result of impermissible motivation or discrimination, is not sufficient to state a

claim for equal protection violations under this theory.

Accordingly, the Court finds that Plaintiff has failed to plausibly plead an equal

protection violation under a theory of selective enforcement. In sum, the Court

recommends dismissing Plaintiff's equal protection claim under all three possible theories.

f. Fourth Amendment

The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. Individuals are constitutionally protected against government-conducted searches, which "occur[s] when an expectation of privacy that society is prepared to consider reasonable is infringed," and seizures, which "occur[] when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984).

To the extent that Plaintiff asserts a Fourth Amendment violation, the Court respectfully recommends dismissing such a claim. Plaintiff's complaint alleges the following:

> The Constitution, through the Fourth Amendment, protects people from unreasonable searches and seizures by the government, but Plaintiff was not protected. Defendants deliberately and intentionally deprived her of her freedom from harassment and abuse in her workplace and took away her property right, namely her employment, for no rational reason.

(Compl., ECF No. 1, ¶ 38.) Defendants suggest that the substance of this claim pertains to allegations regarding procedural due process, rather than search and seizure. (Defs.' Mem., ECF No. 15, at 25.)

The Fourth Amendment does not apply to the factual allegations in Plaintiff's complaint. Plaintiff's pleadings do not allege any governmental seizure, or a warrantless intrusion. And although Plaintiff may possess a property interest in her employment under procedural due process doctrine, her employment does not comprise a property right that has been seized within the meaning of the Fourth Amendment. The Court respectfully recommends construing Plaintiff's Fourth

47

Case 1:24-cv-06123-RPK-TAM    Document 22    Filed 08/22/25    Page 53 of 62 PageID #:
Case 1:24-cv-06123-RPK-TAM    Document 20    Filed 07/31/25    Page 48 of 57 PageID #:
388

Amendment allegation as a procedural due process allegation, and for the same reasons discussed above, recommends dismissing the allegation. Plaintiff has not stated a Fourth Amendment claim.

\*   \*   \*   \*   \*

In sum, Plaintiff has not plausibly alleged any viable constitutional claims. The Court therefore recommends dismissing Plaintiff's procedural due process, equal protection, and Fourth Amendment claims, as well as Plaintiff's § 1983 discrimination claim.

### 2. *State Law Claims*

The Court will now address Defendants' arguments as to Plaintiff's remaining state law claims.

#### a. New York Education Laws §§ 3020 and § 3020-a

New York Education Laws §§ 3020 and 3020-a govern the discipline and related procedures and policies of tenured publicly employed teachers. Section 3020 states: "No person enjoying the benefits of tenure shall be disciplined or removed during a term of employment except for just cause and in accordance with the procedures specified in section three thousand twenty-a of this article." N.Y. Educ. Law § 3020. Section 3020-a governs the procedures related to punishment and termination of tenured teachers. Under Section 3020-a, with some exceptions,[26] a tenured teacher charged with misconduct can request a hearing before an arbitrator on any charges against her. *Id.* §§ 3020-a(2)(a), 3020-a(3)(a).

---

[26] Tenured teachers convicted of sex offenses and school administrators and supervisors convicted of felony offenses are not entitled to a hearing under § 3020-a. N.Y. Educ. Law § 3020-a(2)(d).

Plaintiff alleges in her complaint that Defendants violated New York Education Laws §§ 3020 and 3020-a because she was not provided a § 3020-a hearing, as is required before terminating a tenured DOE employee. (*See, e.g.*, Compl., ECF No. 1, ¶¶ 60–62.) Defendants argue that Plaintiff was not entitled to a § 3020-a hearing before she was terminated for failing to comply with the Vaccine Mandate. (*See, e.g.*, Defs.' Mem., ECF No. 15, at 15–16.) Defendants further assert that because the Mandate created a "condition of employment," the DOE may terminate employees who fail to satisfy the DOE's conditions of employment. (*Id.*)

As previously discussed, compliance with the Vaccine Mandate has been repeatedly upheld as a lawful condition of employment with New York City agencies. *See, e.g., Garland,* 2024 WL 445001, at *3; *Beickert,* 2023 WL 6214236, at *4 (collecting cases); *Broecker,* 585 F. Supp. 3d at 314. When a tenured city employee does not fulfill a condition of employment, they may be terminated for failure to comply with that condition, and their termination is not subject to §§ 3020 and 3020-a procedures. *See, e.g., Broecker,* 585 F. Supp. 3d at 318 ("[T]he termination of a public employee based on the employee's failure to satisfy a qualification of employment unrelated to job performance, misconduct, or competency does not implicate the disciplinary procedures set forth in N.Y. Educ. Law §§ 3020 and 3020-a."). Plaintiff alleges that she did not get vaccinated and refused to comply with the Vaccine Mandate. Because compliance with the Mandate was a condition of employment for the DOE, and Plaintiff herself acknowledges that she failed to satisfy this "qualification of employment," she was not entitled to disciplinary procedures or a hearing under §§ 3020 and 3020-a.

For the reasons stated above, the Court recommends that Plaintiff's claims regarding her entitlement to disciplinary procedures under New York Education Law §§ 3020 and 3020-a be dismissed.

Case 1:24-cv-06123-RPK-TAM    Document 22    Filed 08/22/25    Page 55 of 62 PageID #:
Case 1:24-cv-06123-RPK-TAM    Document 21-2    Filed 07/31/25    Page 50 of 57 PageID #:
390

b. Fraudulent Inducement

Finally, the Court recommends finding that Plaintiff has not sufficiently pleaded

a fraudulent inducement claim. "Fraudulent inducement refers, generally speaking, to

the subcategory of frauds that occur in the process of persuading another person to

enter into an agreement." *Kalaj v. Kay*, No. 21-CV-4395 (EK) (JRC), 2023 WL 4564795, at

*9 (E.D.N.Y. July 17, 2023). Fraud-related claims, such as fraudulent inducement, are

subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b). It is

not enough for a plaintiff to "vaguely attribute[] the alleged fraudulent statements to

'defendants.'" *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993). Rule 9(b)

requires that "a party must state with particularity the circumstances constituting fraud

or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be

alleged generally." Fed. R. Civ. P. 9(b). "In essence, Rule 9(b) places two further burdens

on fraud plaintiffs — the first goes to the pleading of the circumstances of the fraud, the

second to the pleading of the defendant's mental state." *Loreley Fin. (Jersey) No. 3 Ltd. v.

Wells Fargo Secs., LLC*, 797 F.3d 160, 171 (2d Cir. 2015). First, a plaintiff's complaint must:

"(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the

speaker, (3) state where and when the statements were made, and (4) explain why the

statements were fraudulent." *Mills*, 12 F.3d at 1175. Second, the plaintiff must "allege

facts 'that give rise to a strong inference of fraudulent intent.'" *Loreley*, 797 F.3d at 171

(quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006)).

In addition to the Rule 9(b) heightened pleading standard, a plaintiff must also

sufficiently allege enough facts to state an actual claim of fraudulent inducement. To do

so, a plaintiff must plead the following: "(1) a representation of material fact, (2) which

was untrue, (3) which was known to be untrue or made with reckless disregard for the

truth, (4) which was offered to deceive another or induce him to act, and (5) which that

50

other party relied on to its injury." *Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 580 (2d Cir. 2005); *see also Comolli v. Huntington Learning Ctrs., Inc.*, 117 F. Supp. 3d 343, 349 (2d Cir. 2015) (noting that fraudulent inducement claims must satisfy the same elements as a fraud claim).

In her complaint, Plaintiff makes largely conclusory allegations that non-party Martin Scheinman committed fraud. (*See, e.g.*, Compl., ECF No. 1, ¶ 43 ("Scheinman's Award issued on September 10, 2021 saying that the LWOP was 'not disciplinary' was false, and Scheinman knew it was false."), ¶ 67 ("Scheinman made up the LWOP"), ¶ 68 ("Scheinman committed a fraud against Plaintiff and breached an implied covenant of good faith and fair dealing by issuing lawless requirements of procedure that Plaintiff could not comply with yet relied on to her detriment. Scheinman's actions were intentional and deliberate.").) Defendants argue that Plaintiff fails to allege fraud with the requisite specificity required under Rule 9(b), and that her only allegation of fraud is against a non-party. (Defs.' Mem., ECF No. 15, at 24.) In response, Plaintiff asserts that she need only allege a "reasonable inference of a causal connection" to survive a motion to dismiss. (Pl.'s Opp'n, ECF No. 18, at 21.) She highlights the following allegedly fraudulent statements:

> (1) Martin Scheinman and Defendants constantly argued that [the Vaccine Mandate] changed Plaintiff's terms of employment, therefore her suspension without pay and her termination were justified because she challenged, unsuccessfully, the City's new terms, which were that if you did not get vaccinated you could not work for the Department of Education.
> (2) Scheinman and the NYC Department of Education consistently stated that the Mandate, the LWOP, and the termination, were all not disciplinary.

(Pl.'s Opp'n, ECF No. 18, at 22.) Plaintiff further claims that "Defendants committed fraud and convinced the City of New York to force their lies on municipal workers." (*Id.*)

51

Case 1:24-cv-06123-RPK-TAM    Document 22    Filed 08/22/25    Page 57 of 62 PageID #:
Case 1:24-cv-06123-RPK-TAM    Document 21    Filed 07/31/25    Page 52 of 57 PageID #:
392

Plaintiff is incorrect about the sufficiency of pleading required for fraud claims

on a motion to dismiss; as discussed above, fraud claims, including allegations of

fraudulent inducement, are subject to a heightened pleading standard. *See* Fed. R. Civ.

P. 9(b); *Loreley*, 797 F.3d at 171. Plaintiff's allegations do not meet this standard. First,

Plaintiff's complaint does not include any allegations of fraudulent statements made by

Defendants; the allegations solely pertain to Mr. Scheinman, a non-party, and she does

not allege that Mr. Scheinman's actions or statements were in any way attributable to or

on behalf of Defendants. *See DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242,

1249 (2d Cir.1987) (affirming dismissal of fraud allegations where the complaint failed

to link any of the defendants to the alleged fraudulent statement). Even if the Court

considers the allegations made in the opposition, Plaintiff does not plead any *specific*

fraudulent statements made by Defendants, nor does she indicate when and where

these reportedly fraudulent statements were made, how any statements were

fraudulent, and that Defendants made these statements knowing them to be untrue or

with reckless disregard for the truth.[27] *See Mills*, 12 F.3d at 1175.

Further, while Plaintiff generally accuses Defendants of committing fraud, she

does not provide particularized facts from which a jury could infer that Defendants

made any statements or conducted any actions with fraudulent intent. In fact, some of

Plaintiff's allegations indicate the opposite: Plaintiff claims that, in 2022, Scheinman

---

[27] Plaintiff includes additional accusations specifically against Mr. Scheinman in her
opposition, claiming that Mr. Scheinman lied in the Arbitration Agreement and that he created
a "lawless employment ruling out of thin air." (Pl.'s Opp'n, ECF No. 18, at 23–24.) These
allegations do not strengthen Plaintiff's fraudulent inducement claim: as discussed above, Mr.
Scheinman is a non-party to this proceeding, and more importantly, Plaintiff does not plausibly
allege that Mr. Scheinman's statements or actions are somehow attributable to Defendants.
*DiVittorio*, 822 F.2d at 1249.

"issued a new Award in which he apologized to all that he had created the LWOP for no reason other tha[n] he thought it was right at the time," undermining her claim that Defendants had the requisite fraudulent intent. (Pl.'s Opp'n, ECF No. 18, at 23; *see also* Compl., ECF No. 1, ¶ 27.) *See Loreley,* 797 F.3d at 171.

Moreover, Plaintiff does not state how the alleged fraud induced her to act, which is required to establish a fraudulent inducement claim. *See Kalaj,* 2023 WL 4564795, at *9. Plaintiff's allegations are largely premised on the fact that she intentionally refused to enter into any agreement involving LWOP. (*See generally* Compl., ECF No. 1.) Plaintiff's complaint does not state that Defendants knowingly misrepresented material information about the Vaccine Mandate or the LWOP process, or that she relied on this misinformation when deciding how to respond to the DOE's medical exemption denial notices and LWOP emails. *See Aetna,* 404 F.3d at 580. Plaintiff also does not allege particular facts to illustrate that the Vaccine Mandate information Defendant DOE provided to her was inaccurate or that it was intended to deceive her. *See id.* Plaintiff clearly disagrees with the way that the Vaccine Mandate process was handled, but disagreement is not synonymous with nor indicative of fraud.

A complaint that "vaguely attributes" fraud to defendants, without more, cannot survive a motion to dismiss. *Mills,* 12 F.3d at 1175. Plaintiff's allegations do not state a fraudulent inducement claim with the requisite particularity needed.[28] The Court

---

[28] Plaintiff alleged a fraudulent inducement claim, but even broadly construing her fraud allegations as a general fraud claim, such a claim would also fail. To assert a claim for fraud under New York law, like a fraudulent inducement claim, a plaintiff "'must allege (1) a material

Case 1:24-cv-06123-RPK-TAM    Document 22    Filed 08/22/25    Page 59 of 62 PageID #:
Case 1:24-cv-06123-RPK-TAM    Document 456    Filed 07/31/25    Page 54 of 57 PageID #:
394

therefore respectfully recommends that Plaintiff's fraudulent inducement claim be
dismissed.

## III. Leave to Replead

Plaintiff requests leave to amend her pleading if the Court dismisses the
complaint. (Pl.'s Opp'n, ECF No. 18, at 25.)

The Second Circuit has observed that "[w]hen a motion to dismiss is granted, the
usual practice is to grant leave to amend the complaint." *Hayden v. County of Nassau*, 180
F.3d 42, 53 (2d Cir. 1999); *see also Johnson v. Long Island Univ.*, 58 F. Supp. 3d 211, 226
(E.D.N.Y. 2014). "Generally, leave to amend should be freely given, and a *pro se* litigant
in particular should be afforded every reasonable opportunity to demonstrate that he
has a valid claim." *Matima v. Celli*, 228 F.3d 68, 81 (2d Cir. 2000) (quotation marks and
internal citation omitted).

"The decision to grant or deny leave to amend is within the trial court's
discretion." *Nat'l Union Fire Ins. Co. of Pittsburgh v. PVT Ltd.*, 338 F.R.D. 579, 583
(S.D.N.Y. 2021) (citing *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321, 330 (1971)).
Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, courts "should freely give
leave" to amend pleadings "when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also
Saravia v. Royal Guard Fence Co.*, No. 19-CV-2086 (DRH) (SIL), 2020 WL 5231696, at *9

---

misrepresentation or omission of fact; (2) which the defendant knew to be false; (3) which the
defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and
(5) which caused injury to the plaintiff.'" *Am. Transit Ins. Co. v. Bilyk*, 514 F. Supp. 3d 463, 475
(E.D.N.Y. 2021) (quoting *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 402 (2d
Cir. 2015)); *see also Vermeer Owners, Inc. v. Guterman*, 78 N.Y.2d 1114, 1116 (1991) (identifying the
elements of fraud under New York law as "a representation of material fact, falsity, scienter,
reliance and injury"). Even assuming Defendants made false statements, which has not been
established here, Plaintiff has not alleged any facts indicating that Defendants made statements
that they knew to be false or were made with the requisite fraudulent intent. *See Am. Transit Ins.
Co.*, 514 F. Supp. 3d at 475.

(E.D.N.Y. Sept. 2, 2020) (explaining that parties should generally "be allowed to amend their pleadings . . . unless there is evidence of undue delay, bad faith, dilatory tactics, undue prejudice to the party to be served with the proposed pleading, or futility" (quotation marks omitted)). If the underlying facts or circumstances relied upon by the party seeking leave to amend "may be a proper subject of relief," there is a preference that the party "be afforded the opportunity to test [its] claim on the merits." *United States ex rel. Maritime Admin. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chi.*, 889 F.2d 1248, 1254 (2d Cir. 1989).

Given the Second Circuit's long-established general practice of allowing leave to replead following a motion to dismiss, the liberal standard for the filing of an amended complaint, and Plaintiff's *pro se* status, the Court respectfully recommends allowing Plaintiff to file an amended complaint. Specifically, the Court recommends giving Plaintiff leave to amend her § 1983 discrimination, procedural due process, equal protection, and Fourth Amendment claims, as well as her New York state law claims brought under Sections 3020 and 3020-a, and her fraudulent inducement claim, should she be able to allege facts to cure the many deficiencies discussed herein. As to Plaintiff's time-barred and/or administratively barred claims, that is, her Title VII, ADA, NYSHRL, and NYCHRL claims, based on the current pleadings, it appears that these claims are futile. However, in an abundance of caution, given Plaintiff's *pro se* status, the Court respectfully recommends granting leave to amend with the caution to Plaintiff that any amended pleading must plausibly establish compliance with the procedural requirements of each claim she seeks to bring and, as to the NYSHRL and NYCHRL claims, demonstrate that the claim is brought within the one-year statute of limitations.

Case 1:24-cv-06123-RPK-TAM    Document 22    Filed 08/22/25    Page 61 of 62 PageID #:
Case 1:24-cv-06123-RPK-TAM    Document 25⁸    Filed 07/31/25    Page 56 of 57 PageID #:
396

## CONCLUSION

For the foregoing reasons, the Court respectfully recommends that Defendants'
motion to dismiss be granted in its entirety. Specifically, the undersigned recommends
granting Defendants' motion to dismiss as to Plaintiff's claims of: (1) unlawful
discrimination under § 1983; (2) discrimination under Title VII, the ADA, the NYSHRL,
and the NYCHRL; (3) failure to accommodate under Title VII, the ADA, the NYSHRL,
and the NYCHRL; (4) a procedural due process violation; (5) an equal protection
violation; (6) a Fourth Amendment search and seizure violation; (7) violations of New
York Education Laws § 3020 and § 3020-a; and (8) fraud in the inducement. Finally, the
Court recommends that Plaintiff be granted leave to amend as discussed above, and
that Plaintiff be allowed to cure her deficient service by properly serving any future
named individual defendants.

\*    \*    \*    \*    \*

This report and recommendation will be filed electronically and sent by mail to
Plaintiff Jadenae Trabacchi. Objections to this report and recommendation must be
filed, with a courtesy copy sent to the Honorable Rachel P. Kovner at 225 Cadman Plaza
East, Brooklyn, New York 11201, within fourteen (14) days of filing. *See* 28 U.S.C.
§ 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a) (providing the method for
computing time). Failure to file objections within the specified time waives the right to
appeal both before the district court and appellate courts. *See, e.g., Caidor v. Onondaga
County*, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . .

report [and recommendation] operates as a waiver of any further judicial review of the magistrate[ judge's] decision" (quotation marks omitted)).

      **SO ORDERED.**

Dated: Brooklyn, New York
     July 31, 2025

                           *Taryn A. Merkl*
                       TARYN A. MERKL
                       UNITED STATES MAGISTRATE JUDGE