*** Filed ***
10:32 PM, 14 Oct, 2025
U.S.D.C., Eastern District of New York

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
──────────────────────────────x

**JADENAE TRABACCHI,**

Plaintiff      **DOCKET NO. 24-CV-6123 (RPK) (TAM)**

-against-

**AMENDED COMPLAINT**
*Jury Trial Demanded*

**THE DEPARTMENT OF EDUCATION**
**OF THE CITY OF NEW YORK, MELISSA**
**AVILES-RAMOS, Chancellor; and**
**KATHERINE RODI, Director of Employee**
**Relations,**

Defendants

──────────────────────────────x

**PLAINTIFF JADENAE TRABACCHI,** ("Plaintiff") proceeding Pro Se, as and for her

Summons and Complaint filed to protect her Constitutional rights against the above-

captioned Defendants the **DEPARTMENT OF EDUCATION OF THE CITY OF NEW**

**YORK, MELISSA AVILES-RAMOS,  and KATHERINE RODI,** (henceforth

"Defendants"), alleges upon knowledge as to her own facts and upon information and

belief as to all other matters:

<u>**PRELIMINARY STATEMENT**</u>

1.  While government is fully empowered to make emergency action against life-

    threatening dangers, it is bedrock law in this country that constitutional rights and

    prohibitions do not change in an emergency. "The Constitution was adopted in a

    period of grave emergency. Its grants of power to the Federal Government and its

1

limitations of the power of the States were determined in the light of emergency and they are not altered by emergency." Home Bldg. & Loan Ass'n v Blaisdell, 290 U.S. 398, 425 (1934). Thus "even in a pandemic, the Constitution cannot be put away and forgotten." Roman Catholic Diocese of Brooklyn v Cuomo, 208 L.Ed. 2d 206, 210 (2020).

2. This is a civil action seeking injunctive relief, monetary relief, including past and on- going economic loss, compensatory and equitable damages for the deprivation of Constitutionally protected due process rights given to her as a tenured teacher pursuant to 42 U.S.C. Section 1983, 5th and 14th Amendments to the United States Constitution, protected property rights under Education Law §§3020 and 3020-a, and New York State and New York City Human Rights Law (NYSHRL and NYCHRL), which prevent employers from (1) discriminating against employees based on an employee's medical condition; (2) wrongfully terminating a tenured teacher by circumventing public policy employment, due process laws, and property rights of the Tenure statute.

3. Defendants made false claims in order to retaliate against Plaintiff and similarly situated other educators. One such false claim was that the COVID Vaccine Mandate ("CVM") changed Plaintiff's terms of employment. This never happened. Another false claim made in retaliation against Plaintiff for not getting vaccinated was that the CVM was generally applicable, and neutral. These claims were false as well.

4. Plaintiff states a claim to retaliation by Defendants from the CVM *as applied* to her, and similarly situated employees of the New York City Department of Education.

5. Plaintiff was retaliated against and punished for not getting the vaccine when she was placed on a "problem code" database on or about October 4, 2021 and permanently prohibited from obtaining employment in her chosen career in New York City schools and their vendors.

6. Defendants placed Plaintiff on a leave without pay ("LWOP") that has no basis in law or statute, and proceeded to terminate Plaintiff without any factual basis or proof after Plaintiff requested an accommodation and extension of her temporary medical exemption given to her in September 2021. She filed a request for a medical exemption/accommodation and a 3020-a Hearing request form "to protect her rights" and knew that public policy gave her pre-deprivation Constitutional rights to her tenured position. She never received either.

7. Public Health Law PBH §2120 requires a health officer investigate the circumstances of a person who might be involved in exposing others to an infection. But no one investigated Plaintiff's situation because Defendants did not want to reveal that the COVID Vaccine did not protect anyone against getting the virus or transmitting the virus. Defendants simply made her guilty of insubordination for not getting vaccinated, then punished her with termination without any fair hearing on her medical needs.

8. Plaintiff requests (1) backpay and all benefits and pension steps due after Defendants' violations of law, public policy and rights removed her from her salary under color of law and deprived her of Constitutionally protected due process; (2) reinstatement to her former working title with a salary that reflects 2 ½ years of missing time and wages, with pension steps and raises included; (3) judgment against Defendants for

refusing to, or neglecting to, prevent such deprivations and denials to Plaintiff.

## PARTIES

9. Plaintiff was a tenured employee of the Department of Education of the City of New York in good standing as a tenured teacher for more almost 10 years. She had an impeccable reputation. Plaintiff was a public employee of Defendant within the meaning of an "employee" as defined in New York State Civil Service Law § 75-b(1)(b) and has protected status also pursuant to the Tenure Laws of New York State. Plaintiff lives in Brooklyn, N.Y.

10. Defendant the Department of Education of the City of New York ("DOE") has overseen the NYC system of public schools located throughout all five (5) boroughs of the City of New York and has been, and continues to be, a recipient of substantial federal funds, and as such, acts under color of law with its' principal place of business located in 65 Court Street in Brooklyn, New York.

11. Defendant Melissa AVILES-RAMOS is the Chancellor of the Department of Education of the City of New York ("DOE") and has oversight over the NYC system of public schools located throughout all five (5) boroughs of the City of New York.

12. Defendant Katherine Rodi is employed by the Department of Education of the City of New York ("DOE") and started work as the Director of Employee Relations in 2012. She also has the responsibility of overseeing the DOE's Office of Safety and Health and the Office of Personnel Investigations, where she decides who among the DOE's employees are placed on a "Problem Code". She monitors the disciplinary information in the personnel file that is highlighted by the Problem Code for principals who may want to hire a former or current employee.

## JURISDICTION AND VENUE

13. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 for claims arising federal questions under 42 U.S.C. 1983, in particular the protections given by the First, Fifth and Fourteenth Amendments to the Constitution, ADA Claims, as well as State law claims codified in the New York State Constitution, and Education Law §3020-a (the "tenure law") . This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C 1343(2)(4)  for claims arising federal questions under 42 U.S.C. 1983.

14. This Court has supplemental jurisdiction, pursuant to 28 U.S.C. §1367(a), as well as New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL") as Administrative Code §8-107, in that such claims are so related to Plaintiff's claims within the original jurisdiction of this Court that they form part of the same case or controversy. Defendants were at all times acting under color of law.

15. This action's venue properly lies in the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C. § 1391, because the headquarters of the New York City Department of Education is located at 65 Court Street, Brooklyn, N.Y. and the Plaintiff lives in Brooklyn, N.Y. This Court has the power to issue declaratory relief pursuant to 28 U.S.C. §§2201 and 2202.

## STATEMENT OF RELEVANT FACTS

16.  Plaintiff was unlawfully deprived of freedom from abuse of process and diminution of her tenure rights due to her medical condition that prohibited her from being vaccinated with the COVID vaccine.

17.  Plaintiff has dedicated almost half of her life to the field of teaching experience in the past almost 10 years in District 20, Brooklyn. She moved to Brooklyn from Long Island 2015 so that she could make herself more available to participate in afterschool extracurricular activities such as Broadway Jr., SHSAT ELA test prep, Mural Club, Pershing Equity Team, and other school functions. For 1 ½ years Plaintiff worked unvaccinated during the COVID Vaccine.

18. In the past ten years, Plaintiff has reversed multiple auto-immune pre-diagnoses: lupus, diabetes, chronic bronchitis, asthma, and precancerous nodules on her thyroid glands. She still suffers from Hashimoto's Thyroiditis and the MTHFR-recessive gene expression, but her doctors and Plaintiff came up with an alternative protocol to taking the vaccine that prevented severe infection. This included, but was not limited to: an anti-inflammatory elimination diet, vitamins, supplements, hydration, daily movement/exercise, hyperbaric oxygen therapy, and acupuncture. Plaintiff's doctors advised her to not get the vaccine, saying that she would risk the chance of a vaccine exacerbating her autoimmunity and genetic predisposition.

19. On July 29, 2020 Plaintiff submitted a doctor's note to the Defendants in which her doctor, Dr. Inna Pildysh, wrote that Plaintiff was "predisposed" to be in a high risk group for COVID and needed a reasonable accommodation to work from home. This was supplemented by several other doctors' notes. **EXHIBIT A(1)-(5)**, Dr. Pildysh, ME Request 9-28-21;  Dr.'s Notes. Defendants were on notice that Plaintiff could not get vaccinated against COVID.

20. On September 8, 2021, Plaintiff tested positive for COVID-19.

21. On September 10, 2021, Arbitrator Martin Scheinman from Scheinman's Arbitration and Mediation Services Inc., ("SAMS") issued an arbitration agreement that cited strict rules that would be applied to anyone seeking a religious or medical exemption to getting vaccinated with the COVID vaccine under the City's COVID Mandate ("CVM"). This Award claimed to create a new term of employment, a lawless Leave Without Pay ("LWOP") that forced unvaccinated employees off of their salaries but was "not disciplinary". This type of leave never existed anywhere before, and was, clearly, Scheinman's fraudulent procedure invented to remove DOE employees with high salaries and/or tenure from their jobs. There was never a change to Plaintiff's employment, and no law has ever been passed by the State legislature that forced municipal workers onto a leave without pay that was "not disciplinary". **EXHIBIT B:** Scheinman Award 9-10-21.

22. The LWOP set up by Scheinman was designed to punish by termination without any due process any employee who could not, would not, or did not get the vaccine. The discipline included secret placement on the problem code which Defendant Rodi was and is in charge of at the DOE's Office of Personnel Investigations. Plaintiff was taken off of her salary without any due process hearing and was not told about the Problem code now attached to her personnel file. **EXHIBIT C** Problem Code documents.
 Most shocking, is the email from DOE employee Eric Amato to the UFT and members attached as Exhibit A to the Declaration of former UFT Special Representative Betsy Combier, who is also Editor of the websites Parentadvocates.org and ADVOCATZ.com:

From: **Amato Eric** <EAmato4@schools.nyc.gov>
Date: Wed, Feb 9, 2022 at 8:06 AM
Subject: RE: PR code
To: ███████████████████ Michael Sill <msill@uft.org>
Cc: Beth A. Norton
<bnorton@uft.org>, Kking@uft.org <Kking@uft.org>, dcampbell@uft.org <dcampbell@uft.org>

PR = Problem code – Problem code was added to all employees who were placed on 2VM vaccine
mandate leave. It was placed there the day you went on the leave. Our central offices placed this code
on all employees who went on the leave. It will be removed once you are eligible to return to work.

Thanks,
Eric

23. On September 15, 2021, a notice of an updated COVID Vaccine Mandate (CVM) was

sent out by the New York City Department of Education (DOE). See **EXHIBIT D**

Chokshi Order. This order prohibited full-time teachers from entering NYC

Department of Education buildings ("NYC DOE) without being vaccinated, yet added

the following in ¶6: "Nothing in this Order shall be construed to prohibit any

reasonable accommodations otherwise required by law." Plaintiff relied on this

because she believed this was true. Defendants did not pay any attention to that clause,

because they did not want to accommodate anyone. See Katherine Rodi's testimony

on March 25, 2025 when she was part of a NYC DOE "General Committee" and she

denied every DOE employee's accommodation appeal without reviewing any of them:

"With further questioning, Rodi explains that the general committee members were
under pressure to reopen in-person schooling and couldn't do so without replacing at
least some of the DOE employees who were barred from entering school buildings.
Rodi describes the flood of requests for accommodations the DOE received during the
fall of 2021:

*We received it from teachers, from custodians, from school food workers, from
principals, from assistant principals, from, you know, name the person, name the job.*

*And the fact is that we needed to run a school system . . .*

She describes denying accommodation requests in order to "resign" employees so that they could be replaced:

*[T]he only option was [sic] had was to resign them from the system without any bias so that we could hire other teachers. Because, again, we had a school to run.*

Later [Attorney Austin] Graff questions Rodi about the details of what happened to each individual's request for an accommodation:

*Q. Okay. So when you received an application for religious exemption, what did you review to make a determination whether to grant or deny?*

*A. We made sure that the person had appropriately applied in the right area. A number of people would check religious exemption, but they were really looking for a medical exemption.*

*We also made sure that they actually submitted something with their application, because some people included blank sheets of paper. And, then, if it was a medical—if it was in the wrong place, we—we immediately advised them so that they could reapply or reapply in the right place. If it was a blank piece of paper, we immediately advised them so that they could submit appropriate documentation.*

*And then, other than that, we then—we reviewed to make sure they had submitted something to support, you know, that it was religious in nature. We didn't judge what it was. And even if it was just a piece of paper that they wrote out. And then we denied their request.*

According to this description, the "individual review" the applicants received was simply a check to make sure they hadn't mistakenly submitted a blank piece of paper or a medical accommodation request."

These actions by Defendants are deliberate, misleading and made in bad faith. No

hearing was ever held where Plaintiffs could be heard on their reasons for not getting

vaccinated against COVID. They both have been denied their procedural and

substantive due process. See:

**The City of New York and the NYC Department of Education Never Intended on Honoring Requests For Religious Exemptions From Getting the COVID Vaccine By Municipal Workers**
https://advocatz.com/2025/05/28/the-city-of-new-york-and-the-nyc-department-of-education-never-intended-on-honoring-requests-for-religious-exemptions-from-

getting-the-covid-vaccine-by-municipal-workers/

24. Recent published transcripts of Eric Eichenholtz, members of the Citywide Panel and Katherine Rodi have shown that the Defendants have been defending their terminations and lack of accommodations given to Plaintiffs here and in multiple cases involving public employees, based upon claims made from whole cloth. The post above includes the full transcript of the creator of the Citywide Panel, Eric Eichenholtz; the Affidavit of Dr. Harvey Risch; Affidavit of Dr. Peter McCullough; Declaration of Dr. Bhattacharya; Affirmation of Alan Deutsch; Affidavit of Michael Melocowsky; and the Affirmation of Florina Getman. Mr. Eichenholtz, Mr. Deutsch, Mr. Melocowsky, and Ms. Getman could not give any details about the number of people granted accommodations, nor why these nameless individuals were given the accommodations and remained on salary. They also could not define an "undue burden" nor the criteria used to make any decisions. Dr. Risch, Bhattacharya and McCullough wrote about the ineffectiveness of the vaccines to protect against COVID, and how no mandate should ever have existed. The COVID vaccine was shown to be uneffective and harmful starting in 2020, but this information was never considered by Defendants, whose sole goal was to remove employees from the City payroll without Just or Probable cause.

25. At the same time, school bus drivers, and delivery people were given unilateral exemptions. Later, in March 2022, volunteers and Broadway actors as well as sports players were excluded from having to take the COVID Vaccine under the Mandate ("CVM"). See Emergency Executive Order 62 here: https://www.nyc.gov/office-of-the-mayor/news/062-003/emergency-executive-order-62.

26. The chaotic mess of the explosion of inequalities of law and vaccinations had begun, and continue today. The New York Post highlighted the hundreds of employees who were getting exemptions: **City Grants Vaccine Mandate Exemptions For Hundreds Of Public School Employees** https://gothamist.com/news/city-grants-vaccine-mandate-exemptions-hundreds-public-school-employees; Gothamist, Sept. 24, 2021.

27. On October 3, 2021, Plaintiff received from the Division of Human Capital (no doctor is named), a temporary exemption notice. However, this was followed up by no further responses to her doctors' notes, nor to her request for an extension for her medical exemption (ME) except to tell her that her exemption would be over 10/31/21 unless she signed the LWOP. Then she was sent multiple denials of her exemption, and a final LWOP warning October-November 2021.**EXHIBIT E.** Defendants never suggested any accommodation**.**

28. Plaintiff never signed the LWOP because it demanded that she waive her due process rights to a §3020-a arbitration on her medical appeal to get back on salary. She refused to give up her tenure rights to a due process 3020-a arbitration. Therefore, she remained at all times under the protection of Tenure, and she could not be terminated nor could her salary be reduced without a due process hearing:

> **New York State Education Department Rights of Tenured Employees**
> https://www.nysed.gov/sites/default/files/rightsoftenurededucators.pdf
>
> "Tenured individuals cannot be disciplined or removed from employment except for "just cause" pursuant to Education Law §3020. The procedures for such discipline or removal are set forth in Education Law §3020-a, Education Law §3020-b, and the Commissioner's Regulations 8 NYCRR Ch. II, Sub. C, Part 82-3."

Defendants ignored this Law.

29. Plaintiff never received a medical evaluation known as EDN §2568, which is

mandatory when a NYC DOE employee asks for a work-related medical

accommodation, or is ordered to be tested for same:

Education Law Section 2568:

> **"Superintendent of schools authorized to require medical examination of certain employees of certain boards of education**
> The superintendent of schools of a city having a population of one million or more shall be empowered to require any person employed by the board of education of such city to submit to a medical examination by a physician or school medical inspector of the board, in order to determine the mental or physical capacity of such person to perform his duties, whenever it has been recommended in a report in writing that such examination should be made. Such report to the superintendent may be made only by a person under whose supervision or direction the person recommended for such medical examination is employed. The person required to submit to such medical examination shall be entitled to be accompanied by a physician or other person of his own choice. The findings upon such examination shall be reported to the superintendent of schools and may be referred to and considered for the evaluation of service of the person examined or for disability retirement.
>
> *Source: Section 2568 — Superintendent of schools authorized to require medical examination of certain employees of certain boards of education, https://www.-nysenate.-gov/legislation/laws/EDN/2568.* (updated Sep. 22, 2014)."

See:
**Advocatz OPINION: The NY State Employment Medical Exam Scam Part 2: Education Law §2568**
https://advocatz.com/2024/04/27/advocatz-opinion-the-ny-state-employment-medical-exam-scam-part-2-section-2568/

30. On November 28, 2021the New York State Court of Appeals ruled that the due

process procedure cited by Martin Scheinman in his September 10, 2021 Impact

Bargaining Award (Ex. B) was "constitutionally unsound" and ordered appeals for

religious, not medical, exemptions to be heard by a new Citywide panel.

31. In June 2022 Martin Scheinman "apologized" for creating the LWOP, after his Award

was thrown out by this Court in the case of Kane et al., v De Blasio et al. (21-cv-2678;

doc. #117 (VEC)) and Keil v The City of New York et al. (21-cv-2711 (VEC)) and by

the Court of Appeals on November 28, 2021. In the June 27 2022 Award, Scheinman wrote:

 "... While the Department claims its action is unconnected with the Award, it is the Award itself that created a new leave without pay. Absent the Award, the Department was without the authority to remove these employees from the payroll without providing a due process hearing.
Leave without pay is an unusual outcome. Yet, I decided it was appropriate for employees whose requests for a medical or religious exemption were denied. This is because such employees intentionally decided to disregard the mandate they be vaccinated by September 27, 2021, the date established by Commissioner Chokshi and Mayor de Blasio."

Thus, Scheinman admitted to deliberately and in bad faith creating LWOP that he described as "not disciplinary", to remove teachers like Plaintiff, who had tenure, without a due process hearing. See:

**UPDATE: Educators Accused of Submitting Fake Vaccination Cards Win Jobs Back and Backpay**
https://wp-advocatz-uploads.s3.amazonaws.com/uploads/2022/10/Scheinman-June-27-AWARD.pdf

32. Appeals for medical accommodation for those who could not get vaccinated remained random and unexplained. The Citywide Reasonable Appeals Panel did not review medical appeals for accommodation. Plaintiff remained without any accommodation or exemption, her health insurance through Emblem Health was terminated February 10, 2022, and her employment was terminated February 11, 2022 without any due process. **EXHIBIT G.**

33. On April 10th 2022 Plaintiff was told about the NYC DOE "Problem Code" and that she was now unable to work in any position for the NYC DOE or any vendor because she was deemed guilty of misconduct, and she would be blocked from getting paid by the NYC DOE or any vendor. Karen King at the UFT confirmed this action. See **EXHIBIT C**, Problem Code Documents.

34. On or about February 22, 2023  Plaintiff was told she remained on the problem code. Plaintiff sent Defendant Kathy Rodi, Director of Employee Relations and Director of the Office of Personnel Investigations, who places the problem code on employees' personnel files, an email requesting a formal due process hearing where she could protest her termination and the fact that she was problem coded. Ms. Rodi never responded. **Exhibit H.** Email to Ms. Rodi.

35. Defendants never engaged in a statutorily cooperative dialogue thereby engaging in an unlawful discriminatory practice warranting the uniquely broad remedial powers of this Court pursuant to NYSHRL and NYCHRL to reinstate Plaintiff and compensate her for past harm. Plaintiff has complied with all procedural prerequisites required by law.

36. The Mayor's Emergency Orders cannot alter the terms of employment within the City workforce. The terms must be negotiated and ratified by vote of all  members. As this never happened, the Mayor and the Commissioner of Health had no authority to deprive Plaintiff of her due process hearing as cited in Ed. Law §§3020 and 3020-a.

37. Vaccinations for COVID never existed as terms of employment in the CBA, and the CBA was never changed to add such mandated vaccinations. The Supreme Court has repeatedly held that there is a right to be free from unjustified intrusions on personal bodily integrity, suggesting that such a right is protected by the due process clause of the Fourteenth Amendment. These include unsolicited medical procedures. Union pacific Ry. Co. v Botsford, 41 U.S. 250 (1891); Cruzan ex rel. Cruzan v. Director, Missouri Department of Health, 497 U.S. 261, 312 (1990) ("Thus, the State's general interest in life must accede to Nancy Cruzan's particularized and intense interest in

self-determination in her choice of medical treatment. There is simply nothing legitimately within the State's purview to be gained by superseding her decision.")

## CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION:
### SECTION 1983 UNLAWFUL DISCRIMINATION WHILE ACTING UNDER COLOR OF LAW

38. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 37 as if the same were fully set forth at length herein.

39. Plaintiff has had actual, medically documented impairments and challenges to her health which her doctors have told her could get worse and cause her bodily harm if she was vaccinated with the COVID vaccine.

40. Plaintiff's medical challenges and impairments led directly to her being harassed and belittled by employees and her workplace peer and supervisors. See:

**NYC teachers with vaccine exemptions are being treated like pariahs**
https://nypost.com/2022/03/05/nyc-teachers-with-vaccine-exemptions-treated-like-outcasts/

41. Defendants never had one of their doctors review Plaintiff's medical records although they had actual knowledge of the impairments. The intent of Defendants was to punish Plaintiff for refusing to be vaccinated, and this retaliation led to her termination. Plaintiff was deprived of any doctor's review of her medical claim which prohibited her from getting vaccinated with the COVID vaccine. She was terminated without any due process hearing.

42. Teacher A. P. was a teacher with medical issues who applied to the Defendants for a medical accommodation/exemption from the vaccine, and was granted an extension of her ME without a review of any doctor and no specified reason, until January 2023. Plaintiff was not offered the same. In fact, Plaintiff did not get any extension at all,

only termination after her appeal for a ME was denied.

43. This is a constitutional violation and shows the Defendant acting under color of law to randomly choose which employee is to receive a medical exemption and who does not receive one. No explanation was given, depriving Plaintiff of her constitutionally protected rights to be free from workplace labels and abuse.

44. Plaintiff was forced to choose either to submit to medical interventions without consent and without a determination made by a licensed doctor, or risk her health and maybe even her life getting the vaccine. The choice was either her protected tenured employment or her life.

45. The problem code is a "scarlet letter" that prevents an employee from getting work at the DOE because they have been labelled "insubordinate", "guilty of misconduct" or "incompetent". The problem code has been written about here:

**The New York City Department of Education's "Problem Code" is an Unlawful Flag on an Employee's Fingerprints**
   https://www.parentadvocates.org/index.cfm?fuseaction=article&articleID=8884

and

**The New York City Department of Education, UFT, Problem Code, and Perpetual Fog Machine Continue To Prevent Unvaxxed Employees From Working**
   https://advocatz.com/2023/02/12/the-new-york-city-department-of-education-problem-code-continues-to-prevent-unvaxxed-employees-from-working/

See **EXHIBIT C**

Most shocking is the email from DOE employee Eric Amato to the UFT and members attached as Exhibit A to the Declaration of former UFT Special Representative Betsy Combier, who is also Editor of the websites Parentadvocates.org and ADVOCATZ.com:

From: **Amato Eric** <EAmato4@schools.nyc.gov>
Date: Wed, Feb 9, 2022 at 8:06 AM
Subject: RE: PR code
To: ███████████████████ Michael Sill <msill@uft.org>
Cc: Beth A. Norton
<bnorton@uft.org>, Kking@uft.org <Kking@uft.org>, dcampbell@uft.org <dcampbell@uft.org>

PR = Problem code – Problem code was added to all employees who were placed on 2VM vaccine mandate leave. It was placed there the day you went on the leave. Our central offices placed this code on all employees who went on the leave. It will be removed once you are eligible to return to work.


Thanks,
Eric

46. Plaintiff was now flagged with the code and retaliated against because of her disabling medical conditions, tenure law and rights, and Defendants' neglect and disregard for her tenure and Human Rights pursuant to NYSCHRL and NYCHRL.

47. In this regard, "'[d]iscipline' refers 'not merely to action that has an adverse impact, but adverse action that is motivated by a punitive intent'" (Monaco v New York Univ., 204 AD3d 51, 63 [1st Dept 2022], quoting Matter of Soriano v Elia, 155 AD3d 1496, 1498-1499 [3d Dept 2017], lv denied 31 NY3d 913 [2018]).

48. According to the U.S. Supreme Court in Burlington Northern and Santa Fe Railway Company v White, 548 US 53 (2006), "suspension without pay is retaliatory discrimination, and even if back pay was eventually awarded – was an "adverse employment action," as was the change of responsibilities within the same job category. The Problem Code is an adverse employment action, as it permanently prohibits any DOE with this Code on their personnel files, any employment with the NYC DOE or their vendors.

49. On November 3, 2015, Defendant Kathy Rodi gave witness testimony in PERB case

U-32479 on the procedure used to flag an employee with the problem code:

"I oversee several units: Office of Personnel Investigation, Office of Employee relations, Office of Safety and Health, and I oversee the Disciplinary Support Unit work (DSU).

At DSU we check and eventually flag folks. We check older discipline, older substantiated reports, we review them, we track them and then if all the qualifications that we build together are met, then we may flag a person.

I was hired in June of 2012. In January 2013 I was promoted to Director of Employee Relations and added DSU to my workload.
In April 2012 she was invited to a meeting for senior counsel at which there was a presentation about DSU. By the time I started there were at least a couple of hundred people who were flagged.

Galaxy is a budgetary system that tracks all current employees by the table of organization and where they work. I check Galaxy for an employee's status. DSU is linked to Galaxy.

The DSU flag is a web-based system, set up so that no one can be accidentally or easily flagged. To locate a person, I have to put in their social security number or their file ID. Then, I can attach documents to that person's name. Just attaching a document to a person's name does not get them flagged. The system has to meet two qualifications:
There must be a substantiated report of discipline issued from an investigatory body;
There must be a letter of discipline that has been that has evidenced that the person received the discipline;
Then the person is manually flagged. A person has to actually go in there, review both documents, make sure that they match and then physically add a flag.

We upload the applicable document so that the hiring person or principal to be able to see what that flag means.
So the flag is not a flag.

A substantiated allegation without discipline will not result in a flag.

The flag was created because there were hiring managers and supervisors who had people working for them and they were unaware of major disciplinary case history.

"We didn't want to blind any supervisor"….While we don't have the capacity yet to have the entire file accessible on-line we figured that we would just take egregious or serious like substantiated discipline.

….[t]he **flag is put on before 3020-a charges are filed. the flag is put on with the letter of discipline, even if it says that any further misconduct may result in your termination."**

(*emphasis added*)

Rodi further testified that: If 3020-a charges are dismissed, she reads the decision to

determine whether the charges for termination was dismissed or whether the actual underlined misconduct was dismissed. Sometimes the level of misconduct does not lead to termination, but that does not undo the flag.

50. Defendant Rodi flagged Plaintiff's personnel file with a "Problem Code", secretly barring Plaintiff from getting paid for any work by any school in the NYC public school system, and creating a new category of misconduct in employment: "Insubordination by unvaccinated employee". The problem code was placed on her file as a direct result of her inability to get vaccinated due to her medical challenges, not due to any intentional disregard of the LWOP and the CVM. Scheinman's Award issued on September 10 2021 saying that the LWOP was "not disciplinary" was false, and Scheinman knew it was false.

51. On February 22, 2023 Plaintiff sent an email to Ms. Rodi pleading for her reinstatement and her salary. Ms. Rodi never responded.

52. Based on the foregoing, the Defendants discriminated against the Plaintiff on the basis of her medical condition, acted under color of law while unlawfully discriminating against the Plaintiff in the terms and conditions of her employment on the basis of her disabling condition, in violation of 42 U.S.C. § 1983; 5th and 14th Amendments to the U.S. Constitution; Tenure rights and Law; N.Y. Executive Law § 296 (New York State Human Rights Law); and N.Y.C. Human Rights Law.

### AS AND FOR A SECOND CAUSE OF ACTION: DEFENDANTS FAILED TO REASONABLY ACCOMMODATE THE PLAINTIFF'S MEDICAL CONDITION PROHIBITING HER FROM GETTING VACCINATED

53. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 52 as if the same were fully set forth at length herein.

54. Defendant had actual knowledge of Plaintiff's medical issues proving that she needed to obtain a medical exemption (ME) from getting vaccinated with the COVID Vaccine as a matter of health but chose to ignore the information and denied her ME appeals without any details or reason, and terminated her employment.

55. At all relevant times Defendants knew that they had "rubber rooms" and reassignments to home as the new workplace for employees similarly removed from their positions in the Department:

**New Rubber Rooms Pop Up Throughout NYC To Warehouse Unvaccinated Employees Who have Won medical or Religious Exemptions https://nycrubberroomreporter.blogspot.com/2022/03/new-rubber-rooms-pop-up-throughout-nyc.html**

and "rubber homes"

**Idled NYC educators do nothing but sign in remotely, even from Europe**
https://nypost.com/2023/01/14/idled-nyc-educators-do-nothing-but-sign-in-remotely-even-from-europe/ By Susan Edelman, NY POST, Published Jan. 14, 2023

56. Defendants placed employment ads for their new remote classrooms, but never told Plaintiff. **EXHIBIT I.** Employment ad for Remote virtual classroom teachers. The Defendants also had a class of employees called "Absent Teachers Reserve, or "ATRs". These were people who were tenured, but without a permanent position and who took the place of teachers who were absent. The DOE never mentioned this cohort to anyone.

57. Defendants never engaged in a dialogue about Plaintiff's medical needs nor about any accommodation or reassignment. This deprivation of a lawful procedure was intentional, acted on under color or law, and pursued in bad faith.

58. This lack of consideration directly contradicts the ruling in Groff v Dejoy, U.S. Supreme Court Docket 22-174, June 29, 2023 :

"The Court holds that showing "more than a de minimis cost," as that phrase is used in common parlance, does not suffice to establish "undue hardship" under Title VII. ..... What is most important is that "undue hardship" in Title VII means what it says, and courts should resolve whether a hardship would be substantial in the context of an employer's business in the commonsense manner that it would use in applying any such test..... Further, a hardship that is attributable to employee animosity to a particular religion, to religion in general, or to the very notion of accommodating religious practice, cannot be considered "undue." Bias or hostility to a religious practice or accommodation cannot supply a defense."

59. Based on the foregoing, Defendant subjected Plaintiff to discrimination on the basis of her medical issues, unlawfully discriminating against the Plaintiff in the terms and conditions of her employment on the basis of her disabling condition, in violation of 42 U.S.C. § 1983; the 5th and 14th Amendments to the US Constitution; Tenure Laws of NY State; N.Y. Executive Law§ 296 (New York State Human Rights Law); and N.Y.C. Human Rights Law.

## AS AND FOR A THIRD CAUSE OF ACTION: VIOLATION OF THE FOURTEENTH AMENDMENT EQUAL PROTECTION CLAUSE

60. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 60 as if the same were fully set forth at length herein.

61. While equal protection violations on the basis of religion are subject to strict scrutiny, allegations of equal protection violations due to Plaintiff's medical condition or disability are assessed under rational basis review. Cleburne, 473 U.S. at 446–47. Under this standard, where "disability [or medical] discrimination is at issue, the Fourteenth Amendment only proscribes government conduct for which there is no rational relationship between the disparity of treatment and some legitimate governmental purpose." Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn, 280 F.3d 98, 109 (2d Cir. 2001); see also Bd. of Trs. of Univ. of Ala. v. Garrett, 531 U.S. 356, 366–67 (2001); Cleburne, 473 U.S. at 442–47; Doall v. Plumadore, No. 07-CV-617

(ADS) (AKT), 2007 WL 9711199, at \*8 (E.DN.Y. Sept. 10, 2007) ("Although disability is not a suspect class, the Equal Protection clause still protects against arbitrary and irrational discrimination." (quotation marks omitted)). To succeed on an equal protection claim on the ground that Plaintiff was discriminated against due to her medical condition or disability, Plaintiff must show 42 that Defendants' actions "were not rationally related to a legitimate government interest, but arose from arbitrary and irrational discriminatory intent." Doall, 2007 WL 9711199, at \*8 (quotation marks omitted).

62. In Garvey c City of NY (Index No. 85163/2022), Judge Ralph Porzio wrote in his decision:

> "Petitioners – all but one – applied for [religious] exemptions from the mandate. They received generalized and vague denials. During that time their exemptions were being processed, they remained unvaccinated. Thise was no reason that they could not continue to submit to testing and continue to fulfill their duties as public employees. Thise was no reason why the City of New York could not continue with a vaccine or test policy, like the Mayor's Executive Order that was issued in August 2021……"

and,

> "Though vaccination should be encouraged, public employees should not have been terminated for their non-compliance….The Health Commissioner cannot create a new condition of employment for City employees. The Mayor cannot exempt certain employees from these orders. Executive Order 62 renders all of these vaccine mandates arbitrary and capricious….prohibit an employee from reporting to work."

63. As a direct result of Defendants' violation of the Plaintiff's Fourteenth Amendment rights of equal protection, Plaintiff has suffered irreparable harm for which there is no adequate remedy of law.

64. Defendant's violation of Plaintiff's Fourteenth Amendment rights of equal protection under the law, as alleged herein above, Plaintiff has suffered and is entitled to recover compensatory and nominal damages including backpay.

65. Based on the foregoing, Defendant subjected Plaintiff to discrimination on the basis of her medical issues, unlawfully discriminating against the Plaintiff in the terms and conditions of her employment on the basis of her disabling condition, in violation of 42 U.S.C. § 1983; 5th and 14th Amendments due process clauses; Tenure rights and Law; N.Y. Executive Law§ 296 (New York State Human Rights Law); and N.Y.C. Human Rights Law.

**AS AND FOR A FOURTH CAUSE OF ACTION FOR DEPRIVATION OF PROPERTY AND LIBERTY RIGHTS TO A CONSTITUTIONALLY PROTECTED DUE PROCESS HEARING AS A TENURED TEACHER MANDATED BY EDUCATION LAW 3020 AND 3020-A**

66. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 65 as if the same were fully set forth at length herein.

67. Plaintiff was punished with wrongfully being disciplined for her alleged "insubordination" in not getting vaccinated with the COVID vaccine without any §3020-a or §2568 hearing and no accommodation offers or review by the Defendants.

68. Education Law Section §3020 , Chapter 16, Title 4, Article 61 states as follows:

"Discipline of teachers.

1. No person enjoying the benefits of tenure shall be disciplined or removed during a term of employment except for just cause and in accordance with the procedures specified in section three thousand twenty-a of this article;
2. No person enjoying the benefits of tenure shall be suspended for a fixed time without pay or dismissed due to a violation of article thirteen-E of the public health law….. (iii) the provisions of subdivisions one and two of this section shall not apply to agreements negotiated pursuant to this subdivision…"

69. Plaintiff did not, at any time, waive her rights to a §3020-a hearing on her medical exemption requests. She wanted her due process rights to be honored. Instead, she was declared insubordinate by the Department, her personnel file was flagged and her

fingerprints tagged with a "Problem Code" designating misconduct and put into the same database used by the FBI.

70. The United States Supreme Court has defined waiver as "an intentional relinquishment or abandonment of a known right or privilege. Johnson v. Zerbst, 304 U. S. 458, 464 (1938). Courts should "indulge every reasonable presumption against waiver, Aetna Ins. Co. v. Kennedy, 301U. S. 389, 393 (1937), and they should "not presume acquiescence 526*526 in the loss of fundamental rights," Ohio Bell Tel. Co. v. Public Utilities Comm'n,301 U. S. 292, 307 (1937).

71. In Carnley v. Cochran, 369 U. S. 506 (1962), the Court held:

> "Presuming waiver from a silent record is impermissible. The record must show, or thise must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandably rejected the offer. Anything less is not waiver." Id., at 516.

72. Additionally, a waiver of a teacher's tenure rights must be knowingly and freely given (Matter of Gould v. Bd. of Educ. of the Sewanhaka CHSD, et al., 81 NY2d 446; Matter of Abramovich v. Bd. of Educ. of the Three Villages CSD No. 1, 46 NY2d 450).

73. Tenured teachers have a property and liberty right to their jobs. Cleveland v Loudermill (470 US 532 (1985)) was a landmark 1985 U.S. Supreme Court case that established that public employees with a property interest in their jobs are entitled to a "pre-termination" hearing, which requires notice of the charges and an opportunity to respond. The Court held that this minimal hearing, coupled with subsequent post-termination procedures, satisfies the due process requirements of the Fourteenth Amendment. This ruling prevents public employees from being fired summarily

without a chance to defend themselves, even if the hearing is not a full-blown trial.
Plaintiff's accommodation requests should have been given strict scrutiny, and she
should not have been punished by Defendants placing a "Problem Code" on her
fingerprints marking them as guilty of misconduct for requesting these
accommodations. The actions of the Defendants were malicious and made in
retaliation for Plaintiff requesting the accommodation and not getting the vaccine.

74. Plaintiff was never given *any* hearing, and not a §3020-a as required by Ed. Law
§3020-a. These 3020-a proceedings are public policy in New York State and have
been a custom and practice since 1897. Therefore when there is any penalty that
reduces the benefits of these rights, there must be Just Cause. Judge Desmond Green
in the Richmond County Supreme Court ruled in the case of Rosalie Cardinale that:

> "New York State created the public school tenure system guaranteeing continued
> employment to tenured teachers by statute and therefore created a property right in a
> tenured teacher's continued employment. (See Education Law§§§ 3012, 3012- a,
> 3020, Holt v. Board of Educ. Of Webutuck Cent. School Dist., 52 NY2d 625 [1981],
> Matter of Abromovich v. Board of Educ. of Cent. School Dist. No. I of Towns of
> Brookhaven & Smithtown, 46 NY2d 450 [1979]). Where a property right in
> continued employment exists, such as New York's tenure system, the recipient of
> such a right may not be deprived without due process. See Cleveland Bd. of Educ. v.
> Loudermill, 470 U.S. 532, 538 [1985].
> New York State guarantees a tenured teacher's due process rights to continued
> employment by statute requiring that "no [tenured teacher] ... shall be disciplined or
> removed during a term of employment except for just cause and in accordance with
> the procedures specified in section three thousand twenty-a of this article or in
> accordance with alternate disciplinary procedures contained in a collective
> bargaining agreement ... " Education Law § 3020."

See Kambouris v NYC DOE, Index no. 518863/2022, Decision dated January 5,
2023. Defendant DOE did not appeal.

75. The goal of EDL §3020-a is to protect a teacher/educator from being removed, suspended without pay, or terminated, without Just or probable cause. Tenure remains public policy and a Constitutional and property right in New York State and NYC, and is also a human right not only in state Law, but also in employment contracts statewide. Plaintiff was never given a hearing on their requests for accommodation. See the case of Kambouris v NYC Dep't of Education, Index No. 518863; Abramovich v. Board of Ed. of Central School Dist. No.1 of Town of Brookhaven and Smithtown 62 A.D.2d 252 [2d Dept. 1978] (holding that the public policy expressed in the tenure statutes is designed to protect individual teachers, as public servants, from being dismissed without a hearing once their competency has been demonstrated); McElroy v. Board of Educ. of Bellmore-Merrick Cent. High School Dist, 5 Misc.3d 321 [Sup Ct. Nassau County, 2004] (acknowledging purpose of statute is to protect tenured teachers from arbitrary discipline); Cardinale v NYC Department of Education, Index No. 85165/2017.

76. In order for a tenured educator to be taken off of his/her salary, there must be a probable cause hearing where the NYC DOE has the burden of proof. EDL §3020-a "provides the exclusive method of disciplining a tenured teacher in New York State. Tebordo v. Cold Spring Harbor Cent. School Dist., 126 A.D.2d 542, [2d Dept. 1987]. DOE's attempt to characterize its accusations against Plaintiff here as anything other than misconduct or wrongdoing flies in the face of the facts. And even then, its claim cannot be sustained as a matter of law see Mannix v Bd. of Ed. of City of New York, 21 NY2d 455 [1968] (holding that the employing board improperly terminated tenured teacher accused of not fulfilling a condition of employment by not providing the

teacher with due process under EDL §3020-a ); Matter of Glass v. Board of Education, 21 A.D.2d 891 [1964] (finding tenured teacher entitled to EDL §3020-a hearing where board claimed teacher failed to meet a condition of employment); Lynch v Nyquist, 41 AD2d 363, 365 [3d Dept. 1973] (stating that certification requirements cannot be used as means to erode the protection afforded to tenured teachers and that the regardless of the strength of the board's proof that the teacher was not actually certified it had to proceed pursuant to EDL §3020-a).

77. The deprivation of constitutional rights is per se irreparable harm see Ferreyra v. Decker, 456 F.Supp, 549 [S.D.N.Y. 2020], Mitchell v. Cuomo, 748 F.2d 804, 806 [2d Cir. 1984]. The tenure statutes reflect the intent and purpose of the Legislature to protect educators who have successfully completed a probationary period from being disciplined summarily without the safeguards of Education Law § 3020-a. Holt v. Board of Educ. of Webutuck Cent. School Dist., 52 N.Y.2d 625 (1981)

78. Defendants have not submitted any proof of their specious, deceptive and false claims that Plaintiff did not establish a prima facie case for medical discrimination and employment retaliation. Defendants' argument that she suffered an adverse employment action for "failing to comply with the conflicting employment requirement" is also false. The conflict, if any, was with the unlawful due process designed by the Defendants out of thin air. There was no employment requirement to get vaccinated with the COVID vaccine or be fired. Defendants made that up, and then used it as their standard to dismiss Plaintiff's case.

79. Plaintiff did not have standing to protest the Scheinman Award issued to all teachers in September 2021, so she was forced to submit to the procedure that subsequently led

to her wrongful termination without due process. Clearly, Scheinman made up the LWOP by changing the commonly known AWOP ("Absence Without Pay") which is disciplinary to a forced leave without pay in order to throw out senior, tenured teachers such as Plaintiff without a due process hearing.

80. Based on the foregoing, the NYCDOE failed to provide a reasonable accommodation and as a result, discriminated against the Plaintiff on the basis of her medical condition, unlawfully discriminating against the Plaintiff in the terms and conditions of her employment on the basis of her medical condition, in violation of Education Law §3020, §3020-a (Tenure Law); 42 U.S.C. § 1983; N.Y. Executive Law§ 296 (New York State Human Rights Law); and N.Y.C. Human Rights Law.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

**WHEREFORE,** the Plaintiff demands judgment against the Defendant for all compensatory, emotional, psychological and punitive damages, injunctive relief, and any other damages permitted by law pursuant to the above referenced causes of action. It is respectfully requested that this Court grant Plaintiff any other relief to which she is entitled, including but not limited to:

1. Awarding Plaintiff her tenured position, salary steps and raises, earned before October 2021, in full, with benefits; and

2. Awarding Plaintiff all the back pay owed since she was removed from her salary in 2021;

3. Granting such other and further relief that the Court deems just and proper.

Dated:  October 14, 2025
       Brooklyn, N.Y.

/s/Jadenae Trabacchi
Jadenae Trabacchi

**COMPASSIONATE MEDICINE, P.C**
**Inna Pildysh, M.D., D.O.**
**2345 65th Street**
**Brooklyn, NY 11204**
**(718) 645-4800   (718) 645-4949 fax**

09/23/2021

To whom it may concern:

Ms. Trabacchi, Jadenae, D.O.B. 05/20/1987, age 34, is under my medical care. Patient had COVID-19 infection on 09/08/2021. She tested positive for COVID-19 antibodies on 09/23/2021. The patient also has autoimmune thyroiditis. COVID-19 vaccine is recommended in 3 months.

Sincerely Yours,

Inna Pildysh, M.D.

PILDYSH INNA, M.D. D.O.
LICENSE # 223047
718-645-4800

**EXHIBIT A (2)**

 Gmail

Jadenae Trabacchi <jadenaetrabacchi@gmail.com>

---

## Fwd: Your application for a COVID-19 Vaccine Related Exemption or Accommodation has been received.

1 message

---

**Trabacchi Jadenae** <JTrabacchi@schools.nyc.gov>                    Tue, Nov 30, 2021 at 7:35 PM
To: "jadenaetrabacchi@gmail.com" <jadenaetrabacchi@gmail.com>

---

**From:** solas_donotreply@schools.nyc.gov <solas_donotreply@schools.nyc.gov>
**Sent:** Tuesday, September 28, 2021 6:34:07 PM
**To:** Trabacchi Jadenae <JTrabacchi@schools.nyc.gov>
**Subject:** Your application for a COVID-19 Vaccine Related Exemption or Accommodation has been received.

09/28/2021

Case#: A81408
File# 0888457
EMP ID: 1459338

Dear JADENAE TRABACCHI,

Thank you for submitting your application online!

Type of Application: COVID-19 Vaccine Related Exemption or Accommodation

Application Communications:
During your application process, all communications will be sent to your DOE e-mail account. You must continue to check your DOE e-mail, even if you listed a different preferred email address.

Changes to Your Application:
Unfortunately, you cannot make changes to your submitted application. If you need to make changes, you must withdraw this application and re-submit your request. To withdraw the application please log back into SOLAS: https://dhrnycaps.nycenet.edu/SOLAS.

**Questions:**
For technical questions regarding the SOLAS system, please call HR Connect at 718-935-4000 and refer to the case number at the top of this notice.For more information, you may also visit the HR Connect Employee Portal by logging in with your DOE/Outlook User ID and password at https://doehrconnect.custhelp.com.

Sincerely,


*HR Connect*
Medical, Leaves, and Records Administration

Please do not reply to this message via e-mail. This email address is automated.

Ref Number : GX5944612 N3350 ADA Submission



**NORTHPORT**
**WELLNESS CENTER**
*Your Path to Optimal Health*

October 11, 2021

Re: Jadenae Trabacchi
DOB: 5/20/1987

Whom It May Concern:

This letter is to certify that Jadenae Trabacchi is under my care. Ms. Trabacchi tested positive for Covid 19 infection on 9.8.21.and tested positive for Covid 19 antibodies on 9.23.21. She has an autoimmune disorder - Thyroiditis. The Covid vaccination is not recommended.

If you have any questions, please feel free to call my office.

Sincerely,

*Dr Alan P Sherr*

**COMPASSIONATE MEDICINE, P.C**
**Inna Pildysh, M.D., D.O.**
**2345 65th Street**
**Brooklyn, NY 11204**
**(718) 645-4800   (718) 645-4949 fax**

10/27/2021

To whom it may concern:

Ms. Trabacchi, Jadenae, D.O.B. 05/20/1987, age 34, is under my medical care. Patient had COVID-19 infection on 09/08/2021. She tested positive for COVID-19 antibodies on 09/23/2021, her antibody count was 5.25. She tested for COVID-19 antibodies again on 10/27/2021, and her antibody count increased to 16.50. The patient also has autoimmune thyroiditis. COVID-19 vaccine is still recommended in 3 months.

Sincerely Yours,

Inna Pildysh, M.D.

PILDYSH INNA, M.D. D.O.
LICENSE # 223047
718-645-4800



**From:** **Trabacchi Jadenae** JTrabacchi@schools.nyc.gov
**Subject:** Fwd: Monoclonal Antibody Treatment - Vaccine Exemption
**Date:** November 30, 2021 at 7:35 PM
**To:** jadenaetrabacchi@gmail.com

---

**From:** Division of Human Capital <DHC@schools.nyc.gov>
**Sent:** Sunday, October 3, 2021 7:21:10 PM
**Subject:** Monoclonal Antibody Treatment - Vaccine Exemption

Colleague,

According to our records, your temporary exemption from the vaccine mandate may be based on upon you being within 90-days of receiving Monoclonal Antibody Treatment. Under updated Department of Health guidance, you are permitted (but not required) to work in a school building during this 90-day period, as long as your isolation period has ended and you are not symptomatic. If you wish to work in person, you should inform your principal/supervisor.

If you go to your school building, please show a copy of this email as verification that you are permitted to enter and work in person during this time. If there are any questions on your eligibility to work in person while not yet vaccinated, your principal or supervisor can contact the Office of Disability Accommodations at ODA@schools.nyc.gov.

Thank You,

NYCDOE Division of Human Capital



# EXHIBIT B

## Reasonable Accommodation Appeal Determination

noreply@salesforce.com <noreply@salesforce.com>
on behalf of
NYC Employee Vaccine Appeals <vaxappeal@dcas.nyc.gov>
Mon 3/7/2022 3:57 PM

To: Ruscelli Maria <MRuscelli@schools.nyc.gov>

The City of New York Reasonable Accommodation Appeals Panel has carefully reviewed your Agency's determination, all of the documentation submitted to the agency and the additional information you submitted in connection with the appeal. Based on this review, the Appeals Panel has decided to deny your appeal. This determination represents the final decision with respect to your reasonable accommodation request.

The decision classification for your appeal is as follows: DOE has demonstrated that it would be an undue hardship to grant this accommodation to the employee given the need for a safe environment for in-person learning.

**For all employees other than DOE employees:** Pursuant to the City of New York's policy concerning the vaccine mandate, you now have **three business days** from the date of this notice to submit proof of vaccination. If you do not do so, you will be placed on a leave without pay (LWOP).

**For Department of Education (DOE) employees:** Pursuant to New York City Department of Education policy, you have seven calendar days to extend your Leave Without Pay or return to work. If you do neither, you will be subject to termination. For further information and instructions, please see <u>DOE Denial of Appeal Information.</u>

**EXHIBIT C**

Untitled Document                                                                                                11/25/22, 8:16



**Department of Education**

November 18, 2022

Brooklyn, New York

Title: Teacher/
Applicant ID:
PRP#:

Dear Ms.

Your name was recently submitted to the Office of Personnel Investigation (OPI) for security clearance to work with the NYC Department of Education (DOE) or a DOE contracted vendor. According to our records, your services with the DOE were terminated due to noncompliance with the vaccine mandate and you currently appear out of compliance. The purpose of our contact was to request information so that your application could be processed for security clearance. Requests were sent to you at the email address you provided            @aol.com' on November 10, 2022 and November 16, 2022. You were given a deadline to provide the requested information. To date, we have not received the required information.

Due to your non-compliance, you are unable to work with the DOE or any DOE contracted vendors. As such, your case has been administratively closed, and no security clearance determination has been made. Please note that at this time, you do not have security clearance to work with the DOE and/or one of its contracted vendors.

Sincerely,

The Office of Personnel Investigation
Division of Human Resources
NYC Department of Education

cc: File

From: kking@uft.org >
Date: Thu, Apr 28, 2022 at 12:50 PM
Subject: response from UFT regarding the problem code
>

Karen King (KKing@uft.org)To:you Details
Hello,

Technically you should receive charges. At this time, however, the DOE is not going to issue 3020-a charges because they do not believe they have to do so. We have filed a legal challenge to protect your due process rights, should the judge decide in our favor, you will be entitled to a hearing at that time.

The problem code was added to all employees who were placed on 2VM vaccine mandate leave. It was placed there the day you went on the leave. DOE's central offices placed this code on all employees who went on the leave. It will be removed once you are eligible to return to work.

**Karen King**
*Administrative Assistant to the Assistant Secretary &*
*Director of Personnel, Payroll, and Special Projects*
United Federation of Teachers
50 Broadway, 13th Floor
New York, N.Y. 10004
*kking@uft.org*

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x

MICHAEL KANE, et al,

                                   Plaintiffs,

           - against –                         21-CV-7863 (VEC) (Lead Case)


BILL DE BLASIO, et al.,

                                   Defendants.

-------------------------------------------------------------------- x

MATTHEW KEIL, et al.

                                Plaintiffs,

           - against -                        21-CV-8773 (VEC)


THE CITY OF NEW YORK, et al.,

                                  Defendants

-------------------------------------------------------------------- x

     **MALLORY O. SULLIVAN**, under penalty of perjury, declares pursuant to 28 U.S.C. §

1746, that the following statements are true and correct:

          1.         I am the Deputy Director of the Office of Employee Relations

("OER") at the New York City Department of Education ("DOE"), and I have held this position

since November 2014.  Prior to serving in my current position, I was an Agency Attorney with

the DOE's Office of the General Counsel for approximately four years.

          2.         I submit this declaration to provide information about DOE's

employment record system in response to certain allegations regarding "problem codes" as set

forth in the Declaration of Natasha Solon dated May 20, 2022 (ECF dkt. 162).  I am familiar

with the facts set forth herein based on my personal knowledge as well as discussions with other DOE employees and the review of DOE records.

3.          In my role as Deputy Director, I oversee the DOE's Office of Personnel Investigation ("OPI"), which is responsible for, among other things, screening and conducting background investigations for all candidates for employment with the DOE or with vendors under contract with the DOE and monitoring employee and vendor employee security clearances. As a part of these processes, OPI uses internal system codes.

4.          The DOE maintains electronic employment records and employee service histories for DOE employees ("DOE employment records"). DOE employment records are kept within a system called NYCAPS, which is operated by the City of New York for all DOE and City employees. DOE employment records are only visible to the DOE and reflect employees' dates of employment, titles held, and various changes in active employment status.

5.          In addition, DOE has codes within NYCAPS designed to engender special attention should an individual seek employment, re-employment, or change titles with the DOE. Such a code might be used where, for example, an employee left DOE employment with a performance issue, had a nomination for employment rescinded, or was the subject of an arrest. This is designed to ensure that prior to any new employment or new title within DOE, the employee's application undergoes further review by OPI. These types of codes have been colloquially referred to as "problem codes." These codes are only visible to internal DOE Human Resources staff, and the underlying basis for such code is only accessible by OPI.

8.          Separately, DOE implemented an internal NYCAPS code specific to the Commissioner of Health Order mandating vaccination of DOE employees ("Vaccination Mandate"). This code remains visible to only OPI staff to ensure vaccination status was

reviewed prior to any return of an employee placed on a leave without pay due to non-compliance with the Vaccination Mandate. A DOE employee would not have a "problem code" in their service history as a result of any non-compliance with the Vaccination Mandate.

9.      In this instant case, Natasha Solon was placed on leave without pay due to non-compliance with the Vaccination Mandate, and returned to service once compliance with the Vaccination Mandate was confirmed. At no point did Natasha Solon have a "problem code" in her service history as a result of her non-compliance with the Vaccination Mandate nor was there ever any code in her service history arising out of her vaccination status visible to anyone outside of OPI.

Dated:      May 27, 2022
            New York, New York

                                        By: _____
                                            Mallory Q. Sullivan
                                            Deputy Director
                                            Office of Employee Relations

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                      :

MICHAEL KANE, et al.,                 :

                        Plaintiffs,     :

              - against -        :     Case No.  21-cv-7863 (VEC) (Lead)

BILL DE BLASIO, et al.,         :

                        Defendants.   :
-----------------------------------------------------------------X
                                        :

MATTHEW KEIL, et al.         :

                        Plaintiffs,     :

              - against -        :     Case No.  21-cv-8773 (VEC)

THE CITY OF NEW YORK, et al.,   :

                        Defendants.   :
-----------------------------------------------------------------X

**DECLARATION OF BARRY BLACK IN FURTHER SUPPORT OF
PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

**BARRY BLACK**, an attorney admitted to practice before this Court, declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true:

1. I am an attorney for Plaintiffs and fully familiar with the facts and circumstances of this case.

2. I respectfully submit this declaration in response to Mallory O. Sullivan's Declaration.

3. Attached as Exhibit 1 is a true and correct copy of a declaration from Betsy Combier.

4. Attached as Exhibit 2 is a true and correct copy of a declaration from Plaintiff Dennis Strk.

5. Attached as Exhibit 3 is a true and correct copy of a declaration from proposed class member Patricia Catoire.

### First False Assertion in Sullivan Declaration

6. The Sullivan Declaration asserts that there are two different kinds of codes in the NYCAPS system: a "problem code" and some other unnamed code. the "problem code" indicating anything from a performance issue to criminal activity, and the unspecified code flagging the absence of vaccination. Glaringly absent from Sullivan's recitation is how these codes appear to the reader. That is because there is no difference; they are one and the same.

7. Indeed, DOE Human Resources Director Eric Amato explicitly stated in an email to UFT Assistant Secretary Michael Sill and General Counsel Beth Norton that a "[p]roblem code was added to all employees who were placed on 2VM vaccine mandate leave. Our central offices placed this code on all employees who went on the leave." Ex. 1, ¶ 13, Ex. A.

8. Moreover, terminated Plaintiffs had a problem code plainly visible in their payroll portal, indicated by a **"Problem PR"** notation in their salary history tab. Ex. 2, ¶ 5, Ex. A; Ex. 1 ¶ 10 (DOE's "problem code" is also referred to as a "pr" code).

1

**<u>Second False Assertion in Sullivan Declaration</u>**

9. The Sullivan Declaration falsely posits that the no one outside DOE's Office of Personnel Investigations has access to the problem code. To the contrary, any non-DOE school or official that wants to learn whether a former DOE employee has a problem code in his or her personnel file can easily do so in a variety of ways. For example, non-DOE schools which offer DOE-funded positions have access to the DOE's payment portal, Galaxy, which allows them to see problem codes; indeed Plaintiffs present evidence of at least 15 former DOE employees who were not hired at non-DOE schools because the non-DOE schools discovered their problem codes. Ex. 1, ¶¶ 14-18. Simple phone calls work as well: a former UFT Special Representative explained that she used to "receive[] countless calls every week asking . . . if there was a problem code on an employee's personnel file" and that her UFT colleague next door would then check her computer and "tell [her] 'yes' or 'no' within a minute." Ex. 1, ¶ 8. In some instances, DOE representatives disclosed the problem codes to prospective employers from non-DOE schools calling to verify employment. Ex. 1, ¶ 19. In one instance, a third-party HR representative at Bright Start Learning Center of NYC—a non-DOE school operating pursuant to NYS Department of Health Bureau of Early Intervention directives—informed a former DOE employee that she had had been flagged as "ineligible" in her personnel file. Ex. 3, ¶¶ 8-9, 13.

10. It is noteworthy that such evidence was already in the record before Defendants filed the Sullivan declaration, but Defendants did not even attempt to discredit it. ECF No. 162 ¶¶ 11-13 (Plaintiff Solon was told by an official at non-DOE school that it could not hire her because of the problem code in her personnel file).

2

## Further Evidence of Irreparable Harm

11. Plaintiffs' irreparable harm did not cease with their terminations. Instead, the problem codes in their files make them unemployable indefinitely at both DOE and non-DOE schools.

12. The UFT has stated unequivocally that such problem codes "will be removed once [they] are eligible to return to work." Ex. 1, ¶ 13, Ex. A.

13. Thus, Plaintiffs face ongoing coercion to violate their religious beliefs and become vaccinated, in order to become employable – and remove the scarlet letter from their permanent records.

14. The Court is reminded that Plaintiff Solon's problem code was removed within 24 hours of her getting vaccinated. ECF No. 162 ¶ 18.

Dated: New York, New York

     June 3, 2022                   Respectfully submitted,

Barry Black
Nelson Madden Black LLP
*Attorney for Plaintiffs*
475 Park Avenue South, Suite 2800
New York, NY 10016
(212) 382-4303

3

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------X :

MICHAEL KANE, et al.,

                       Plaintiffs,

        - against -

DE BLASIO et al.,

                      Defendants.

-----------------------------------------------------------X :

MATTHEW KEIL, et al.

                       Plaintiffs,

        - against -

THE CITY OF NEW YORK et al.,

                      Defendants.

-----------------------------------------------------------X

Case No.  21-cv-7863 (VEC) (Lead)

Case No.  21-cv-8773 (VEC)

## DECLARATION OF BETSY COMBIER

Betsy Combier declares as follows, pursuant to 28 U.S.C. § 1746:

1. My name is Betsy Combier and I am the President and lead paralegal of Advocatz, a paralegal consulting business for people who need a partner as they go through the Courts, grievances, or life problems.

2. I respectfully submit this Declaration in support of Plaintiffs' Motion for a Preliminary Injunction.

3. I know the facts stated herein to be true based upon my personal knowledge and based upon my review of the files of hundreds of my clients whom I have represented in proceedings with the New York City Department of Education ("DOE"), except

for statements which are made on information and belief and, as to those, I verily believe them.

4.      I have a degree in Child Psychology from Northwestern University, an MA Certificate from the Johns Hopkins' School for Advanced International Studies where my specialization was the Soviet Military Industrial Complex, an MPS in Interactive Telecommunications from New York University, and a Certificate in Art and Drama Therapy from The New School.

5.      I have successfully assisted parents, children, and caregivers with the educational needs of their children, and I have been advocating for the due process rights of Union members—in particular, members of the AFL-CIO, United Federation of Teachers ("UFT") and Local 32 B&J—for 17 years.

6.      From 2007-2010, I worked as Special Representative to the UFT where my job was to oversee the eight re-assignment centers in the NYC DOE, first in all boroughs, and then at the Manhattan, Brooklyn, and Bronx locations.

7.      I am very familiar with the arbitration hearing process, set forth in New York Education Law § 3020-a, having assisted teachers in approximately 300 3020-a hearings since 2003.

8.      I am also very familiar with "problem codes"—the flag the DOE puts in the personnel file of employees to indicate that they should not be hired due to unexplained misconduct of some kind. Employees can be flagged for everything from receiving an unsatisfactory or ineffective rating to engaging in egregious criminal acts. During the three years I worked at the UFT headquarters, I received countless calls every week

2

asking me if there was a problem code on an employee's personnel file. When that happened, I would simply ask the person next door to my office, another UFT Special Representative, whether she could check her computer, and she would tell me "yes" or "no" within a minute.

9.    When the DOE puts a problem code in the employee's personnel file, it also places a flag on the employee's fingerprints, which is then sent to the national databases at both the Federal Bureau of Investigation and the State Division of Criminal Justice Services.

10.   I have represented more than 15 DOE employees before the DOE's Office of Personnel Investigation in proceedings in which they requested the removal of their problem codes. The flag has several names such as "problem code," "pr" code, "pc" code, "ineligible," and "no hire/inquiry" code; however, all refer to a salary block, whatever title it is given.

11.   I have helped approximately 20 DOE employees get their problem codes removed from their personnel files.

12.   I know of many former DOE employees who have problem codes in their personnel files because they declined to be vaccinated in violation of the DOE's mandate and were not granted a religious or medical exemption. The DOE places a problem code on the employee's personnel file immediately upon getting information that the employee did not submit proof of vaccination. As soon as the employee gets the vaccination and submits proof, the code is removed from his or her file.

3

13.   Attached as Exhibit A is a true and correct redacted copy of an email one of my
clients received from Eric Amato at the DOE. The email was also sent to UFT
Assistant Secretary Michael Sill and copies UFT officials including its General
Counsel Beth Norton. The email confirms that DOE employees who were placed on
leave without pay for failing to be vaccinated in violation of the DOE's mandate had
a problem code (as opposed to any other kind of code) added to their personnel files.

14.   I am aware that non-DOE schools located in counties outside New York City receive
funds from the NYC DOE for certain teaching positions. These may include, for
example, special education or STEM teachers.

15.   The DOE pays the salaries for these positions using the same system it uses to pay
traditional DOE employees, which is called Galaxy. Galaxy indicates whether the
employee has a problem code in his or her file and blocks payment to the employee
with this flag/code if viewed in the personnel file.

16.   Many of my clients with problem codes in Galaxy have looked for other teaching jobs
outside the NYC DOE while their problem code appeals were ongoing.

17.   At least 15 of my clients with problem codes were not hired by prospective schools
outside the DOE because such schools saw the problem codes in Galaxy, even though
those schools were located outside New York City.

18.   Such schools were able to see the codes because the position applied for was financed
by the DOE and so the school used the Galaxy system and could check the
prospective employee's file.

4

19.     I also have several clients who applied to schools outside of the DOE who were not hired by their prospective employers because when the prospective employers reached out to the DOE to verify my clients' previous employment, the DOE representative told them about the problem codes in my clients' files.

20.     In sum, any non-DOE school that wants to learn whether a former DOE employee has a problem code in his or her personnel file can readily do so.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
      June 3, 2022

                                   *Betsy Combier*
                            By: Betsy Combier

5

# EXHIBIT A

**From: Amato Eric** <EAmato4@schools.nyc.gov>
Date: Wed, Feb 9, 2022 at 8:06 AM
Subject: RE: PR code
To: ███████████████████  Michael Sill <msill@uft.org>
Cc: Beth A. Norton
<bnorton@uft.org>, Kking@uft.org <Kking@uft.org>. dcampbell@uft.org <dcampbell@uft.org>

PR = Problem code – Problem code was added to all employees who were placed on 2VM vaccine mandate leave. It was placed there the day you went on the leave. Our central offices placed this code on all employees who went on the leave. It will be removed once you are eligible to return to work.


Thanks,
Eric

5. In October, 2021, I was involuntarily suspended for failing to get vaccinated in violation of my sincerely held religious beliefs.

6. After the Second Circuit held that the DOE's religious exemption policy was unconstitutional, I was able to apply for reconsideration by the Citywide Panel. The email sent to me stated that we did not need to submit anything because they would rely on the original material.

7. I received no response for months. Meanwhile my situation became desperate.

8. I depleted all of my savings, my son had to take a leave of absence from school because I could not pay the parental portion of tuition, and my children and I were running out of food, and on the brink of losing our home.

9. I owed over $2,000 in heating bills.

10. I applied to over sixty jobs during this period. Despite my extensive qualifications and spotless record, few positions called me back, and none offered me a job.

11. Finally, during an interview in Westchester, the woman conducting the interview took pity on me. She told me she liked me and wished she could hire me.

12. However, she said she had to be honest with me – neither she nor anyone else would be able to hire me.

13. I asked why. She said that there was a "problem" code in the system flagging my name. Outside schools cannot see the reason for the code, other than there is a problem flagged indicating not to hire. Examples she gave me of typical problem codes arose from robbery and other serious misconduct.

14. I have a spotless record and was shocked to find out about this code.

15. I investigated further and learned that the internal records at the DOE showed the reason for the problem code was that I was not vaccinated.

16. My situation grew more desperate every day, and it soon became clear that I would get no other work while this code remains.

17. Finally, to save my family and our home, I took the vaccine, which is against my sincerely held religious beliefs.

18. Within twenty-four hours of submitting my paperwork to the DOE, I was reinstated, and the problem code was removed.

19. Even though I felt I had no choice, this decision has been deeply traumatic and continues to cause irreparable harm.

20. I pray every day for help to overcome my anger, pain, and guilt for having to violate my faith.

21. The experience continues to impact me and to cause me serious distress.

22. I do not feel safe at my job. I do not feel safe in society.

23. The fact that the courts would continue to uphold this brazen unconstitutional condition and fail to intervene to protect us as we lose everything we have worked so hard to achieve continues to shake my faith in this country.

24. If, as the Second Circuit admitted, the DOE violated the Constitution, how can this Court or any other continue to allow the DOE to continue to harm so many of us for not taking the vaccine?

25. I am vaccinated now, but when the inevitable booster requirement comes, I will have to go through all of this again. I do not think that I can violate my faith again. The harm it caused me to do it to save my family was too severe.

26. I only hope that this Court intervenes before that occurs, or at least intervenes before more of my colleagues are forced to be violated the way I was.

27. This is spiritual rape. There is no other way to put it. I did not consent to this.

28. This Court must help us to stop the continuing injustice.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:      New York, New York
            May 20, 2022

                                           By: Natasha Solon

From: **Beth A. Norton** <BNorton@uft.org>
Date: Thu, Jul 28, 2022, 12:36 PM
Subject: RE: Questions about voluntary resignations and follow ups
To:
Cc: Michael Sill <MSill@uft.org>, Michael Mulgrew <MMulgrew@uft.org>, Tanisha
Franks <TFranks@uft.org>, Karen King <KKing@uft.org>

The arbitration award doesn't "expire," I am not sure what you mean by that.

As the language you quoted from the waiver indicates, you will be deemed to have voluntarily resigned your position with the DOE on September 6 if you are not, at that time, in compliance with the health order (vaccinated with 2 shots of Pfizer or Moderna, or 1 shot of J&J). This will be treated as a traditional resignation, it is not a termination. You will be permitted to cash out your CAR and vacation days at the contractual rates. The code on your file indicates that you are not vaccinated, that will not be lifted until such time as you are vaccinated.

You should be receiving an email from the DOE in the next week or so asking for your intent for the fall.

At this time there is no indication that the vaccine mandate will be lifted, so if you wish to return you would have to comply with the health order. If that changes we will let you know.

Regards,

**Beth A. Norton**
General Counsel
United Federation of Teachers
52 Broadway 14th Floor
New York, NY 10004
212-701-9420

**EXHIBIT D**

## ORDER OF THE COMMISSIONER
## OF HEALTH AND MENTAL HYGIENE
## TO REQUIRE COVID-19 VACCINATION FOR
## DEPARTMENT OF EDUCATION
## EMPLOYEES, CONTRACTORS, VISITORS, AND OTHERS

**WHEREAS**, on March 12, 2020, Mayor Bill de Blasio issued Emergency Executive Order No. 98 declaring a state of emergency in the City to address the threat posed by COVID-19 to the health and welfare of City residents, and such order remains in effect; and

**WHEREAS**, on March 25, 2020, the New York City Commissioner of Health and Mental Hygiene declared the existence of a public health emergency within the City to address the continuing threat posed by COVID-19 to the health and welfare of City residents, and such declaration and public health emergency continue to be in effect; and

**WHEREAS**, pursuant to Section 558 of the New York City Charter (the "Charter"), the Board of Health may embrace in the Health Code all matters and subjects to which the power and authority of the Department of Health and Mental Hygiene (the "Department") extends; and

**WHEREAS**, pursuant to Section 556 of the Charter and Section 3.01(c) of the Health Code, the Department is authorized to supervise the control of communicable diseases and conditions hazardous to life and health and take such actions as may be necessary to assure the maintenance of the protection of public health; and

**WHEREAS**, the U.S. Centers for Disease Control and Prevention ("CDC") reports that new variants of COVID-19, identified as "variants of concern" have emerged in the United States, and some of these new variants which currently account for the majority of COVID-19 cases sequenced in New York City, are more transmissible than earlier variants; and

**WHEREAS,** the CDC has stated that vaccination is an effective tool to prevent the spread of COVID-19 and benefits both vaccine recipients and those they come into contact with, including persons who for reasons of age, health, or other conditions cannot themselves be vaccinated; and

**WHEREAS,** the CDC has recommended that school teachers and staff be "vaccinated as soon as possible" because vaccination is "the most critical strategy to help schools safely resume full operations [and] is the leading public health prevention strategy to end the COVID-19 pandemic;" and

**WHEREAS,** on September 9, 2021, President Joseph Biden announced that staff who work in Head Start programs and in schools run by the Bureau of Indian Affairs and Department of Defense will be required to be vaccinated in order to implement the CDC's recommendations; and

**WHEREAS**, on August 26, 2021, New York State Department of Health adopted emergency regulations requiring staff of inpatient hospitals and nursing homes to receive the first dose of a vaccine by September 27, 2021, and staff of diagnostic and treatment centers, hospices, home care and adult care facilities to receive the first dose of a vaccine by October 7, 2021; and

**WHEREAS,** Section 17-104 of the Administrative Code of the City of New York directs the Department to adopt prompt and effective measures to prevent the communication of infectious diseases such as COVID-19, and in accordance with Section 17-109(b), the Department may adopt

vaccination measures to effectively prevent the spread of communicable diseases; and

**WHEREAS,** the City is committed to safe, in-person learning in all pre-school to grade 12 schools, following public health science; and

**WHEREAS** the New York City Department of Education ("DOE") serves approximately 1 million students across the City, including students in the communities that have been disproportionately affected by the COVID-19 pandemic and students who are too young to be eligible to be vaccinated; and

**WHEREAS**, a system of vaccination for individuals working in school settings, including DOE buildings and charter school buildings, will potentially save lives, protect public health, and promote public safety; and

**WHEREAS,** pursuant to Section 3.01(d) of the Health Code, I am authorized to issue orders and take actions that I deem necessary for the health and safety of the City and its residents when urgent public health action is necessary to protect the public health against an existing threat and a public health emergency has been declared pursuant to such section; and

**WHEREAS,** on August 24, 2021, I issued an order requiring COVID-19 vaccination for DOE employees, contractors, and others who work in-person in a DOE school setting or DOE building, which was amended on September 12, 2021; and

**WHEREAS**, unvaccinated visitors to public school settings could spread COVID-19 to students and such individuals are often present in public school settings and DOE buildings;

**NOW THEREFORE** I, Dave A. Chokshi, MD, MSc, Commissioner of Health and Mental Hygiene, finding that a public health emergency within New York City continues, and that it is necessary for the health and safety of the City and its residents, do hereby exercise the power of the Board of Health to prevent, mitigate, control and abate the current emergency, to

**RESCIND and RESTATE** my September 12, 2021 Order relating to COVID-19 vaccination for DOE employees, contractors, visitors, and others; and

I hereby order that:

1. No later than September 27, 2021, or prior to beginning employment, the following individuals must provide proof of vaccination as described below:
   a. DOE staff must provide proof of vaccination to the DOE.
   b. City employees who work in-person in a DOE school setting, DOE building, or charter school setting must provide proof of vaccination to their employer.
   c. Staff of contractors of DOE or the City, as defined below, must provide proof of vaccination to their employer, or if self-employed, to the DOE.
   d. Staff of any charter school serving students up to grade 12, and staff of contractors hired by charter schools co-located in a DOE school setting to work in person in a DOE school setting or DOE building, must provide proof of vaccination to their employer, or if self-employed, to the contracting charter school.

2. An employer to whom staff must submit proof of vaccination status, must securely maintain a record of such submission, either electronically or on paper, and must demonstrate proof of compliance with this Order, including making such records immediately available to the Department upon request.

3. Beginning September 13, 2021, all visitors to a DOE school building must show prior to entering the building that they have:
   a. Been fully vaccinated; or
   b. Received a single dose vaccine, or the second dose of a two-dose vaccine, even if two weeks have not passed since they received the dose; or
   c. Received the first dose of a two-dose vaccine.

4. Public meetings and hearings held in a DOE school building must offer individuals the opportunity to participate remotely in accordance with Part E of Chapter 417 of the Laws of 2021.

5. For the purposes of this Order:

   "Charter school setting" means a building or portion of building where a charter school provides instruction to students in pre-kindergarten through grade 12 that is not collocated in a DOE building.

   "DOE school setting" includes any indoor location where instruction is provided to DOE students in public school pre-kindergarten through grade 12, including but not limited to locations in DOE buildings, and including residences of students receiving home instruction and places where care for children is provided through DOE's LYFE program. DOE school settings include buildings where DOE and charter schools are co-located.

   "DOE staff" means (i) full or part-time employees of the DOE, and (ii) DOE interns (including student teachers) and volunteers.

   "Fully vaccinated" means at least two weeks have passed after an individual received a single dose of a COVID-19 vaccine that only requires one dose, or the second dose of a two-dose series of a COVID-19 vaccine approved or authorized for use by the Food and Drug Administration or World Health Organization.

   "Proof of vaccination" means proof that an individual:
   a. Has been fully vaccinated;
   b. Has received a single dose vaccine, or the second dose of a two-dose vaccine, even if two weeks have not passed since they received the dose; or
   c. Has received the first dose of a two-dose vaccine, in which case they must additionally provide proof that they have received the second dose of that vaccine within 45 days after receipt of the first dose.

   "Staff of contractors of DOE or the City" means a full or part-time employee, intern or volunteer of a contractor of DOE or another City agency who works in-person in a DOE school

setting, a DOE building, or a charter school, and includes individuals working as independent contractors.

"Visitor" means an individual, not otherwise covered by Paragraph 1 of this Order, who will be present in a DOE school building, except that "visitor" does not include:

a. Students attending school or school-related activities in a DOE school setting;
b. Parents or guardians of students who are conducting student registration or for other purposes identified by DOE as essential to student education and unable to be completed remotely;
c. Individuals entering a DOE school building for the limited purpose to deliver or pick up items;
d. Individuals present in a DOE school building to make repairs at times when students are not present in the building;
e. Individuals responding to an emergency, including police, fire, emergency medical services personnel, and others who need to enter the building to respond to or pick up a student experiencing an emergency;
f. Individuals entering for the purpose of COVID-19 vaccination;
g. Individuals who are not eligible to receive a COVID-19 vaccine because of their age; or
h. Individuals entering for the purposes of voting or, pursuant to law, assisting or accompanying a voter or observing the election.

"Works in-person" means an individual spends any portion of their work time physically present in a DOE school setting, DOE building, or charter school setting. It does not include individuals who enter such locations for the limited purpose to deliver or pick up items unless the individual is otherwise subject to this Order. It also does not include individuals present such locations to make repairs at times when students are not present in the building unless the individual is otherwise subject to this Order.

6. Nothing in this Order shall be construed to prohibit any reasonable accommodations otherwise required by law.

7. This Order shall be effective immediately and remain in effect until rescinded, subject to the authority of the Board of Health to continue, rescind, alter or modify this Order pursuant to Section 3.01(d) of the Health Code.

Dated: September 15, 2021

Dave A. Chokshi, M.D., MSc
Commissioner

 Gmail

**Jadenae Trabacchi <jadenaetrabacchi@gmail.com>**

---

## Fwd: FINAL NOTICE: Leave Without Pay Status
1 message

**Trabacchi Jadenae** <JTrabacchi@schools.nyc.gov>                    Tue, Nov 30, 2021 at 7:31 PM
To: "jadenaetrabacchi@gmail.com" <jadenaetrabacchi@gmail.com>

---

**From:** NYCDOE <noreply@schools.nyc.gov>
**Sent:** Monday, November 29, 2021, 5:53 PM
**To:** Trabacchi Jadenae
**Subject:** FINAL NOTICE: Leave Without Pay Status



Dear Colleague,

According to New York City Department of Education (NYCDOE) records, you are currently on a Leave Without Pay (LWOP) because you are not eligible to work based on your failure to comply with the New York City Health Commissioner's Order requiring vaccination of all NYCDOE staff, absent the granting of a reasonable accommodation.

As you were previously advised, **if you remain non-compliant and have not opted to extend your LWOP or return from LWOP status by November 30, you are subject to termination from service with the NYCDOE beginning December 1, 2021**.

If you would like to extend your LWOP status, you may do so by logging into SOLAS and stating your intention **by 11:59pm November 30**. Employees choosing this option:

- Will remain eligible for health insurance through September 5, 2022.
- May seek to return from this leave prior to September 6, 2022 by following the steps below on returning from LWOP status. Employees who have not returned by September 6, 2022 shall be deemed to have voluntarily resigned.
- Must waive their rights to challenge such resignation, including, but not limited to, through a contractual or statutory disciplinary process

If you would like to return to work from LWOP status, you must complete two steps using the DOE Vaccination Portal by November 30:

1. Upload proof that you have received your first dose of a COVID-19 vaccine. Proof of COVID-19 vaccine can be an image of your vaccination card, NYS Excelsior Pass, or another government record.
2. E-sign the attestation stating that you are willing to return to your worksite within fourteen calendar days of submission.

Once you have completed these two steps, your HR Director and supervisor will also be notified and will work with you to plan your return date. If you encounter technical issues accessing the Vaccination Portal, please contact the DOE Help Desk by opening a ticket online or calling 718-935-5100. If you need support uploading your proof of vaccination, please contact your principal or HRD, who can do so on your behalf.

If you believe you have received this notice in error because you are not currently on leave without pay, or have extended your LWOP, or have submitted proof of vaccination, please contact **lwopquestions@schools.nyc.gov** no later than 5 PM on November 30, 2021.


Sincerely,


NYCDOE Division of Human Capital

**EXHIBIT F**

 Jadenae Trabacchi <jadenaetrabacchi@gmail.com>

---

# Fwd: Termination of NYCDOE Employment
1 message

---

**Trabacchi Jadenae** <JTrabacchi@schools.nyc.gov>                    Wed, Feb 16, 2022 at 4:23 AM
To: Jadenae Trabacchi <jadenaetrabacchi@gmail.com>

---

**From:** Division of Human Resources <DHR@schools.nyc.gov>
**Sent:** Tuesday, February 15, 2022 3:21:49 PM
**To:** Trabacchi Jadenae <JTrabacchi@schools.nyc.gov>
**Subject:** Termination of NYCDOE Employment

February 15, 2022

JADENAE TRABACCHI

TEACHER

1459338

Dear JADENAE TRABACCHI:

You have previously received notice regarding your failure to comply with the New York City Health Commissioner's Order requiring vaccination of all NYCDOE staff and your termination from DOE effective February 11, 2022 as a result. Compliance with that Order is a condition of employment. Since you did not comply with the Order and did not choose to extend your leave without pay, despite notice and an opportunity to do so, your employment with the New York City Department of Education was terminated, effective February 11, 2022. Please note that your health insurance coverage through the City also ceased upon termination.

If you have not already done so, you must return all DOE-issued equipment and materials, including your ID, to your supervisor. Information about COBRA will be mailed separately to you at the address on file in NYCAPS. Your school and/or office will be notified of your termination as well.

Thank you for your service to the New York City Department of Education.

Sincerely,

NYCDOE Division of Human Capital

**Jadenae Trabacchi** <jadenaetrabacchi@gmail.com>Wed, Feb 22, 2023 at 5:47 AM
To: krodi@schools.nyc.gov

Dear Ms. Rodi,

My name is Jadenae` Trabacchi, File No. ___ / Employee ID ___. I am a NYCDOE Employee who was terminated over the vaccine mandate, unlawfully placed on LWOP, and had my medical accommodation denied with many doctor's notes disregarded. As Per New York State Law, I should have been given a 3020-A hearing; I am a tenured professional and have worked diligently for the NYCDOE for almost a decade with a spotless disciplinary record. In regards to due process, I should have been formally charged and found guilty prior to my unlawful termination. There has been no formal charge against me, yet I was labeled with a "problem code," which flags my fingerprints to the FBI and other Criminal Justice Departments in New York. I do not want to "re-apply;" I want what is rightfully mine, and to be made whole. Due to my fingerprints being flagged for misconduct, it has been extremely difficult to seek employment elsewhere, and therefore has greatly impacted my livelihood and put me in a state of duress for the past two years.

My attempt to send this correspondence is to be placed back on salary immediately, given back pay, have my CAR days reimbursed, and my fingerprints cleared. These demands are non-negotiable and should be granted immediately. I reserve the right to collect the damages for the pain and suffering I have been subjected to by all parties responsible.

Please respond to this email no later than March 1st, 2023, and treat this matter with a sense of urgency. I look forward to hearing from you soon.

Sincerely,
Jadenae` A. Trabacchi
BFA, MS, NBC-HWC
Art, TESOL

# TEACHER VACANCY CIRCULAR NO 4 CENTRAL REMOTE TEACHERS iZONE 2022 2023

NYC Department of Education
3.9 3.9 out of 5 stars
Remote
Full-time

## Location

Remote

## Full job description

## TEACHER VACANCY CIRCULAR NO 4 CENTRAL REMOTE TEACHERS iZONE 2022 2023

Posted Date: May 6, 2022 Deadline: Jun 3, 2022
New York United States
VIRTUAL

## Job Details

**(SUBJECT TO BUDGET AVAILABILITY)**

**POSITION:**

## Teacher - Central

Remote Instruction Teachers

**License/Eligibility Requirements:**

New York City licensed Social Studies, Science, English, Foreign Language, Math and Health tenured teachers in High School Grade Levels.

**Office:**

iZone

**Location:**

82-01 Rockaway Blvd, Ozone Park, NY 11416

Or other DOE offices

**Remote Teachers**

**Position Summary:**

Virtual Learning Classrooms aim to partner teachers from around the city with students to provide them with increased access to courses not available in their home schools, including, but not limited to Electives, AP Courses, and Foreign Language courses. This posting is for teachers interested in teaching in this full time program from September 2022 - June 2023. Remote instruction teachers will deliver instruction to and communicate with high school students in other locations using internet and required technological platforms. Please note that while students will not be in the same location as the teacher, this is an in person teaching position.

Remote Teachers are licensed teachers of high school grade levels who teach students virtually. Remote teachers will teach students in the following subject areas: Advanced Placement Subjects (Including but not limited to, AP Psychology, AP Spanish, AP US History, AP World History, AP Government, AP Calculus AB/BC, AP Macroeconomics, AP Statistics, AP Computer Science Principles and A, AP Environmental Science, AP English Language and Literature, and AP Seminar), electives (Including but not limited to, Forensics, Health, Media Literacy, Financial Literacy, science electives, Computer Science and Business) and Foreign Languages (Including but not limited to, Spanish, Chinese and French). Other subjects may be added. Students may be enrolled from multiple schools simultaneously, but total class size will not exceed contractual limits. Remote Teachers will be expected to participate in 10 sessions of professional learning workshops including an online course leading to a Learning Management System certification to occur during July and/or August prior to commencement of position with remaining

on-going professional learning during the year and will be paid at the per session rate for work beyond the contractual workday/work year. Remote teachers will perform required duties (including corresponding with home school staff, planning for remote instruction and assessment, communication and conferencing with students and/or parents). Duties and responsibilities are intended to emulate traditional teaching paradigms and create an equitable learning experience.

**Reports to:**

DIIT iZone Supervisor

**QUALIFICATIONS:**

- Minimum of four (4) years of teaching experience as a regularly appointed teacher. Knowledge of the common core standards as it relates to course.

- Extensive knowledge of the New York State and City Standards, meets Advanced Placement requirements (as appropriate) and is licensed in subject matter.

- Demonstrated expertise in an online learning environment designing and implementing standards-based instruction that specifies clear learning objectives, includes engaging activities and authentic assessments to measure mastery.

- Willingness to promote online dialogue to deepen the learning experience.

- Demonstrated ability with written and oral communications emphasis placed on the delivery of digital presentations.

- Demonstrated ability to use online learning, communication and other edtech tools as appropriate.

- Can differentiate instruction for individuals or groups of students based on instructional data and analysis as well as student characteristics.

- Can sustain and document flexible teaching schedules, which account for asynchronous and synchronous activities that are student-centered and maintain high standards for student engagement and success.

- Selected candidates will be asked to facilitate a demonstration lesson or planning activity to demonstrate aforementioned qualifications.

**PREFERRED SKILLS:**

- Demonstrated skill in team building, group dynamics, and facilitating collaborative learning.
- Proven history of being a self-starter who works well without constant supervision.

**DUTIES AND RESPONSIBILITIES:**

- Demonstrate competency in using data from assessments and other data sources to modify content and guide student learning.

- Modify engaging content and appropriate assessments in an online environment.

- Provide quality instruction to students using asynchronous and synchronous teaching methods (I.e. asynchronous = discussion forums, group work, written and digital assignments, posted content. Synchronous = online classrooms, webinars, chat rooms).

- Employ student-centered instructional strategies that are connected to real-world applications to engage students in learning.

- Facilitate and monitor online instruction groups/discussions to promote learning through higher-order thinking and group interaction.

- Provide a variety of ongoing and frequent teacher-student, teacher-teacher, and teacher-administrator interaction with participating schools.

- Provide prompt feedback, communicate high expectations, and teach to diverse talents and learning styles.

- Online communication between students and teachers is a significant component of this program to mimic in person communication. Therefore, teachers are expected to respond to student emails and grade assignments within 2 workdays, as well as monitor and respond to discussion postings daily during the school week.

- Regularly share with home school(s) student data including but not limited to grades and attendance. This includes the use of school selected platforms and systems.

- Incorporate and comply with FERPA, AUP and communicate privacy guidelines to students.

- Select and use a variety of online tools for communication, productivity, collaboration, data and performance analysis, presentation, research, and online content delivery as appropriate to the content area and student needs.

- Use communication technologies in a variety of mediums and contexts for teaching and learning.

- Apply technical troubleshooting skills (downloading plug-ins, uploading assignments, etc.)

- Participate in all professional development and peer mentoring exercises throughout the duration of service.

- Develop key relationships in order to work closely with home school staff, students and parents of participating schools, guidance counselors and central iZone staff.

- Participate in activities to identify best practices, address challenges and assess efficacy.

**WORKING CONDITIONS & LOCATION:**

- The maximum class size of a full virtual course not exceed UFT contractual limits.

- Teachers shall not be assigned more than twenty five (25) teaching periods per week and may teach up to five (5) remote classes; however, the maximum number of distinct courses shall not exceed three (3).

- Teachers must confer with students synchronously during programmed periods each week, as well as be available for asynchronous teaching approaches including but not limited to office hours, individual and small group conferencing and providing direction for independent student

work. Facilitate learning through supplied curriculum that teachers may supplement.

- Teachers are expected to teach in person from 82-01 Rockaway Blvd, Ozone Park, NY 11416 or other DOE office.

**Hours:**

As per Article Six of the Collective Bargaining Agreement

**Salary:**

As per UFT Contract

**Work Year:**

As per Article Six of the Collective Bargaining Agreement

**APPLICATION INSTRUCTIONS:**

Please be sure application includes cover letter, resume and your 6-digit file number.

Please send application via email to the following email address: iLearnNYC@schools.nyc.gov with the Subject line: "Fulltime Remote Teacher application."

Applications will be accepted through:

# JUNE 3, 2022

# An Equal Opportunity Employer M/F/D

It is the policy of the Department of Education of the City of New York to provide equal employment opportunities without regard to actual or perceived race, color, religion, creed, ethnicity, national origin, alienage, citizenship status, age, marital status, partnership status, disability, sexual orientation, gender(sex), military status, unemployment status, caregiver status, consumer credit history, prior record of arrest or conviction(except as permitted by law), predisposing genetic characteristics, or status as a victim of domestic violence, sexual offenses and stalking, and to maintain an environment free of harassment on any of the above - noted grounds, including sexual

harassment or retaliation. For more information, please refer to the DOE Non - Discrimination Policy.

